UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CALIFORNIA EXPANDED METAL PRODUCTS COMPANY, et al., | CASE NO. C18-0659JLR |
| Plaintiffs, | ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| JAMES A. KLEIN, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendants James A. Klein, BlazeFrame Industries, Ltd. ("BlazeFrame"), and Safti-Seal, Inc.'s ("Safti-Seal") (collectively, "Defendants") motion for partial summary judgment.  (Mot. (Dkt. # 72).)  Plaintiffs California Expanded Metal Products Company ("CEMCO") and Clarkwestern Dietrich Building Systems, LLC (d/b/a ClarkDietrich Building Systems) ("ClarkDietrich") (collectively, "Plaintiffs") oppose the motion.  (Resp. (Dkt. # 80).)  Defendants filed a reply.  (Reply (Dkt. # 85).)

The court has considered the motion, the parties' submissions concerning the motion, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court DENIES Defendants' motion for partial summary judgment for the reasons set forth below.

## II.    BACKGROUND

This case presents a patent infringement dispute involving fire-retarding head-of-wall assemblies used in commercial construction.  Plaintiffs bring claims for patent infringement against Mr. Klein; BlazeFrame, a Washington State corporation that Mr. Klein founded in 2009; and Safti-Seal, a Washington State corporation that Mr. Klein founded in 2017.  (*See* Compl. (Dkt. # 1) ¶¶ 12, 48, 82-85, 95-98.)  Additionally, Plaintiffs bring breach of contract claims against Mr. Klein and BlazeFrame for alleged violations of a settlement agreement reached in an earlier suit, and unfair competition claims against Mr. Klein and Safti-Seal under § 43 of the Lanham Act, 15 U.S.C. § 1125(a).  (*Id.* ¶¶ 73-81, 86-94, 99-105.)  Plaintiffs seek compensatory damages and injunctive relief.  (*Id.* ¶¶ 106(a)-(f).)

### A.    The Patents-in-Suit

Mr. Klein is the named inventor of U.S. Patents 7,681,365 ("the '365 patent"), 7,814,718 ("the '718 patent"), 7,866,108 ("the '108 patent"), 8,056,293 ("the '293 patent"), 8,136,314 ("the '314 patent"), and 8,151,526 ("the '526 patent") (collectively,

---

[1] The parties request oral argument on Defendants' motion.  (Mot. at 1; Resp. at 1.)  The parties have thoroughly briefed the issues in Defendants' motion, and the court has determined that oral argument would not be of assistance in deciding the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court DENIES the parties' requests for oral argument.

"the Patents").  (*See* Trojan Decl. (Dkt. # 81) ¶ 2, Ex. 1 ("'365 Patent"); *id.* ¶ 3, Ex. 2 ("'718 Patent"); *id.* ¶ 4, Ex. 3 ("'108 Patent"); *id.* ¶ 5, Ex. 4 ("'293 Patent"); *id.* ¶ 6, Ex. 5 ("'314 Patent"); *id.* ¶ 7, Ex. 6 ("'526 Patent"); *see also* Mot. at 3.)  In 2012, Mr. Klein assigned the Patents to BlazeFrame.  (MTS Resp. (Dkt. # 82) at 2.)  Currently, CEMCO owns the Patents, and ClarkDietrich is the exclusive licensee of the Patents throughout the United States.  (Compl. ¶ 84.)  Plaintiffs allege that Defendants have infringed at least one claim of the '365, '718, '314, and '526 patents (collectively, "the Patents-in-Suit").  (*Id.* ¶ 83.)

The Patents-in-Suit describe fire-retarding head-of-wall assemblies used in commercial construction.  (*See* Mot. at 3-4; Resp. at 3-4.)  A head-of-wall assembly, also referred to as a "header," is a horizontal metal track that is mounted to a ceiling.  (Mot. at 3.)  Vertical studs are attached to headers to frame walls.  ('365 Patent at 1:23-46; Resp. at 3-4.)  Typically, a header has two sidewalls that form an upside-down "U" shape.  ('365 Patent at 1:43-46; Resp. at 4.)  The Patents-in-Suit all disclose a metal header with a strip of intumescent material affixed to at least one sidewall.  (*See* '365 Patent; '718 Patent; '314 Patent; '526 Patent.)  When exposed to heat, the intumescent material expands to fill the gap between the header and the ceiling, inhibiting the spread of smoke and fire.  (*See, e.g.*, '365 Patent at 5:44-48; *see also* Mot. at 4; Resp. at 4.)

**B.    Prior Cases**

This case is the third chapter of a long-running dispute among the parties.  In 2012, CEMCO sued ClarkDietrich and Mr. Klein, its former employee, in the United States District Court for the Central District of California.  *See Cal. Expanded Metal*

*Prods. Co. v. Clarkwestern Dietrich Bldg. Sys., LLC*, No. CV12-10791-DDP-MRW
(C.D. Cal.).[2]  In that case, CEMCO alleged that Mr. Klein breached a contractual
obligation to offer CEMCO an exclusive license to any construction products he invented
after leaving CEMCO.  (10791 Case Compl. (Dkt. # 1) ¶¶ 6-7.)  In October 2015, the
parties reached a settlement agreement ("the first settlement agreement").  (*See* Trojan
Decl. ¶ 8, Ex. 7 (1st Settlement Tr.).)  Under the first settlement agreement, Mr. Klein
and BlazeFrame assigned the Patents to CEMCO in exchange for an upfront payment of
$800,000, certain royalties, and a nonexclusive license to sell headers covered by the
Patents in a geographically restricted area.  (1st Settlement Tr. at 9:13-10:4; *see also* Mot.
at 6; Resp. at 11.)  Additionally, CEMCO granted ClarkDietrich a nonexclusive license to
the Patents in the restricted territory and an exclusive license to the Patents throughout
the rest of the United States.  (1st Settlement Tr. at 10:9-12.)

    In 2016, Defendants filed a second suit against Mr. Klein and BlazeFrame,
alleging breach of the first settlement agreement and infringement of the Patents.  *See*
*Cal. Expanded Metal Prods. Co. v. Klein*, No. CV16-5968-DDP-MRW (C.D. Calif.);[3]
(*see also* Mot. at 6.)  In June 2017, the parties reached a confidential settlement
agreement ("the second settlement agreement").  (*See* 5968 Case Settlement Conf. Mins.
(Dkt. # 119).)  Shortly thereafter, the second suit was dismissed.  (5968 Case 7/21/17

---

[2] When citing the docket in Case No. CV12-10791-DDP-MRW, the court cites to the
"10791 Case."

[3] When citing the docket in Case No. CV16-5968-DDP-MRW, the court cites to the
"5968 Case."

Order (Dkt. # 124).)  Pursuant to the second settlement agreement, Mr. Klein and BlazeFrame agreed to cease selling head-of-wall products covered by the Patents sold to CEMCO under the first settlement agreement.  (*See* Resp. at 5; 4/2/18 JSR (Dkt. # 49) at 1.)  Additionally, Mr. Klein and BlazeFrame sold the BlazeFrame trademarks to ClarkDietrich.  (Resp. at 5.)  Currently, CEMCO remains the owner of the Patents, and ClarkDietrich is the exclusive licensee of the Patents.  (Compl. ¶ 84.)

**C.     Factual Background**

> **1.     Safti-Seal Products**

Plaintiffs allege that Mr. Klein founded Safti-Seal in June 2017, while the parties were negotiating a settlement in the second suit.  (Compl. ¶ 48; Pl. MTS (Dkt. # 75) at 3.)  Mr. Klein attests that he founded Safti-Seal in September 2017.  (Klein MTS Decl. (Dkt. # 82-1) ¶ 4.)  Safti-Seal sells fire safety products for use in commercial construction, including fire-retarding head-of-wall assemblies.  (Klein MSJ Decl. (Dkt. # 72-1) ¶ 16, Ex. A ("12/28/17 Klein Email").)  Like a BlazeFrame head-of-wall assembly, a Safti-Seal head-of-wall assembly consists of a U-shaped metal header track with outward-facing sidewalls to which fire-safety strips containing intumescent material are attached.  (*See* Compl. ¶¶ 59, 61, 63, 65.)  Unlike a BlazeFrame head-of-wall assembly, a Safti-Seal head-of-wall assembly features a "foamed thermoplastic thermal barrier" between the intumescent material and the metal sidewall.  (Klein MSJ Decl. ¶¶ 9, 12.)  Photographs of BlazeFrame and Safti-Seal headers are shown below.

//

//

 

BlazeFrame Header        Safti-Seal Header

(*Id.* ¶¶ 17-18, Exs. B-C.)

Plaintiffs allege that Safti-Seal headers "are covered by at least one claim of each of the '365, '718, '314, and '526 Patents," which were sold to CEMCO as part of the first settlement agreement. (Compl. ¶ 56.) Defendants, in contrast, argue that Safti-Seal products represent "a significant design change" as compared to products covered by the Patents-in-Suit. (Mot. at 14.)

Mr. Klein emphasizes that he designed Safti-Seal headers to comply with updated safety standards set by a testing agency called Underwriter Laboratories ("UL"). (Klein MSJ Decl. ¶¶ 8-9.) He states that after "test[ing] dozens of variations and configurations of header tracks in combination with different materials, at home, in [his] garage," he decided to "separate [the intumescent material] from the header track with a foamed thermoplastic thermal barrier." (*Id.* ¶ 9.) According to Mr. Klein, the thermal barrier increases the time needed for heat to penetrate a wall and ensures that Safti-Seal headers pass the UL safety standards currently in effect. (*Id.* ¶¶ 11, 15.) Mr. Klein avers that "to the best of [his] knowledge," the products covered by the Patents-in-Suit do not satisfy the updated UL standards. (*Id.* ¶ 8.)

### 2. Claim at Issue

Claim 1 of the '526 patent is illustrative of the claims of the Patents-in-Suit alleged to be infringed. (*See* Mot. at 12-13 (setting forth Claim 1 of the '526 patent); Resp. at 13.) The claim recites:

**1.** A fire-retardant head-of-wall assembly, comprising:

an elongated sheet-metal footer track;

an elongated sheet-metal header track confronting and vertically spaced apart from the footer track, the header track including a web integrally connected to a pair of spaced apart and downwardly extending sidewalls, each sidewall having an upper sidewall portion adjacent to the web and a lower sidewall portion;

an elongated intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the upper sidewall portion; . . . .

('526 Patent at 7:33-44; *see also* '365 Patent at 6:43-62; '718 Patent at 10:10-29; '314 Patent at 10:21-33.) With respect to the motion before the court, the parties' dispute centers on the limitation that claims "an elongated intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls." ('526 Patent at 7:41-44; '365 Patent at 6:57-59; *see also* '718 Patent at 10:23-25 (claiming "an elongated heat expandable intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls"); '314 Patent at 10:26-28 (same)).

### 3. The Klein Email

On December 28, 2017, Mr. Klein emailed a "[y]ear end update" to an unspecified audience. (12/28/17 Klein Email; *see also* Compl. ¶ 70, Ex. 4 ("Undated Klein Email").)

//

The subject line of Mr. Klein's email read, "Product Advancement and Name Change."

(12/28/17 Klein Email.) Mr. Klein began the email by introducing Safti-Seal:

> BlazeFrame Ltd. will no longer exist after year end as we have moved all of our products and newly "advanced joint seal protection" ***Safti-Frame*** and ***Safti-Strip*** (certified to newest UL 2079 v.5 standards with no additional post drywall requirements) under new ***Safti-Seal Inc.***

> BlazeFrame name and original product design have been sold off to others and for ***life safety design considerations***......products now referred to as Blazeframe (appear similar to other systems) under current UL 2079 v.5 test standards now *require additional post drywall* installed *"Stuffed Foam Backer/Mud and Tape coating"* or *"Stapled on Perimeter L-Bead (Foam)"* installed over or in joints creating new encumbered and limited deflection, installation, and specification considerations.... (refer to UL listings).

(*Id.* (emphases and ellipses in original).) Mr. Klein then offered additional information about Safti-Seal products. (*Id.*) He closed the email by providing a link to Safti-Seal's website and his contact information "for future assistance and orders." (*Id.*)

Plaintiffs claim that Mr. Klein's email contained misleading statements intended to damage the "goodwill" ClarkDietrich has developed in the BlazeFrame trademarks and products covered by the Patents. (Compl. ¶ 101.) Specifically, Plaintiffs contend that, "[b]y asserting falsely in a broadly published email that 'the BlazeFrame name and original product have been sold off to others' for 'life safety design consideration,' Klein or Safti-Seal have misrepresented the nature, characteristics, and qualities of ClarkDietrich's BlazeFrame products." (*Id.* ¶ 100.)

**D.     Procedural History**

In January 2018, Plaintiffs filed suit in the United States District Court for the Central District of California against Mr. Klein, BlazeFrame, and Safti-Seal, alleging

patent infringement, breach of contract, and unfair competition.  (*See id*. at ¶¶ 73-105.)

On April 30, 2018, the Honorable Dean D. Pregerson, United States District Judge,

transferred this action to the Western District of Washington pursuant to *TC Heartland,*

*LLC v. Kraft Foods Grp.*, 137 S. Ct. 1514 (2017).  (4/30/18 Order (Dkt. # 51).)  On

August 2, 2018, the court issued a scheduling order setting trial and related dates.  (8/2/18

Min. Order (Dkt. # 79).)  A *Markman* hearing is scheduled for March 22, 2019.  (*Id.* at

2.)

Defendants move for summary judgment on three grounds.  (*See* Mot.)  First,

Defendants contend that because Plaintiffs' complaint makes "no allegations about or

reference to the '108 or '293 patents," the court must "dismiss[]" any claims of

infringement with respect to the '108 and '293 patents.  (*Id.* at 8.)  Second, Defendants

assert that they are entitled to summary judgment of non-infringement of the

Patents-in-Suit.  (*Id.* at 9.)  Finally, Defendants argue that "Plaintiffs' claim for unfair

competition . . . must be dismissed because [Plaintiffs] cannot prove [that Defendants

committed] a false or deceptive act" implicating Plaintiffs' products.  (*Id.* at 20-21.)  The

court now turns to Defendants' motion.

## III.    DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence shows "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

*Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the

outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and citation omitted). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue

for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Accordingly, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

**B.     The '108 and '293 Patents**

Defendants argue that they are entitled to summary judgment of non-infringement of the '108 and '293 patents. (Mot. at 8.) According to Defendants, "although the [c]omplaint defines the '108 and '293 patents as being in suit, and its prayer requests relief for alleged infringement, they are subject to dismissal under . . . Rule 56 of the Federal Rules of Civil Procedure because the [c]omplaint makes *no* allegations about them." (*Id.*) Plaintiffs respond that the complaint makes no allegations about the '108 or '293 patents because these patents are not alleged to be infringed. (Resp. at 11.) Plaintiffs state that, "[t]o the extent that the Prayer for Relief refers generally to 'the Patents,' which might be misconstrued to include the '108 or '293 Patents, any implied reference to the '108 or '293 Patents is inadvertent." (*Id.*)

The court finds that Plaintiffs assert no claims with respect to the '108 and '293 patents. Plaintiffs expressly refer to the '108 and '293 patents one time in the complaint, when identifying the various patents relating to fire-blocking devices of which Mr. Klein is the named inventor. (Compl. ¶ 10.) As Defendants note, the complaint collectively refers to the Patents-in-Suit as well as the '108 and '293 patents as "the Patents." (*Id.*; *see also* Mot. at 8.) Yet aside from a passing reference in the prayer for relief to "products that infringe any claim of any of the Patents" (Compl. ¶ 106(c)), Plaintiffs refer

to "the Patents" only when describing the patents that Mr. Klein and BlazeFrame sold

CEMCO under the first settlement agreement (*id.* ¶¶ 18-23; *see also* Resp. at 11). At no

point do Plaintiffs suggest that the '108 and '293 patents are in-suit here. (*See generally*

Compl.) Indeed, in setting forth their patent infringement claims, Plaintiffs expressly

allege infringement only of "the '365, '718, '314, and '526 Patents."[4] (Compl. ¶¶ 83, 86;

*see also* ¶¶ 56-57.)

Because Plaintiffs do not assert any claim involving the '108 or '293 patents, there

is no controversy concerning these patents over which the court may exercise

jurisdiction. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)

("Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and

'Controversies.'"). Accordingly, the court DENIES Defendants' motion for summary

judgment with respect to the '108 and '293 patents.[5]

---

[4] In their reply, Defendants note that Plaintiffs filed a report with the U.S. Patent and Trademark Office stating that "a court action has been filed . . . on" the Patents-in-Suit and the '108 and '293 patents. (Reply at 2; *see also* Rep. to U.S. PTO (Dkt. # 6) at 1.) As discussed above, however, the pleadings before the court do not identify the '108 and '293 patents as being in-suit, and the court lacks jurisdiction to enter judgment over claims not before it. To the extent the disjunction between Plaintiffs' complaint and Plaintiffs' report to the Patent and Trademark Office reflects careless reporting, the court cautions Plaintiffs be more precise going forward.

[5] Defendants also assert that Plaintiffs' claims of infringement of the '108 and '293 patents "are subject to dismissal under [Federal] Rule [of Civil Procedure] 12(b)(6)" for failure to state a claim upon which relief can be granted. (Mot. at 8.) Under Rule 12(b), a motion to dismiss for failure to state a claim must be filed "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Defendants filed their answer on May 25, 2018. (Answer (Dkt. # 68).) Therefore, to the extent Defendants bring a motion to dismiss under Rule 12(b)(6), their motion is "untimely." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 n.2 (9th Cir. 2004) (quoting *Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983)). A court may treat an untimely 12(b)(6) motion as a motion for judgment on the pleadings under Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). The standard for demonstrating that a complaint fails to state a claim upon which relief can be

**C.     Non-Infringement of the Patents-in-Suit**

Defendants move for summary judgment of non-infringement of the Patents-in-Suit on the grounds that Plaintiffs cannot prove direct infringement or infringement under the doctrine of equivalents.  (Mot. at 12-19.)  According to Defendants, "[t]he sole issue presented by this [m]otion as to infringement of the '365, '718, '314, and '526 Patents is whether, in the accused products, an intumescent strip is 'on' the surface of a metal header track (as the patents' claim limitations require) or whether it is not on the metal header track (and therefore lacks a limitation that the patents' claims require)."  (*Id.* at 9.)

To determine whether a particular product infringes an existing patent, the court engages a two-step analysis.  First, the court must identify, as a matter of law, the proper construction of the asserted patent claim.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-91 (1996).  After the claim has been properly construed, the factfinder determines whether the accused device infringes the claim.  *See, e.g.*, *O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1580 (Fed. Cir. 1997).

In patent infringement cases, summary judgment is appropriate when it is apparent that a reasonable jury could reach only one conclusion as to infringement.  *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) (citing *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed. Cir. 1998)); *U.S. Phillips Corp. v. Iwasaki*

---

granted is the same under both rules.  *See, e.g.*, *Otter v. Northland Grp., Inc.*, No. C12-2034RSM, 2013 WL 2243874, at *1 (W.D. Wash. May 21, 2013).  Construing Defendants' 12(b)(6) motion as a motion for judgment on the pleadings, the court denies the motion for the reasons stated above.  *See supra* § III.B.

*Elec. Co. Ltd.*, 505 F.3d 1371, 1374-75 (Fed. Cir. 2007) ("Summary judgment on the

issue of infringement is proper when no reasonable jury could find that every limitation

recited in a properly construed claim either is or is not found in the accused device either

literally or under the doctrine of equivalents.").

At the outset, the court draws attention to its standing order on patent cases. (*See*

Standing Order on Patent Cases, Judge James L. Robart Chambers Procedures,

http://www.wawd.uscourts.gov/judges/robart-procedures.) Pursuant to the standing

order, "[t]he court will <u>not</u> rule on dispositive motions that raise issues of claim

construction prior to the *Markman* hearing, unless special circumstances warrant and the

party obtains leave of court in advance of filing." (*Id.* at 2; *see also* 8/2/18 Min. Order at

2.) Other courts are similarly reluctant to entertain motions for summary judgment that

prematurely raise issues of claim construction. *See, e.g.*, *Zipit Wireless, Inc. v.*

*Blackberry Ltd.*, No. 6:13-cv-02959-JMC, 2016 WL 5933975, at *9 (D. S.C. Oct. 12,

2016) (noting that "summary judgment prior to the issuance of the court's

claim-construction order tends to shortchange the proper development of the case");

*Stratasys, Inc. v. Microboards Tech., LLC*, No. 13-3228 (DWF/TNL), 2014 WL

5438396, at *2 (D. Minn. Oct. 22, 2014) (denying as premature the defendant's motion

for summary judgment on the issue of infringement because the motion was filed prior to

claim construction proceedings).

Defendants argue that resolution of the instant motion does not require claim

construction. (Mot. at 10.) As an initial matter, Defendants assert that in both this action

and the prior suits, Plaintiffs have consistently maintained that no claim term in any of

the asserted patents requires construction.  (*Id.*)  Defendants identify three representations

by Plaintiffs that purportedly illustrate Plaintiffs' "about-face" on the necessity of claim

construction (Mot. at 10):  (1) a joint status report in this case, filed before transfer to the

Western District of Washington, in which Plaintiffs declined to propose a date for a

*Markman* hearing (4/2/18 JSR at 2); (2) a March 28, 2018, email from CEMCO's counsel

to Defendants' counsel expressing the position that "a *Markman* hearing [would] be

unnecessary due to Judge Pregerson's familiarity with this case and the relative simplicity

of the technology at issue" (Bageant MSJ Decl. (Dkt. # 72-2) ¶ 2, Ex. 1 ("Wong Email")

at 4); and (3) a prehearing statement in the second suit, in which Plaintiffs suggested a

*Markman* hearing was not warranted (Prehr'g Stmt. (C16-5988 Dkt. # 97) at 2-3).

The court is not persuaded that Plaintiffs' previous positions on the propriety of a

*Markman* hearing somehow preclude Plaintiffs from asserting that the motion before the

court raises issues of claim construction.  As the Federal Circuit has recognized, parties in

patent infringement suits often hold evolving views on the necessity of claim

construction.  *See, e.g.*, *TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*,

629 F. App'x 916, 938-39 (Fed. Cir. 2015) ("[P]arties in patent cases frequently stipulate

to a construction or the court construes a term, only to have their dispute evolve to a point

where they realize that a further construction is necessary.") (alteration in original).

Moreover, Defendants' motion takes Plaintiffs' representations out of context.  In the

email to Defendants' counsel, CEMCO's counsel expressly raised the possibility that

claim construction would be warranted at the summary judgment phase, even as he

suggested a *Markman* hearing was unnecessary.  (Wong Email at 4.)  And in the

prehearing statement filed in the second suit, Plaintiffs suggested that claim construction

was not necessary in light of the court's decision to dismiss Defendants' patent invalidity

defense in that case.  (Prehr'g Stmnt. at 3; *see also* Resp. at 10.)  The court thus rejects

Defendants' contention that Plaintiffs' "prior statements" on the propriety of a *Markman*

hearing render "irrelevant" their arguments in favor of claim construction here.  (Reply at

5.)

      Defendants further argue that claim construction is not warranted under a

"plain-language application" of the terms of the Patents-in-Suit.  (Reply at 4; *see also*

Mot. at 10-11.)  In Defendants' view, the motion "is based upon the single, dispositive

fact that the surface of the metal header track in Defendants' products does not have

intumescent material 'on' it, as the patents require."  (Mot. at 10.)  Defendants assert that

the word "on" does not require special construction:  "there is no colorable argument that

'on' the 'surface' means anything other than 'on,' or 'in contact with.'"  (*Id.* at 10-11.)

Defendants contend that summary judgment of non-infringement is appropriate because a

Safti-Seal head-of-wall assembly does not feature an intumescent strip on the surface of

the header; rather, "the intumescent strip is placed on a white thermal barrier, and the

*thermal barrier*, in turn, is placed on the surface of the header."  (*Id.* at 13; *see also* Reply

at 1.)

      Plaintiffs respond that Defendants' motion implicates at least two disputed terms

that require claim construction:  "intumescent strip" and "affixed . . . on," terms that

appear in Claim 1 of each Patent-in-Suit.  (Resp. at 12; *see also* '365 Patent; '718 Patent;

'314 Patent; '526 Patent.)  Plaintiffs first contend that, as disclosed by the specifications

of the Patents-in-Suit, the limitation "intumescent strip" encompasses not only intumescent material but also other constituent non-intumescent materials. (*Id.* at 13-14.) Under this construction, the thermal barrier found in Safti-Seal headers would constitute part of the claimed intumescent strip. (*Id.* at 15.) Additionally, Plaintiffs argue that Defendants' reading of "on" is at odds with intrinsic evidence. (*Id.* at 16.) In Plaintiffs' view, the term "affixed . . . on" does not require that the intumescent material be directly "in contact with" the surface of the header sidewall, and necessarily covers embodiments in which an adhesive backing or other material is interposed between the intumescent material and the outer sidewall. (*Id.* at 16-17.)

The court finds that Defendants' motion raises issues of claim construction not appropriate for resolution at this time. Defendants have provided the court their own construction of the term "on." Yet neither Defendants' reading of the Patents-in-Suit nor the record currently before the court allows the court to conclusively establish the meaning and scope of "affixed . . . on" and "intumescent strip," terms that are critical to Defendants' contentions of non-infringement. *See, e.g.*, *Trading Techs. Int'l v. eSpeed, Inc.*, 595 F.3d 1340, 1351 (Fed. Cir. 2010) ("[C]laim construction involves many technical, scientific, and timing issues that require full examination of the evidence and factual resolution of any disputes before setting the meaning of the disputed terms."). Accordingly, the court concludes that formal claim construction is warranted before it can consider the parties' contentions concerning infringement. The court thus DENIES Defendants' motion for partial summary judgment of non-infringement without prejudice to its renewal after claim construction.

## D.     Lanham Act Claim

Defendants move for summary judgment on Plaintiffs' claim for unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (Mot. at 20.)  Defendants assert that Plaintiffs have adduced no facts that show that Defendants made a false or misleading statement of fact in connection with Plaintiffs' products.  (Mot. at 20-21.)

In relevant part, 15 U.S.C. § 1125(a)(1), provides a civil cause of action against:

(1) [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a).  The two prongs of § 1125(a)(1) support different causes of action.  *See Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).  The "false association" prong, § 1125(a)(1)(A), pertains to allegations of "deceptive use of a trademark or its equivalent."  *Id.*  In contrast, the "false advertising" prong, § 1125(a)(1)(B), applies to allegations of misrepresentation about the product itself.  *Jack Russell Terrier*, 407 F.3d at 1037; *see also A.H. Lundberg Assocs., Inc. v. TSI, Inc.*, No. C14-1160JLR, 2014 WL 5365514, at *2 (W.D. Wash. Oct. 21, 2014).

Although the complaint alleges facts tending to support a claim for false advertising, Plaintiffs do not specify the theory of liability under which they intend to proceed. (*See* Compl. ¶¶ 99-105.) Given the basis of Defendants' motion, however, the court need not probe the precise nature of Plaintiffs' claim; Defendants move for summary judgment on the ground that Plaintiffs cannot show that Defendants made any false or misleading representation of fact, an element common to all claims under § 1125(a). (*See* Mot. at 20-21); 15 U.S.C. § 1125(a).

To demonstrate falsity under the Lanham Act, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Sover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (stating that a cause of action under the Lanham Act "is not limited to literal falsehoods," but rather "extends to false representations made by implication or innuendo"). Where a defendant in a Lanham action is shown to have "intentionally misled consumers," a court should "presume [that] consumers were in fact deceived," and the defendant bears the burden of demonstrating otherwise. *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995).

Whether a particular statement is false or misleading under the Lanham Act is a question of fact. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). Accordingly, summary judgment is not appropriate where there are genuine disputes of material fact as to whether the defendant made a statement that was literally

false or misled, confused, or deceived consumers. *See, e.g.*, *Southland Sod Farms*, 108 F.3d at 1144-45 (reversing summary judgment where a reasonable juror could conclude that the defendant's advertisements were literally false). Where a plaintiff's theory of recovery is premised upon a claim of implied falsehood, "[i]t is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive." *Johnson & Johnson * Merck Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992).

Plaintiffs' Lanham Act claim focuses on Mr. Klein's email concerning Safti-Seal. Specifically, Plaintiffs argue that consumers are likely to be misled by the following phrase: "BlazeFrame name and original product design have been sold off to others and for life safety design considerations . . . ." (*See* Compl. ¶¶ 99-102; *see also* Resp. at 24 (quoting 12/28/17 Klein Email).) In moving for summary judgment, Defendants assert that Plaintiffs' complaint "torture[s]" the language of Mr. Klein's email. (Mot. at 21.) According to Defendants, the Klein email "truthfully" stated that the BlazeFrame trademark and products "have been sold off to others" and that BlazeFrame products do not satisfy current UL standards. (*Id.*) Plaintiffs oppose summary judgment on the ground that the phrase in the email concerning "life safety design considerations" is at least ambiguous, given the placement of the ellipses and absence of "punctuation or other break in the entire statement." (Resp. at 24.) Plaintiffs also suggest that the parties' dispute over the meaning of the email illustrates the need for further discovery. (*Id.* at 23-24.)

//

The court concludes that genuine issues of material fact preclude summary judgment on Plaintiffs' unfair competition claim. To begin, the court cannot with any degree of confidence discern the meaning of the disputed statements in Mr. Klein's email, much less conclude that no reasonable factfinder could find that those statements were not literally false or did not mislead or confuse consumers. The email's unorthodox phrasing and punctuation render the disputed statements ambiguous, and necessitate a fact-intensive inquiry about the statements' veracity and whether they confused or misled consumers. Moreover, the court finds that Plaintiffs' Lanham Act claim implicates questions of fact as to Mr. Klein's intent, a matter not suitable for disposition on summary judgment. *See, e.g.*, *j2 Global Commc'ns, Inc. v. Zilker Ventures, LLC*, No. CV 08-07470 SJO (AJWx), 2009 WL 10671792, at *6 (denying the defendant's motion for summary judgment on a Lanham Act claim because "[t]he intent behind [the defendant's] allegedly false and misleading statements is a question of fact that is not appropriate for resolution on summary judgment"); *Newcal Indus.*, 513 F.3d at 1054 (holding that the district court properly denied the defendant's motion to dismiss where the statement at issue appeared facially true but "there remain[ed] a factual question of whether the statement was intentionally misleading at the time it was made").

Finally, the court notes that the parties have put before the court two subtly different versions of the email at issue: the second paragraph of the email provided in support of Defendants' motion for summary judgment contains a phrase about BlazeFrame that does not appear in the second paragraph of the email Plaintiffs offer

//

alongside their complaint. (*Compare* 12/28/17 Klein Email, *with* Undated Klein Email.[6])

The copies of the emails also bear different timestamps. (*Id.*) Nonetheless, the parties

refer to "the email" as if there were only one communication at issue, and fail to address

the significance, if any, of the discrepancies observed here. (*See, e.g.*, Mot. at 21; Resp.

at 24.) The parties' briefing and the evidentiary record generally provide an inadequate

basis on which the court might grant summary judgment. *See, e.g.*, *Doe v. Abingdon*

*Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("[B]y its very nature, the summary

judgment process presupposes the existence of an adequate record."); *Omega Morgan,*

*Inc. v. Heely*, No. C14-0556RSL, 2015 WL 1954653, at *4 (W.D. Wash. Apr. 29, 2015)

(denying summary judgment as to a claim "based on the incomplete record").[7] The court

therefore DENIES Defendants' motion for summary judgment on Plaintiffs' Lanham Act

claim.

//

//

//

//

---

[6] In the complaint, Plaintiffs allege that the Undated Klein Email—appended as Exhibit 4 to the complaint—was sent on December 26, 2017. (Compl. ¶ 70.) No date appears on the email, however (*see* Undated Klein Email), and Plaintiffs cite no other evidence concerning the email's date (*see generally* Compl.).

[7] Although Plaintiffs insist that their Lanham Act claim requires "further discovery" (Resp. at 24), they failed to file an affidavit under Federal Rule of Civil Procedure 56(d) (*see generally* Dkt.). Under Rule 56(d), a court may deny summary judgment when a nonmoving party demonstrates that it cannot present facts essential to its opposition without further discovery. *See* Fed. R. Civ. P. 56(d). Notwithstanding the absence of a Rule 56(d) motion, summary judgment is not warranted for the reasons stated above. *See supra* § III.D.

## IV.    CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion for partial summary judgment.  (Dkt. # 72.)  Defendants may renew their motion for summary judgment of non-infringement of the Patents-in-Suit following claim construction.

Dated this 20th day of November, 2018.

The Honorable James L. Robart
U.S. District Court Judge