UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CALIFORNIA EXPANDED
METAL PRODUCTS COMPANY,
et al.,

               Plaintiffs,

    v.

JAMES A. KLEIN, et al.,

               Defendants.

CASE NO. C18-0659 JLR

ORDER ON PLAINTIFFS'
MOTION TO STRIKE
AFFIRMATIVE DEFENSES

## I.    INTRODUCTION

Before the court is Plaintiffs California Expanded Metal Products Company

("CEMCO") and Clarkwestern Dietrich Building Systems, LLC's (d/b/a ClarkDietrich

Building Systems) ("ClarkDietrich") (collectively, "Plaintiffs") motion to strike

Defendants James A. Klein, BlazeFrame Industries, Ltd. ("BlazeFrame"), and Safti-Seal,

Inc.'s ("Safti-Seal") (collectively, "Defendants") affirmative defenses.  (Mot. (Dkt.

# 75).)  Defendants oppose the motion.  (Resp. (Dkt. # 82).)  Plaintiffs filed a reply.

(Reply (Dkt. # 84).)  The court has considered the motion, the parties' submissions concerning the motion, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS in part and DENIES in part Plaintiffs' motion to strike Defendants' affirmative defenses for the reasons set forth below.

## II.  BACKGROUND

The court summarized the factual background of this case in its order on Defendants' motion for partial summary judgment and does not repeat it in detail here. (*See* 11/20/18 Order (Dkt. # 89) at 2-9.)  The relevant procedural background is as follows.

Mr. Klein, a former CEMCO employee, is the named inventor on several patents for fire-blocking head-of-wall assemblies used in commercial construction, including the patents asserted in this action ("the patents-in-suit").  (*See* 11/20/18 Order at 3) (identifying the patents-in-suit).)  In 2009, Mr. Klein and a business partner founded BlazeFrame, a Washington State corporation that sells fire-blocking head-of-wall assemblies.  (Klein MTS Decl. (Dkt. # 82-1) ¶ 3.)  Mr. Klein and his partner each owned 50 percent of the company.  (*Id.*)  In March 2012, Mr. Klein assigned BlazeFrame various patents, including several of the patents-in-suit.  (*Id.*)

Later in 2012, CEMCO sued ClarkDietrich and Mr. Klein in the United States District Court for the Central District of California.  *See Cal. Expanded Metal Prods. Co.*

---

[1] The parties request oral argument on Plaintiffs' motion.  (Mot. at 1; Resp. at 1.)  The parties have thoroughly briefed the issues in Plaintiffs' motion, and the court has determined that oral argument would not be of assistance in deciding the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court DENIES the parties' requests for oral argument.

*v. Clarkwestern Dietrich Bldg. Sys., LLC*, No. CV12-10791-DDP-MRW (C.D. Cal.) ("the first suit"). CEMCO alleged that Mr. Klein breached a contractual obligation to offer CEMCO an exclusive license to any construction products he invented after leaving CEMCO. (Resp. at 2.) In 2015, the parties reached a settlement agreement ("the first settlement agreement").[2] (*See* Trojan MSJ Decl. (Dkt. # 81) ¶ 8, Ex. 7 (Settlement Tr.).) Under the first settlement agreement, BlazeFrame assigned the patents-in-suit to CEMCO in exchange for an upfront payment of $800,000.00, certain royalties, and a nonexclusive license to sell headers covered by the patents-in-suit in a six-state area. (Settlement Tr. at 9:13-10:4; *see also* Mot. at 3.) Additionally, CEMCO licensed ClarkDietrich to sell products covered by the patents-in-suit in exchange for royalty payments, portions of which were to be paid to BlazeFrame. (Settlement Tr. at 10:9-12; Mot. 3.) After the first settlement agreement, Mr. Klein became the sole owner of BlazeFrame. (Klein MTS Decl. ¶ 3.)

In August 2016, Plaintiffs filed a second suit against Mr. Klein and BlazeFrame. *See Calif. Expanded Metal Prods. Co. v. Klein*, No. CV16-5968-DDP-MRW (C.D. Cal.) ("the second suit").[3] In the second suit, Plaintiffs alleged that BlazeFrame breached the first settlement agreement by selling licensed products outside the agreed-upon

---

[2] While the first suit was pending, BlazeFrame filed a patent infringement suit against CEMCO in the Western District of Washington. *See BlazeFrame Indus., Ltd. v. Cal. Expanded Metal Prods. Co.*, No. C12-1922RAJ (W.D. Wash.). In June 2013, the patent infringement suit was transferred to the Central District of California. *See BlazeFrame Indus., Ltd. v. Cal. Expanded Metal Prods. Co.*, No. CV13-04669-DDP-MRW (C.D. Cal.). Following the first settlement agreement, all pending calendar dates in that case were vacated. (*See* No. CV13-04669-DDP-MRW (C.D. Cal.), 10/6/15 Order (Dkt. # 72) at 1.)

[3] When citing docket entries in the second suit, the court cites the "2d Cal. Case."

six-state area.  (Mot. at 3.)  Plaintiffs further alleged that Mr. Klein and BlazeFrame had infringed the patents assigned to CEMCO under the first settlement agreement.  (*Id.*)

In the second suit, Mr. Klein and BlazeFrame asserted the affirmative defenses of patent invalidity, patent unenforceability, and patent misuse, among others.  (*See* Request for Jud. Not. (Dkt. # 76) ¶ 2, Ex. B ("2d Cal. Case Am. Answer") at 16-19.[4])  Plaintiffs moved to strike the affirmative defenses of patent invalidity and patent unenforceability, arguing that the doctrine of assignor estoppel barred Mr. Klein and BlazeFrame from asserting that the patents assigned to CEMCO were now invalid.  (2d Cal. Case MTS Mem. (Dkt. # 46-1) at 1.)  The Honorable Dean D. Pregerson, U.S. District Judge for the Central District of California, struck with prejudice Defendants' patent invalidity and patent unenforceability affirmative defenses.  (2d Cal. Case 3/3/18 Order (Dkt. # 72) at 4-7.)  Additionally, the court struck, but granted Mr. Klein and BlazeFrame leave to amend, the affirmative defense of patent misuse.  (*Id.* at 7.)

In June 2017, the parties settled the second suit in a confidential settlement agreement ("the second settlement agreement").  (*See* 2d Cal. Case Settlement Conf. Mins. (Dkt. # 119).)  Shortly thereafter, the second suit was dismissed.  (2d Cal. Case 7/21/17 Order (Dkt. # 124).)  Currently, CEMCO owns the patents-in-suit, and ClarkDietrich is the exclusive licensee of the patents-in-suit.  (Compl. ¶ 84.)

In January 2018, Plaintiffs filed this action against Mr. Klein, BlazeFrame, and Safti-Seal, a Washington State corporation that Mr. Klein founded in 2017.  (*See* Compl.

---

[4] The court cites the page number at the bottom center of the amended answer.

(Dkt. # 1) ¶ 48; *see also* Klein MTS Decl. ¶ 4.)  Mr. Klein is the sole owner of Safti-Seal.

(Klein MTS Decl. ¶ 4.)  Like BlazeFrame, Safti-Seal sells fire-retarding head-of-wall

assemblies in the commercial construction industry.  (Compl. ¶ 52.)  Among other

claims, Plaintiffs allege that Defendants have infringed the patents assigned to CEMCO.

(*See id*. ¶¶ 48, 82-85, 95-98.)

      In June 2018, Defendants filed an amended answer to Plaintiffs' complaint.  (Am.

Answer (Dkt. # 71).)  Defendants assert the affirmative defenses of patent invalidity,

patent unenforceability, and patent misuse, among others.  (*Id.* at 8-10.)  As for the

affirmative defense of patent invalidity, Defendants assert that the patents-in-suit "are

invalid for failing to meet one or more of the requirements and/or conditions for

patentability under Title 35 of the United States Code."  (*Id.* at 9-10.)  As for the

affirmative defense of patent unenforceability, Defendants assert that Plaintiffs cannot

enforce the patents-in-suit "due to inequitable conduct."  (*Id.* at 10.)  As for the

affirmative defense of patent misuse, Defendants assert that "Plaintiffs have

impermissibly attempted to expand their 'patent monopoly' by expanding the temporal

and geographic scope of the [patents-in-suit], with anticompetitive effect."  (*Id.* at 8.)

      On July 9, 2018, Plaintiffs filed the instant motion.  (*See* Mot.)  Plaintiffs move to

strike as insufficient the affirmative defenses of patent invalidity and inequitable conduct.

(*Id.* at 7-12.)  Additionally, Plaintiffs move to dismiss under Federal Rule of Civil

Procedure 12(b)(6) the affirmative defense of patent misuse.  (*Id.* at 12-13.)  The court

now turns to Plaintiffs' motion.

*//*

## III.    DISCUSSION

### A.    Standard Governing Motions to Strike

Federal Rule of Civil Procedure 8(c)(1) requires a party, in responding to a pleading, to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). A court may, on its own or on a motion, strike an affirmative defense under Federal Rule of Civil Procedure 12(f) if it is "insufficient" or presents "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An affirmative defense may be insufficient as a matter of pleading or as a matter of law. *Cobra Sys., Inc. v. Unger*, No. 8:16-cv-00569-ODW-JEM, 2016 WL 9383517, at *1 (C.D. Cal. Aug. 4, 2016). An affirmative defense is insufficiently pleaded if it fails to provide the plaintiff "fair notice" of the defense asserted. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). An affirmative defense is insufficient as a matter of law if "there are no questions of fact, . . . any questions of law are clear and not in dispute, and . . . under no set of circumstances could the defense succeed." *Kerzman v. NCH Corp.*, No. C05-1820JLR, 2007 WL 765202, at *7 (W.D. Wash. Mar. 9, 2007) (citing *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002)).

In general, courts disfavor motions to strike, given the strong policy preference for resolving issues on the merits. *See, e.g.*, *Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018). Nonetheless, "where [a] motion [to strike] may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken."

*California v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981).  Indeed, the function of

Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating

spurious issues by disposing of those issues prior to trial . . . ."  *Whittlestone, Inc. v.*

*Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*,

984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

Whether to grant a motion to strike lies within the discretion of the district court.

*Cal. Dep't of Toxic Substances Control*, 217 F. Supp. 2d at 1033.  When considering a

motion to strike, the court must view the pleadings in the light most favorable to the

pleading party.  *See, e.g.*, *In re 2TheMart.com Secs. Litig.*, 114 F. Supp. 2d 955, 965

(C.D. Cal. 2000).

## B. Patent Invalidity

Plaintiffs move to strike Defendants' affirmative defense of patent invalidity on

the ground that the defense is barred by the doctrine of assignor estoppel.  (Mot. at 7-8.)

"Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights

to a patent . . . from later contending that what was assigned is a nullity."  *Diamond Sci.*

*Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988).  "Under the doctrine, an

assignor sued for infringement may not defend or counterclaim that the patent he

assigned is invalid or unenforceable."  *Semiconductor Energy Lab. Co., Ltd. v. Nagata*,

706 F.3d 1365, 1370 (Fed. Cir. 2013).[5]  Assignor estoppel "also operates to bar other

---

[5] Assignor estoppel does not apply in certain "exceptional circumstances," such as "an express reservation by the assignor of the right to challenge the validity of the patent or an express waiver by the assignee of the right to assert assignor estoppel."  *Mentor Graphics Corp. v. Quicktum Design Sys.*, 150 F.3d 1374, 1378 (Fed. Cir. 1998).  No such circumstances are presented here.

parties in privity with the assignor, such as a corporation founded by the assignor." *Id.* When determining whether assignor estoppel applies, the court must balance the equities between the parties. *Carroll Touch, Inc. v. Electro Mech. Sys.*, 15 F.3d 1573, 1579 (Fed. Cir. 1993). "That determination is a matter committed to the sound discretion of the trial court." *Id.* "[T]he primary consideration . . . is the measure of unfairness and injustice that would be suffered by the assignee" if the assignor were allowed to raise defenses of patent invalidity and patent unenforceability. *Diamond Sci.*, 848 F.2d at 1224.

In the second suit, Judge Pregerson found that assignor estoppel barred Mr. Klein and BlazeFrame from asserting the affirmative defenses of patent invalidity and patent unenforceability because "the balance of equities weigh[ed] entirely in Plaintiffs' favor." (3/3/17 Order at 4-7.) The court noted that under the first settlement agreement, CEMCO paid BlazeFrame $800,000.00 to acquire ownership of the patents at issue in the second suit. It then concluded that "[t]o allow Blazeframe to now argue, despite its having received payment from CEMCO, that 'what was sold is worthless' would be grossly unfair." (*Id.* at 4-5 (quoting *Diamond Sci.*, 848 F.2d at 1224).) Notably, Mr. Klein argued that he should not be estopped from raising patent invalidity and unenforceability defenses because "he received no money (qua individual)" under the first settlement agreement. (*Id.* at 6.) The court rejected that argument as "baseless," emphasizing that Mr. Klein was the named inventor of the patents, co-founded Blazeframe, assigned the patents to Blazeframe, was a 50% shareholder at the time of the settlement, and consented to the assignment of the patents. (*Id.*) The court thus found that "Klein was undoubtedly in privity with Blazeframe at the time of the [first] settlement, and remains

so at the present time." (*Id.* at 7.) The court then struck the patent invalidity and unenforceability affirmative defenses with prejudice.

Here, for the same reasons stated in Judge Pregerson's order, the court finds that assignor estoppel bars Mr. Klein and BlazeFrame from asserting the affirmative defense of patent invalidity. The balance of equities remains unchanged: considerations of fairness and justice dictate that Mr. Klein and BlazeFrame should not be permitted to represent that the patents-in-suit are invalid, after having pocketed $800,000.00 in exchange for the assignment of those very patents. *See Diamond Sci.*, 848 F.2d at 1224. Defendants essentially concede as much. In their response to Plaintiffs' motion, Defendants articulate no reasons why the court should depart from Judge Pregerson's finding that assignor estoppel extends to Mr. Klein and BlazeFrame. (*See generally* Resp.)

Defendants contend, however, that assignor estoppel does not apply to Safti-Seal, a company founded after the assignment of the patents-in-suit. (*Id.* at 1.) Defendants argue that Safti-Seal is not an "assignor" for purposes of assignor estoppel because it did not assign the patents-in-suit to CEMCO and is not in privity with BlazeFrame, the company responsible for the assignment. (*Id.* at 4-6.) Plaintiffs, on the other hand, contend that Safti-Seal is in privity with Mr. Klein and BlazeFrame and thus should be estopped from asserting the affirmative defense of patent invalidity. (Reply at 2-3.)

In the context of assignor estoppel, privity "is determined upon a balance of the equities." *Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990). "If an inventor assigns his invention to his employer company A and leaves to

join company B, whether company B is in privity and thus bound by the doctrine will depend on the equities dictated by the relationship between the inventor and company B in light of the act of infringement." *Id.* at 793. The closer the relationship between the inventor and the inventor's new company, the more likely the equities weigh in favor of extending assignor estoppel to the new company. *Id.*; *see also Mentor Graphics Corp. v. Quicktum Design Sys.*, 150 F.3d 1374, 1379 (Fed. Cir. 1998) ("Assessing a relationship for privity involves evaluation of all direct and indirect contacts.").

District courts tasked with assessing privity for purposes of assignor estoppel have used as a guide the factors the Federal Circuit set forth in *Shamrock*, 903 F.2d at 793-94. *See, e.g.*, *MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*, No. CV 13-06089 SJO (FFMx), 2015 WL 12488489, at *5 (C.D. Cal. Jan. 23, 2015) ("While [the *Shamrock*] factors are not dispositive, they provide useful guidance."). Those factors include: (1) "the assignor's leadership role" at the defendant company; (2) "the assignor's ownership stake in the defendant company"; (3) "whether the defendant company changed course from manufacturing non-infringing goods to [allegedly] infringing activity after the inventor was hired"; (4) "the assignor's role in the [allegedly] infringing activities"; (5) "whether the inventor was hired to start the [allegedly] infringing operations"; (6) "whether the decision to manufacture the [allegedly] infringing product was made partly by the inventor"; (7) "whether the defendant company began manufacturing the accused product shortly after hiring the assignor"; and (8) "whether the inventor was in charge of the [allegedly] infringing operation." *MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*, 816 F.3d 1374, 1380 (Fed. Cir. 2016); *see also Brocade Commc'ns Sys., Inc. v. A10*

*Networks, Inc.*, No. 10-cv-03428-LHK, 2012 WL 2326064, at *5 (N.D. Cal. Jun. 18, 2012).

When applying assignor estoppel, courts often use the terms "assignor" and "inventor" interchangeably, *see, e.g.*, *MAG Aerospace Indus.*, 816 F.3d at 1380, or use the phrase "assignor/inventor," *see, e.g.*, *Brocade Comm'ns Sys.*, 2012 WL 2326064, at *5. Defendants' response distinguishes the "inventor" of the patents-in-suit (Mr. Klein) from the "assignor" of the patents-in-suit (BlazeFrame). (*See* Resp. at 5-6.) The court finds that distinction artificial for several reasons. First, well before this litigation began, Mr. Klein himself assigned the patents-in-suit to BlazeFrame. (Klein MTS Decl. ¶ 3.) Second, as Judge Pregerson concluded, Mr. Klein was in privity with BlazeFrame when BlazeFrame assigned the patents-in-suit to CEMCO. (2d Cal. Case 3/3/17 Order at 6.) Third, Mr. Klein affirmatively consented to the terms of that assignment. (*Id.* at 7.) Finally, the doctrine of assignor estoppel is foremost concerned with whether the alleged infringer "availed itself of the *inventor*'s knowledge and assistance to conduct infringement." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1336-37 (Fed. Cir. 2005) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991)) (emphasis added). The court thus finds it appropriate to refer to Mr. Klein as the "assignor-inventor" here. The question is not whether BlazeFrame itself is in privity with Safti-Seal, but whether Mr. Klein—the named inventor of the patents-in-suit and BlazeFrame's only corporate principal—plays so significant a role at Safti-Seal as to justify estopping Safti-Seal from asserting the same patent invalidity defense that Mr. Klein was barred from pleading in the second suit.

The first and second *Shamrock* factors—the assignor-inventor's leadership in, and ownership of, the defendant company—weigh in favor of extending assignor estoppel to Safti-Seal.  In *Shamrock*, the Federal Circuit found privity between the assignor-inventor and the defendant company in part because the assignor-inventor left the plaintiff company to serve as a vice president of operations at the defendant company, owned substantial stock in that company, and was in charge of the company's allegedly infringing activities.  *Shamrock*, F.2d at 794.  Here, Mr. Klein founded Safti-Seal during or shortly after the conclusion of the second suit,[6] and is Safti-Seal's sole corporate principal.  As in *Shamrock*, Mr. Klein's leadership and ownership roles suggest that he is in privity with Safti-Seal.

The third and fifth *Shamrock* factors—whether the infringing activity began only after the assignor-inventor was hired, and whether the assignor-inventor was hired to start the infringing operations—are either neutral or favor a finding of privity.  As to the third factor, Safti-Seal's operations cannot be said to have "changed course from manufacturing non-infringing goods to infringing activity," *see MAG Aerospace Indus.*, 2015 WL 12488489, at *6, because the company was only a few months old when this action was filed.  Plaintiffs allege that the company has engaged in patent infringement since its founding, however.  As to the fifth factor, Safti-Seal did not "hire" Mr. Klein for

---

[6] In the complaint and motion to strike, Plaintiffs allege that Mr. Klein founded Safti-Seal in June 2017, "[a]t the time the parties were negotiating the settlement" in the second suit.  (Mot. at 3; Compl. ¶ 48.)  In contrast, Mr. Klein attests that he founded Safti-Seal on September 1, 2017.  (Klein MTS Decl. ¶ 4.)  Plaintiffs' reply states that "Klein founded Safti-Seal in September 2017."  (Reply at 5.)

the purpose of carrying out the allegedly infringing activity. *Id.* at *7. Yet Mr. Klein himself created Safti-Seal. Read literally, the third and fifth factors are neutral or non-applicable. Construed to reflect assignor estoppel's equitable concerns, however, these factors favor a finding of privity between Mr. Klein and Safti-Seal.

The remaining *Shamrock* factors, which encompass the assignor-inventor's role in the allegedly infringing activities, similarly weigh in favor of extending assignor estoppel to Safti-Seal. Defendants contend that Mr. Klein himself "invented" the allegedly infringing designs (MSJ (Dkt. # 72) at 4), and do not suggest that anyone other than Mr. Klein is responsible for Safti-Seal's products and operations (*see generally* Resp.). Safti-Seal has thus availed itself of Mr. Klein's knowledge and expertise in conducting the allegedly infringing activities. *See Checkpoint Sys.*, 412 F.3d at 1336-37 ("Privity may be established where there is a close relationship among the relevant parties, such as where the [alleged] infringer availed itself of the inventor's knowledge and assistance to conduct infringement.") (citation and quotation marks omitted).

Having balanced the equities, the court concludes that Safti-Seal, BlazeFrame, and Mr. Klein are in privity for purposes of assignor estoppel. To allow Safti-Seal to contend that the patents-in-suit are invalid would, in light of Mr. Klein's consent to the second settlement agreement and principal role at Safti-Seal, offend the principles of justice and fairness that animate assignor estoppel. *See Diamond Sci.*, 848 F.2d at 1224. In its discretion, the court concludes that striking Defendants' affirmative defense of patent invalidity serves the interest of judicial economy and will "streamlin[e] the ultimate resolution of the action." *California*, 512 F. Supp. at 38. The court finds that leave to

amend is unwarranted because the same affirmative defense was struck with prejudice in the second suit. Accordingly, the court GRANTS Plaintiffs' motion to strike Defendants' affirmative defense of patent invalidity without leave to amend.[7]

## C.     Patent Unenforceability Based on Inequitable Conduct

Plaintiffs also move to strike as barred by assignor estoppel Defendants' affirmative defense of patent unenforceability based on inequitable conduct. (Mot. at 8-9.) In the second suit, Judge Pregerson struck Mr. Klein and BlazeFrame's patent unenforceability defense with prejudice after finding it was precluded by assignor estoppel.[8]

Patent unenforceability based on inequitable conduct is an equitable defense to patent infringement which, if proved, bars enforcement of the patent. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011); *Exergen Corp v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1325 (Fed. Cir. 2009). A defendant alleging inequitable conduct must show that: (1) an individual associated with the filing and

---

[7] Plaintiffs also argue that Defendants' affirmative defense of patent invalidity is barred by the doctrines of collateral estoppel and res judicata. (Mot. at 10-12.) The court need not reach those arguments.

[8] The court observes that in the second suit, Mr. Klein and BlazeFrame asserted an affirmative defense of patent unenforceability based on "all the reasons argued by CEMCO in the prior case" (2d Cal. Case Am. Answer at 18), presumably referring to the 2012 patent infringement suit in which CEMCO was a defendant, *see BlazeFrame Indus., Ltd. v. Cal. Expanded Metal Prods. Co.*, No. CV13-04669-DDP-MRW (C.D. Cal.). Here, Defendants more specifically contend that the patents-in-suit are not enforceable "due to inequitable conduct." (Am. Answer at 10.) In the first patent infringement suit, CEMCO expressly asserted counterclaims based on inequitable conduct. (*See* No. CV13-04669-DDP-MRW (C.D. Cal.), Answer (Dkt. # 10) ¶¶ 16, 25, 34.) Accordingly, the generic "unenforceability" affirmative defense that Mr. Klein and BlazeFrame asserted in the second suit encompassed the affirmative defense of patent unenforceability based on inequitable conduct.

prosecution of a patent application made an affirmative misrepresentation of a material

fact, failed to disclose material information, or submitted false material information; and

(2) the individual did so with a specific intent to deceive the Patent and Trademark Office

("PTO"). *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365-66

(Fed. Cir. 2008); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 1181 (Fed. Cir. 1995).

Defendants' inequitable conduct affirmative defense suffers from the same flaw

that compels application of assignor estoppel to their patent invalidity affirmative

defense: to allow any Defendant, including Safti-Seal, to contend that the patents-in-suit

are unenforceable due to inequitable conduct before the PTO would vitiate the

fundamental principle that "one who has assigned the rights to a patent" should not later

be permitted to contend "that what was assigned is a nullity." *Diamond Sci.*, 848 F.2d at

1224. Indeed, courts have held that where assignor estoppel precludes a defendant from

asserting a patent invalidity affirmative defense, a patent unenforceability defense is

similarly barred. *See, e.g.*, *Semiconductor Energy Lab.*, 706 F.3d at 1370 (noting that

assignor estoppel prevents a party from defending an action on the basis of the contention

that the assigned patent is "unenforceable"); *Synopsys, Inc. v. Magma Design*

*Automation*, No. C-04-3923 MMC, 2007 WL 420184, at *5-6 (N.D. Cal. Feb. 6, 2007)

(stating that a defendant "cannot conduct an end-run around assignor estoppel by

disguising its invalidity arguments as an 'unclean hands' defense") (quotation marks and

citation omitted); *Hexcel Corp. v. Advanced Textiles, Inc.*, 716 F. Supp. 974, 977 (W.D.

Tex. 1989) (striking as barred by assignor estoppel the affirmative defense of patent

unenforceability on the ground that "a party precluded from asserting patent invalidity

based on assignor estoppel may not use . . . allegations [of unclean hands] to escape the purview of the doctrine").

The court refuses to permit Defendants to conduct an end-run around assignor estoppel by asserting that the patents-in-suit are unenforceable because Mr. Klein or his counsel engaged in inequitable conduct before the PTO. For the same reasons that assignor estoppel bars Defendants' affirmative defense of patent invalidity, the doctrine bars Defendants' affirmative defense of patent unenforceability. The court finds that leave to amend is unwarranted because the same affirmative defense was struck with prejudice in the second suit. Accordingly, the court GRANTS Plaintiffs' motion to strike Defendants' affirmative defense of patent unenforceability based on inequitable conduct, without leave to amend.[9]

## D.   Patent Misuse

### 1.   Legal Standards

Plaintiffs move to "dismiss" Defendants' affirmative defense of patent misuse under Federal Rule of Civil Procedure 12(b)(6) for failure to comply with the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (Mot. at 12-13.)

At the outset, the court notes that the proper vehicle for Plaintiffs' challenge to the affirmative defense of patent misuse is a motion to strike pursuant to Rule 12(f) rather than a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 12(f) (providing that a court

---

[9] Plaintiffs also argue that Defendants' affirmative defense of patent unenforceability is barred by the doctrines of collateral estoppel and res judicata, and is insufficiently pleaded. (Mot. at 9-11.) The court need not reach those arguments.

may "strike from a pleading an insufficient defense"); *see also* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed.). Rule 12(b)(6) provides that a party may assert, as a "defense to a claim for relief," that the opposing party has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). An affirmative defense is not a claim for relief. *Bruegge v. Metro. Prop. & Cas. Ins. Co.*, No. 13-CV-1256-JPG-DGW, 2014 WL 2582749, at *1 (S.D. Ill. June 9, 2014). Accordingly, motions to dismiss affirmative defenses are in substance motions to strike pursuant to Rule 12(f) and are properly treated as such. *See, e.g.*, *Nelson v. U.S. Fed. Marshal's Serv.*, No. C16-5680BHS-JRC, 2017 WL 1037581, at *2-3 (W.D. Wash. March 17, 2017) (construing motion to dismiss improperly pleaded affirmative defenses as a motion to strike under Rule 12(f)); *Fed. Deposit Ins. Corp. v. Bulldog Truck & Equip. Sales, LLC*, No. 1:12-CV-4039-CAP, 2014 WL 12623016, at *6 (N.D. Ga. Jan. 17, 2014) (same); *Petit v. S. Fl. Express Bankserv, Inc.*, No. 6:08-cv-721-Orl-31GJK, 2009 WL 1862300, at *1 (M.D. Fl. June 25, 2009) (same). The court thus construes Plaintiffs' Rule 12(b)(6) motion to dismiss the affirmative defense of patent misuse as a motion to strike under Rule 12(f).

Under Rule 12(f), an affirmative defense is sufficient as a matter of pleading if "it gives [the] plaintiff fair notice of the defense." *Wyshak*, 607 F.2d at 827; *see also Simmons v. Navajo Cty.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (applying *Wyshak*'s "fair notice" standard). Under *Wyshak*, "[f]air notice generally requires that the defendant state the nature and grounds for the affirmative defense." *Kohler v. Islands Rests.*, 280 F.R.D. 560, 564 (S.D. Cal. 2012). "It does not, however, require a detailed statement of

facts." *Id.*; *see also In re Wash. Mut., Inc. Secs. Derivative, & ERISA Litig.*, C08-1756MJP, 2011 WL 1158387, at *1 (W.D. Wash. Mar. 25, 2011) ("Detailed pleading is not necessary to give fair notice to the [p]laintiff under Rule 8(c) of the affirmative defense, given that the core factual circumstances are already well known to the parties.").

In their motion, Plaintiffs contend that the plausibility standard set forth in *Twombly* and *Iqbal*, rather than *Wyshack*'s "fair notice" standard, governs the sufficiency of the pleading of affirmative defenses other than inequitable conduct. (*See* Mot. at 12.) *Twombly* and *Iqbal* held that, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)). Whether the pleading standard described in *Twombly* and *Iqbal* applies to affirmative defenses is an issue that has divided the district courts in this circuit. *Compare Am. GNC Corp. v. LG Elecs., Inc.*, No. 17-cv-01090-BAS-BLM, 2017 WL 4792373, at *2 (S.D. Cal. Oct. 24, 2017) (holding that *Twombly* and *Iqbal* do not apply to the pleading of affirmative defenses), *with Fijan, Inc. v. Bitdefender, Inc.*, No. 17-cv-04790-HSG, 2018 WL 1811979, at *3 (N.D. Cal. Apr. 17, 2018) (holding that *Twombly* and *Iqbal* apply to the pleading of affirmative defenses).

This court previously concluded that the heightened pleading standard of *Twombly* and *Iqbal* does not extend to the pleading of affirmative defenses. *Bushbeck v. Chicago Title Ins. Co.*, C08-0755JLR, 2010 WL 11442904, at *2 (W.D. Wash. Aug. 26, 2010). In so doing, the court contrasted the language Rule 8(c)(1), which governs affirmative

defenses, with that of Rule 8(a)(2), which requires a "pleading that states a claim for relief" to contain a "short and plain statement of the claim showing the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); *see also Twombly*, 550 U.S. at 557-58. In *Twombly* and *Iqbal*, the Supreme Court interpreted the "entitlement requirement" of Rule 8(a)(2). *See Twombly*, 550 U.S. at 557-58; *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (explaining that underlying *Twombly* was the principle that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'"). Rule 8(c)(1) lacks Rule 8(a)(2)'s entitlement requirement; it requires only that a party "affirmatively *state* any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1) (emphasis added).

In light of the differences in language between Rule 8(a)(2) and Rule 8(c)(1), and absent further guidance from the Supreme Court or the Ninth Circuit, the court here reiterates its conclusion that *Twombly* and *Iqbal* do not extend to the pleading of affirmative defenses. Accordingly, the court evaluates the sufficiency of Defendants' pleading of the affirmative defense of patent misuse pursuant to the "fair notice" standard set forth in *Wyshak*, 607 F.2d at 827.

### 2. Sufficiency of Pleading

The affirmative defense of patent misuse relates generally to the use of patent rights to obtain or coerce an unfair commercial advantage. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). "The key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly

broadened the scope of the patent grant with anticompetitive effect." *Id.*; *see also Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868-69 (Fed. Cir. 1997). Congress has identified certain practices that are statutorily exempt from allegations of patent misuse. *See* 35 U.S.C. § 271(d). For example, a patent owner does not engage in patent misuse when it "[seeks] to enforce [its] patent rights against infringement or contributory infringement." *Id.*

To provide fair notice of a patent misuse affirmative defense, a defendant must plead more than a conclusory allegation of patent misuse. *Advanced Cardiovascular Sys., Inc. v. Scimed Sys., Inc.*, C-96-0950 DLJ, 1996 WL 467277, at *4 (N.D. Cal. July 25, 1996). Rather, the "[d]efendant must state how [the] plaintiff has attempted to overbroadly and impermissibly construe its patent such as to cause an anticompetitive effect . . . ." *Id.*; *see also Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*, 1:12-cv-01310 LJO SMS, 2015 WL 9583012, at *2 (E.D. Cal. Dec. 30, 2015) (emphasizing that to provide fair notice, the plaintiff must state the "conduct at issue" and "how this conduct may have had an anticompetitive effect").

Here, Defendants allege in their amended answer that Plaintiffs engaged in six practices amounting to patent misuse: (1) "forbidding sales in a fashion that constitutes an impermissible expansion of the geographic scope of the patent rights"; (2) "attempting to prevent the sale of fire safety and/or intumescent tape"; (3) "attempting to interfere with the ability of customers to make permissible repairs to existing patented/licensed products"; (4) "attempting to require Defendants to perform engineering services . . . as a condition precedent to receiving royalties under the patent rights"; (5) "requiring

BlazeFrame to sub-license its trademarks" and engaging in other similar practices; and (6) "asserting patents and claims that Plaintiffs know or believe to be invalid and/or unenforceable." (Am. Answer at 8-9.)

As Plaintiffs point out, Defendants made the same allegations in support of the patent misuse affirmative defense they asserted in the second suit. (*See* 2d Cal. Case Am. Answer at 16-17.) In that case, Judge Pregerson granted Plaintiffs' motion to strike the patent misuse affirmative defense but granted Defendants leave to amend. (2d Cal. Case 3/3/17 Order at 7.) In so doing, the court observed that Defendants did not "substantively oppose Plaintiffs' patent misuse argument," even as they averred that their pleadings were legally sufficient. (*Id.*) Judge Pregerson's order thus did not reach the "fair notice" argument that Plaintiffs press here. (*See generally id.*)

Viewing the pleadings in the light most favorable to the pleading party, the court concludes that Defendants' amended answer provides Plaintiffs fair notice of the factual bases underlying Defendants' affirmative defense of patent misuse. Defendants' pleading is not a model of precision, and contains several legal conclusions couched as factual allegations, including, for instance, the first and sixth allegations set forth above. (*See* Am. Answer at 8-9.) But Defendants do not simply plead conclusory allegations of patent misuse. They support their contention that Plaintiffs have sought to "expand[] the temporal and geographic scope" of the patents-in-suit with allegations that Plaintiffs have engaged in specific practices—such as attempting to interfere with customers' ability to make repairs to patented products—with anti-competitive effect. (*See id.*) The court reiterates that under the fair notice pleading standard, Defendants need not put forth

detailed factual allegations, but rather must provide notice of the nature and grounds for the affirmative defense. *Kohler*, 280 F.R.D. at 564. Defendants satisfy that requirement here.

Additionally, the court rejects Plaintiffs' argument that Defendants' patent misuse affirmative defense is "untenable" in light of the details of the first and second settlement agreements. (Mot. at 13.) The first settlement agreement granted BlazeFrame a geographically restricted license to sell products covered by the patents-in-suit. (*See id.*) According to Plaintiffs, "Defendants' contention that CEMCO has impermissibly expanded the temporal and geographic of the [patents-in-suit] by enforcing the territorial restrictions that [Mr.] Klein and BlazeFrame agreed to in the [first settlement agreement] fails[,] because . . . CEMCO has done nothing more than enforce the patents that it purchased based on the settlement terms." (*Id.*) Plaintiffs further contend that under the second settlement agreement, BlazeFrame's license to sell products covered by the patents-in-suit expired on December 31, 2017, rendering "moot" any "restrictions [imposed] pursuant to the license." (*Id.*) Plaintiffs' arguments go to the merits of Defendants' patent misuse affirmative defense, not the sufficiency of the pleading, and rely on facts not before the court. They are thus not appropriate for consideration on a motion to strike. *See Neveu v. City of Fresno*, 392 F. Supp. 2d. 1159, 1185 (E.D. Cal. 2005) (noting that "an argument on the merits . . . is not appropriate on a Rule 12(f) motion to strike").

//

//

The court thus DENIES Plaintiffs' motion to dismiss, construed as a motion to strike, Defendants' affirmative defense of patent misuse.[10]

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' motion to strike Defendants' affirmative defenses of patent invalidity and patent unenforceability and DENIES Plaintiffs' motion to strike Defendant's affirmative defense of patent misuse (Dkt. # 75).

Dated this 29th day of November, 2018.

The Honorable James L. Robart
U.S. District Court Judge

---

[10] In their motion, Plaintiffs summarily contend that Defendants should be estopped from asserting a patent misuse affirmative defense because under the second settlement agreement, "Defendants granted Plaintiffs a release regarding all of the activities alleged in Defendants' patent misuse defense." (Mot. at 2; *see also* Reply at 9 (arguing that "the supposed factual allegations that underlie Defendants' misuse defense were all released in the [second] settlement").) Plaintiffs cite no legal authority to support this position. (*See generally* Mot.; Reply.) Nor do Plaintiffs furnish evidence in their motion to support the contention that under the second settlement agreement, Defendants agreed to "release" the "factual allegations" underlying their patent misuse affirmative defense. (*See generally* Mot.; Reply.) Accordingly, the court does not address this argument. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).