THE HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

CALIFORNIA EXPANDED METAL PRODUCTS COMPANY, a California corporation; and CLARKWESTERN DIETRICH BUILDING SYSTEMS LLC, dba CLARKDIETRICH BUILDING SYSTEMS, an Ohio limited liability company,

Plaintiffs,

v.

JAMES A. KLEIN, an individual; BLAZEFRAME INDUSTRIES, LTD., a Washington company; and SAFTI-SEAL, INC., a Washington company,

Defendants.

CASE NO. 2:18−cv−00659−JLR

**PLAINTIFFS' COMBINED (1) REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

**NOTE ON MOTION CALENDAR: June 28, 2019**

**Table of Contents**

PAGE

I.      INTRODUCTION ...............................................................................1

II.     REPLY ARGUMENT ........................................................................3

        A.      Each Accused Product Meets Each Asserted Patent
                Claim ....................................................................................3

                1.      Plaintiffs' Infringement Contentions Show How Each
                        Asserted Patent Claim Applies to Each Accused Product.........................3

                2.      The Safti-Seal Products Are the Same as the BlazeFrame®
                        Products (which Indisputably Embody the Patents) Except
                        as to the Thermal Barrier ......................................................6

        B.      Safti-Seal's Accused Products Infringe the Patents-in-Suit Because
                the "Thermal Barrier" Is Part of the Intumescent Strip .........................7

                1.      The "Thermal Barrier" Is a "Non-intumescent Substrate"
                        Included in the Court's Claim Construction.............................8

                2.      Defendants' Arguments Ignore the Court's Claim
                        Construction...........................................................8

                3.      The Court's Claim Construction Does Not Limit the
                        Intumescent Strip to a Composition Having Only One
                        Layer of Adhesive.....................................................10

                4.      The Pessiki Report Does Not Raise any Triable Issue of
                        Fact ..................................................................11

        C.      Safti-Seal's Accused Products Infringe the Patents-in-Suit Because
                the Safti-Seal's Intumescent Strip Is "Affixed . . . On" the Metal
                Header's Sidewall .................................................................13

        D.      The Accused Safti-Seal Products Infringe Under the Doctrine of
                Equivalents .......................................................................14

        E.      The "Safti-Strip" Tape Infringes the Patents-in-Suit................................16

                1.      Defendants Induce Infringement by Selling the Safti-Strip
                        Tape to be Used in an Infringing Manner................................16

                2.      No Substantial Noninfringing Use of the Safti-Strip................................18

TROJAN LAW OFFICES
BEVERLY HILLS

3.      Potential "Noninfringing Uses" of the Safti-Strip Tape Does Not Matter Because There Is Overwhelming Evidence That Defendants Intended the Safti-Strip Tape to be Used in an Infringing Manner ............................................................... 20

F.      The Metal Track Products .................................................................... 20

G.      Klein Has Infringed the Patents-in-Suit ............................................... 21

H.      The Undisputed Facts Establish a Breach of Contract ......................... 22

I.      Plaintiffs Are Entitled to Summary Judgment on Defendants' Patent Misuse Defense ...................................................................... 23

1.      Collateral Estoppel Bars Defendants' Patent Misuse Defense ...................................................................................... 23

2.      There Is No Tying Agreement .................................................. 23

3.      No Reverse Settlement Payment .............................................. 24

III.      CONCLUSION ..................................................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

# TABLE OF AUTHORITIES

*Cases*                                                                          PAGE

*AFG Indus., Inc. v. Cardinal IG Co.*,
    239 F.3d 1239 (Fed. Cir. 2001) ...................................................................14

*Baxter Int'l, Inc. v. CareFusion Corp.*,
    No. 15-CV-9986,
    2017 WL 1049840 (N.D. Ill. Mar. 20, 2017) ...................................................16

*CIAS, Inc. v. Alliance Gaming Corp.*,
    504 F.3d 1356 (Fed. Cir. 2007) ...................................................................11

*Comm. for Idaho's High Desert, Inc. v. Yost*,
    92 F.3d 814 (9th Cir. 1996) ...................................................................2, 21

*C.R. Bard, Inc. v. Adv. Cardiovascular Sys., Inc.*,
    911 F.2d 670 (Fed. Cir. 1990) ...................................................................18

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    559 F.3d 1308 (Fed. Cir. 2009) ...................................................................14

*Elektromedizin GmbH v. Canady Tech. LLC*,
    629 F.3d. 1278 (Fed. Cir. 2010) ...................................................................18

*F.T.C. v. Actavis, Inc.*,
    570 U.S. 136 (2013)...................................................................24

*Johns Hopkins Univ. v. Datascope Corp.*,
    543 F.3d 1342 (Fed. Cir. 2008) ...................................................................16

*Microsoft Corp. v. Suncrest Enter.*,
    No. C03-5424 JF (HRL),
    2006 WL 1329881 (N.D. Cal. May 16, 2006)...................................................21

*Nelson v. Pima Cmty. Coll.*,
    83 F.3d 1075 (9th Cir. 1996) ...................................................................23

*Perez v. Gordon & Wong Law Grp.*,
    P.C., No. 11-CV-03323-LHK,
    2012 WL 1029425 (N.D. Cal. Mar. 26, 2012) ...................................................24

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ...................................................18, 19, 20

*Vanguard Prods. Corp. v. Parker Hannifin Corp.*,
    234 F.3d 1370 (Fed. Cir. 2000) ...................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) .............................................................................7

*Zendel v. Circle Location Servs., Inc.*,
    No. CV1107963SJOCWX,
    2012 WL 12877182 (C.D. Cal. Apr. 5, 2012) ...................................................22

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
    19 F.3d 1418 (Fed. Cir. 1994) ...........................................................................16

### Codes, Rules, & Statutes                                                 PAGE

35 U.S.C. §271(b)        ........................................................................................16

TROJAN LAW OFFICES
BEVERLY HILLS

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs California Expanded Metals Company (CEMCO) and ClarkWestern Dietrich Building Systems, LLC (ClarkDietrich) (collectively, "Plaintiffs") respectfully submit this combined:

(1) Reply to Defendants Safti-Seal, Inc., BlazeFrame, Ltd., and James A. Klein's (collectively, "Defendants") Opposition (Dkt. #104) to Plaintiffs' Motion for Partial Summary Judgment (Dkt. #102), and,

(2) Opposition to Defendants' Cross-Motion for Summary Judgment[1] (Dkt. #104).

## I.    INTRODUCTION

Defendants have failed to raise a triable issue of fact as to Plaintiffs' second cause of action for patent infringement, which claims that the accused Safti-Seal products infringe the Patents-at-Issue. Under the Court's construction, the accused products are infringing because each contains a "strip that comprises a substance that expands when exposed to heat" (DE 98, at 10), i.e., the Safti-Seal intumescent strip contains intumescent material plus a thermal barrier. It includes intumescent material, but is not limited to only intumescent material. *Id.* The thermal barrier is part of the intumescent strip – *i.e.*, the thermal barrier is a non-intumescent substrate on which the intumescent substance lies. Ignoring the Court's claim construction, Defendants attempt to re-litigate claim construction when they argue that the thermal barrier is not part of the claimed intumescent strip but rather is just one of several layers and that it is separate from the intumescent substance and adhesive layers. But these arguments do not avoid infringement because the Court's construction does not limit the strip to any specific composition or configuration of intumescent substance and non-intumescent substrate.

---

[1] Defendants' cross-motion for summary judgment is an improper "second bite" at the proverbial apple because Defendants have already moved for summary judgment on the patent infringement claims (Dkt. #72), which the Court denied (Dkt. #89).

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Even if the thermal barrier is deemed not to be part of the "intumescent strip," the accused Safti-Seal products still infringe under the doctrine of equivalents because they perform substantially the same function (*i.e.* seal head-of-wall construction joints) in substantially the same way (*i.e.* using intumescent substance) with substantially the same result (*i.e.* sealed joints) as claimed in the Patents-at-Issue.

In addition to direct patent infringement by the Safti-Seal slotted track products, Klein and Safti-Seal also induce infringement and contributorily infringed by selling the Safti-Strip tape to be assembled onto metal tracks into the claimed head-of-wall assemblies at the job sites, and by selling track with factory-applied Safti-Strip for assembly into infringing wall-assemblies.  Specifically, Klein and Safti-Seal provide instructional videos on the Safti-Seal website instructing customers how to apply the Safti-Strip tape to the metal tracks, and to use Safti-Frame track, to construct infringing head-of-wall assemblies.  Safti-Seal's website features photographs of the Safti-Strip tape and the Safti-Frame track used solely on infringing "Current Projects" comprising infringing head-of-wall assemblies.

Klein is personally liable for the infringement because he is the founder, sole owner, and sole officer of Safti-Seal.  The Ninth Circuit instructs that "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."  *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).  Therefore, Klein is personally liable for the patent infringement that he authorized and directed through Safti-Seal.

Further, because Klein is personally liable for infringing the Patents-at-Issue, he is also in breach of contract.  Under the settlement agreement in the prior litigation, Klein is prohibited from offering for sale or selling any product covered by the Patents-at-Issue and he agreed not to offer for sale or sell intumescent strips that he knows will be used to make the products licensed under

the Patents-at-Issue.  (Dkt. #11-1.)  Klein's sale of the infringing Safti-Seal products is a continuing breach of the settlement agreement.

## II.    ARGUMENT

### A.    Each Accused Product Meets Each Asserted Patent Claim

Defendants argue that "Plaintiffs' Motion treats all Safti-Seal products as though they were the same" and "does not distinguish between products…" (Dkt. #104 at 7:7-8.)  This is not correct. Plaintiffs have set forth in detail how the asserted patent claims read on the accused products in Plaintiffs' Infringement Contentions, which was submitted in support of Plaintiffs' summary judgment motion.  (Dkt. #103-5.)  Even so, it is not necessary to distinguish the individual accused products because the question of infringement hinges on the singular question of whether the asserted claims read on the products despite having a "thermal barrier."[2]

#### 1.    Plaintiffs' Infringement Contentions Show How Each Asserted Patent Claim Applies to Each Accused Product

In Plaintiffs' 58-page Infringement Contentions submitted in support of Plaintiffs' summary judgment motion, Plaintiffs analyze in detail how each and every asserted claim reads on the following accused products:

1.  Safti-Strip™ 'Peel and Stick' Install (All Products)
2.  DSL - Slotted Leg (Both Sides) (All Products)
3.  SL - Slotted Leg (One Side) (All Products)
4.  DL - Solid Deep Leg (All Products)
5.  Shaft Wall (All Products)

_____

[2] Defendants are also inaccurate when the claim that Plaintiffs have asked for summary judgment of infringement by Defendant Blazeframe Industries. Def. Brief, at 3. Plaintiffs have not requested a finding of summary judgment of infringement against Blazeframe Industries. Similarly, Defendants have not provided any evidence on the issue of this claim, and so are not entitled to summary judgment of non-infringement by Blazeframe Industries.

TROJAN LAW OFFICES
BEVERLY HILLS

6. Flute Cover – (Vertical (VT), Bottom Track (BT), Bottom J-Runner Cover Base (BJR))

7. Resilient Channel (All Products)

8. Offset Legs (All Products)

(Dkt. #103-5 at 5/70.)

For example, Plaintiffs show that the DSL – Slotted Leg has the following claim elements:



(Dkt. #103-14 at 10/53; Dkt. #103-5 at 14/70.)  The infringement contentions apply equally to the other Safti-Seal products because all the products have in common the key elements of a metal track (with a web and a sidewall) and an intumescent strip affixed in the same location.  (*Id*.)  Though some of the metal tracks have slightly different profiles, the differences are immaterial to infringement because all the elements of the metal track that are claimed in the patents can be found in the accused products.

Defendants also argue that the Safti-Seal products cannot infringe any claims directly because they do not provide studs, wallboard, and other components of the finished wall assemblies. However, they ignore at least the claims of the '314 and '718 patents. Claims 6-9 of the '314 patent are directed to "a generally U-shaped sheet metal track" that is slotted and does not require wallboard, etc., nor are these claims limited to "header" tracks. '314 patent, cl. 6-9. Similarly, claims 12-15 of the '718 patent are directed to "an elongated U-shaped sheet metal track"

TROJAN LAW OFFICES
BEVERLY HILLS

that is slotted and does not require wallboard, etc., nor are these claims limited to "header" tracks.

'718 patent, cl. 12-15.

In any event, for both the claims directed to track alone and those directed to track incorporated in a wall assembly (whether slotted or unslotted), what matters most is that the location of the intumescent strip is the same for all the accused products, for example:

| Safti-Seal Product Name | Safti-Seal Product Drawing |
|---|---|
| SL - Slotted Leg (One Side) (All Products) |  Dkt. #103-14 at 9/53 |
| DL - Solid Deep Leg (All Products) |  *Id*. at 8/53 |

(*See* Supplemental Declaration of R. Joseph Trojan ("Supp. Trojan Decl."), Ex. 20.)

Defendants themselves make no distinction among the accused products in their Opposition.  In particular, Defendants do not point out how the metal tracks are different, how such

TROJAN LAW OFFICES
BEVERLY HILLS

differences matter to the determination of infringement, or what particular elements of the metal tracks cannot be found in the claims.

In fact, in discovery Defendants did not identify a single element of the metal tracks that they contend is not covered by the claims.  For example, Plaintiffs propounded Interrogatory No. 16, which asked:

> For Your Eighth Affirmative Defense asserting that "Defendants do not directly infringe and have not directly infringed, either literally or under the doctrine of equivalents, and do not indirectly infringe and have not indirectly infringed, by contributing to infringement or inducing infringement of, any valid and enforceable claim of any of United States Patent Numbers 7,681,365, 7,814,718, 8,136,314, 8,151,526, 7,866,108, and 8,056,293," describe in detail the factual bases supporting said defense…

(Supp. Trojan Decl., Ex. 17 at Response to No. 16.)  Defendants responded with boilerplate objections, without identifying any fact tending to show that the asserted patent claims do not read on any particular features of the metal tracks, or other elements of the claims.  (*Id.*)

It is thus disingenuous for Defendants to now argue that Plaintiffs did not "specifically explain why each product meets each element of each asserted patent claim" (Dkt. #104 at 7:8-10) when Defendants have never disputed infringement on any ground other than the "thermal barrier."

**2.    The Safti-Seal Products Are the Same as the BlazeFrame® Products (which Indisputably Embody the Patents) Except as to the Thermal Barrier**

Defendants admit that there is no question of fact that the BlazeFrame products are covered by the claims at issue. Def. Brief, at 3 ("the Plaintiffs' own products embody the patents-in-suit"). Defendants further admitted in their Answer that the *only* difference between the "Safti-Seal products and any products covered by the Patents in [S]uit [is] that the Safti-Seal products have the intumescent strip attached to a thermal barrier and not [directly] to the sidewall of the header

TROJAN LAW OFFICES
BEVERLY HILLS

1   track."[3]   (Dkt. #71 at ¶16 (emphasis added).)  Defendants reiterated this in their own prior motion

2   for summary judgment:

3           Plaintiffs and Defendants thus both apply competing fire safety strips onto
        metal header tracks. Plaintiffs' product is an intumescent strip in the form
4           of a self-adhering "tape" …, whereas Defendants' product is also a tape
        product but, unlike Plaintiffs', it consists of an intumescent material glued
5           onto a strip of a thermal insulating material (thermal barrier).

6   (Dkt. #72 at 14:2-7.)

7           Furthermore, in their present briefing (at p. 3), Defendants admit that the only fact in dispute

8   is whether "[t]he Safti-Seal thermal barrier is part of the intumescent strip."

9

10          Given Defendants' admission that the BlazeFrame® products are covered by the Patents-

11  at-Issue, it follows as a matter of logic that if the only difference between the Safti-Seal products

12  and the BlazeFrame® products is the thermal barrier, then the infringement analysis need only

13  focus on the thermal barrier. The balance of the claim limitations are admitted to have been met by

14  the Safti-Seal products. Despite Defendants' suggestion to the contrary, the fact that there is one

15  difference between the Safti-Seal products and the BlazeFrame products does not in itself mean

16  that the Safti-Seal products cannot infringe the patents-in-suit.  It is axiomatic that patent claims

17  can cover more than one embodiment of an invention. *See Verizon Servs. Corp. v. Vonage Holdings*

18  *Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) ("We normally do not interpret claim terms in a way

19  that excludes disclosed examples in the specification.")

20

21      **B.      Safti-Seal's Accused Products Infringe the Patents-in-Suit Because the**

22              **"Thermal Barrier" Is Part of the Intumescent Strip**

23          Defendants argue that the thermal barrier is not part of the "intumescent strip." (Dkt. #104

24  at 13:21.)  Defendants then argue:

25

26

27  _____

28  [3] Defendants inaccurately attribute this statement to Plaintiffs. Def. Brief, at 17, fn. 8.

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4

> [T]he intumescent strip is a separate component from the thermal barrier…
> The thermal barrier in the Safti-Seal products…is made of closed-cell
> foam.…The thermal barrier obviously is not an adhesive itself; rather, it is
> plied to the metal profile of the header track on one side, and to the
> intumescent strip on the other, with two separate adhesive layers.…the
> intumescent strip and the thermal barrier are different components.

5

(Dkt. #104 at 16:11-20.)  This argument that "the intumescent strip and the thermal barrier are

6

different components" because the thermal barrier "is made of closed-cell foam" is an attempt to

7

re-argue claim construction. The Court has already ruled that the intumescent strip can include

8

more than just intumescent material. The Court's construction does not limit the strip to any specific

9

composition or configuration as long as the strip includes intumescent material somewhere.

10
11
12

### 1.      The "Thermal Barrier" Is a "Non-intumescent Substrate" Included in the Court's Claim Construction

13

The Court construed "intumescent strip" to mean a "strip that comprises a substance that

14

expands when exposed to heat." (Dkt. #98 at 19:9-10.)  The Court also explained how to apply its

15

construction, stating "[t]his construction makes clear that the intumescent strip need not include

16

only an intumescent substance. It is also broad enough to encompass preferred embodiments in

17
18
19

which the strip consists of a composition containing an intumescent substance, where that **composition lies atop a non-intumescent substrate**."  (*Id*. at 19:10-14 (emphasis added).)

20

The Defendants' thermal barrier is simply the "non-intumescent substrate" in the Court's

21

claim construction.  Hence, the "thermal barrier" is part of the intumescent strip under the Court's

22

claim construction.

23

### 2.      Defendants' Arguments Ignore the Court's Claim Construction

24

Defendants argue the Court "left an appropriate degree of flexibility in the term. What it did

25

not do was rule that any strip of material is always an intumescent strip, as the patents use that

26
27

phrase, if it happens to have some amount of intumescent material in it. Yet that, in essence, is what

28

TROJAN LAW OFFICES
BEVERLY HILLS

the Plaintiffs argue." (Dkt. #104 at 14:2-5.) This is a mischaracterization of the Court's construction.

The Court left "an appropriate degree of flexibility" in the term "intumescent strip" sufficient to encompass a thermal barrier or other additional material. The Court rejected Defendants' argument that an additional substance cannot be part of the intumescent strip during claim construction because the Court explicitly held that "Defendants' construction of 'intumescent strip' is too narrow." (Dkt. #98 at 18:17-19 (citation omitted).) As the Court explained, the Defendants' construction excludes embodiments in the specification: "Defendants' construction does not encompass intumescent strips in which the composition that contains the intumescent substance lies upon a non-intumescent substrate like wax paper or mineral wool." (Dkt. #98 at 18:22-19:2.)

It does not matter that the intumescent strip and the thermal barrier are "different components," as Defendants argue, because the word "component" is not part of the Court's construction. The Court's construction did not limit the intumescent strip to a homogeneous one-piece construction. The Court's construction uses the terms "intumescent substance" and "non-intumescent substrate." (Dkt. #98 at 19:10-14.) Defendants cannot dispute that the thermal barrier is a "non-intumescent substrate."

Nonetheless, Defendants do actually dispute this. They argue that the thermal layer cannot be the non-intumescent substrate because the intumescent strip from Rectorseal includes a thin protective coating on the outside of the intumescent material, and so this protective coating is the only permitted "substrate." Def. Brief, at 19-20. This assertion is incorrect and misses the point. The Ackerman patent includes an "Example" that describes "the practice of the present invention in its preferred embodiments." (Dkt. #93-7 at 6:14-15.) The example includes both a non-intumescent substrate (a flexible Mylar polyethylene terephthalate film) on one side and "a

TROJAN LAW OFFICES
BEVERLY HILLS

protective sheath" on the other side. According to the Court's claim construction order, the Patents incorporated the preferred embodiments of the Ackerman Patent: "The '718 Patent and the '314 Patent thus do explicitly what the '365 Patent did by incorporation by reference: they sweep into the Patents not only the specific compositions of the intumescent strips the Ackerman Patent claims, but also the Ackerman Patent's preferred embodiments." Claim Construction Order, p. 18, ll. 13-16. The Court's claim construction clearly covers an embodiment with both a non-intumescent substrate and a protective coating. It is not limited to one or the other as Defendants suggest.

### 3.    The Court's Claim Construction Does Not Limit the Intumescent Strip to a Composition Having Only One Layer of Adhesive

Further, the Court noted in its claim construction order:

> Defendants' construction appears not to embrace a preferred embodiment, expressly described in all the Patents, in which the intumescent strip "has an adhesive backing that allows it to be readily affixed onto the outer sidewall surface." (See '365 Patent at 5:3-4; '718 Patent at 5:5-6; '314 Patent at 5:5-6; '526 Patent at 5:39-40.) Defendants' construction is thus fatally under-inclusive." (*Id*. at 19:3-8.)

(Dkt. #98 at 19:3-8.)

In response to this, Defendants now argue that "[t]he thermal barrier obviously is not an adhesive itself; rather, it is plied to the metal profile of the header track on one side, and to the intumescent strip on the other, with two separate adhesive layers." (Dkt. #104 at 16:11-20.) Defendants miss the point. The Court's construction refers to a "non-intumescent substrate." The "non-intumescent substrate" is not limited to just an adhesive layer. Likewise, the Court further rejected Defendants' arguments that the claimed "intumescent strip" is limited to a strip manufactured according to one process described in the patent specification. Therefore, Defendants' argument that the thermal barrier is not an adhesive layer is irrelevant. Those arguments were rejected in claim construction and should be given no weight now on infringement.

TROJAN LAW OFFICES
BEVERLY HILLS

1   To the extent the accused Safti-Seal products have both a thermal barrier and an adhesive

2   interposed between the intumescent substance and the outer sidewall surface, both are non-

3   intumescent substrates and so are part of the claimed "intumescent strip." Alternatively, if (as

4   Defendants' argue), the thermal barrier is considered to be a separate article, the existence of that

5   thermal barrier still does not avoid infringement. With its "comprising" language, the claim is an

6   open-ended claim and the thermal barrier is nothing more than an additional, unrecited element.

7   *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007) (infringing device may

8   

9   include additional, unrecited elements).

10   Moreover, the Court's claim construction does not require that the "intumescent substance"

11   sit directly on top of an adhesive.   Rather, the Court said that the "intumescent substance…lies

12   atop a non-intumescent substrate." (Dkt. #98 at 18:22-19:2.) The "non-intumescent substrate"

13   does not have to be an adhesive. Therefore, Defendants' argument that the thermal barrier is not

14   an adhesive fails because the Court's construction is not limited to adhesive barriers because that

15   construction permits a multi-layer "intumescent strip."

16   

17   **4.   The Pessiki Report Does Not Raise any Triable Issue of Fact**

18   Defendants rely on the Declaration of Dr. Stephen Pessiki to argue that the thermal barrier

19   is not part of the intumescent strip:

20   
> People of ordinary skill in the art reading the patents, or using the phrase
> "intumescent strip" in their industry, would understand the intumescent
> strip to be the Rectorseal component. (Pessiki Decl. at ¶ 21.) They would
> not understand the separate thermal barrier to be part of that commercially
> available component – because it is not. (*Id.*)

21   

22   

23   

24   (Dkt. #104 at 16:4-10.) Defendants' argument attempts to relitigate the Court's claim construction

25   of "intumescent strip" by relying on the Pessiki declaration (Dkt. #104-1) as extrinsic evidence.

26   Because the Court already construed "intumescent strip," Dr. Pessiki's opinion on how people of

27   

28   

TROJAN LAW OFFICES
BEVERLY HILLS

ordinary skill in the art would "understand" the meaning of "intumescent strip" is irrelevant and too late.

Further, Dr. Pessiki opines that the thermal barrier is separate from the intumescent strip because of the way the accused products are manufactured:

> Neither is the thermal barrier a part of the intumescent strip, as it is applied after the intumescent strip is manufactured, packaged, and sold as a complete and independent "intumescent strip." The thermal barrier cannot be deemed to be the "flexible substrate" identified in the Patents- at-Issue, as the pre-manufactured intumescent strip that is a component part of Safti-Seal's product has already been extruded onto a flexible substrate of its own.

(Dkt. #104-1 at ¶20.)   The Court expressly rejected Defendants' arguments during claim construction that sought to import limitations about manufacturing into the claims:

> Yet, the Patents claim a product that features an intumescent strip, rather than a specific means of manufacturing an intumescent strip. Defendants' proposed construction elides that distinction. In so doing, Defendants contravene the rule that "[a] novel product that meets the criteria of patentability is not limited to the process by which it was made." *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372-73 (Fed. Cir. 2000) (emphasizing that "[t]he method of manufacture, even when cited as advantageous, does not of itself convert product claims into claims limited to a particular process").

(Dkt. #98 at 14:10-17.)

No matter how the Safti-Strip is manufactured, the thermal barrier is part of the Safti-Strip tape as marketed and sold.  The roll of Safti-Strip tape includes intumescent material, the thermal layer, and the adhesive layer as a single product that is applied to the metal tracks:



TROJAN LAW OFFICES
BEVERLY HILLS

1

(Dkt. #104-1 at 8:7-17.) This unitary, multi-layer tape is an "intumescent strip."

2

3

Lastly, Dr. Pessiki's opinion concerning Underwriter Laboratories ("UL") requirements

4

(Dkt. #104-1 at pp. 3-8 and 9-12) is especially irrelevant because UL requirements have no bearing

on claim construction nor patent infringement.  The patents do not require UL certification as a

5

claim limitation.

6

7

In short, the Pessiki declaration does not raise a triable issue of fact as to patent

infringement. It is, at best, directed to issues of claim construction that have already been decided,

8

9

and so is not relevant to any of the issues in these summary judgment motions.

10

**C.    Safti-Seal's Accused Products Infringe the Patents-in-Suit Because the Safti-**

11

**Seal's Intumescent Strip Is "Affixed . . . On" the Metal Header's Sidewall**

12

The Safti-Seal intumescent strip comprises intumescent material and thermal barrier. This

13

strip is "affixed … on" a sidewall of a metal track. There can be no material dispute that, therefore,

14

the Safti-Seal intumescent strip, as part of a track product, literally infringes the patents-in-suit.

15

16

Defendants argue that the intumescent strip of the accused Saft-Seal products is not

"affixed…on" the sidewall because:

17

18

> Where the patents teach, at most, is a three layer design: (1) an intumescent
> strip, affixed with (2) adhesive, to (3) a metal sidewall. Yet the accused
> products incorporate a five-layer design: (1) an intumescent strip, affixed
> with (2) a layer of adhesive, to (3) a thermal barrier, which is affixed with
> (4) another layer of adhesive to (5) a metal sidewall.

19

20

21

(Dkt. #104 at 19:6-10.)  Defendants' "five-layer" argument is meritless because the Court's claim

22

construction does not limit the combination of intumescent substance and non-intumescent

23

substrate to any specific number of layers or configuration of layers.  The Court construed "affixed

24

lengthwise on at least one of the outer sidewall surfaces" to mean "attached lengthwise, directly or

25

by means of an intervening adhesive, to at least one of the outer sidewall surfaces."  (Dkt. #98 at

26

26:20-22.)  The Court's claim construction does not limit the intervening adhesive to one layer nor

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

prohibit other layers that can make up the claimed "strip" from being interposed in between the intumescent substance and the outer sidewall surface.

In *AFG Indus., Inc. v. Cardinal IG Co.*, the Federal Circuit determined that even when a patent claims describe a composition of layers of materials, the interposition of additional layers is still covered by such claims. *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1251 (Fed. Cir. 2001). The Federal Circuit held:

> The parties dispute whether the claim language requires that each successive layer be "formed on" the prior layer in such a way that nothing is interposed between each layer. As described above, however, the court has determined that the claim language and the specification permit the presence of interlayers between layers. Notably, the claim does not state that each layer is "formed directly on" the preceding layer. Accordingly, we determine that "formed on" does not mean "directly in contact with."

*Id.*, 239 F.3d at 1251. As in *AFG Indus.*, the additional "layers" in the accused product are still covered by the Court's claim construction.

### D.      The Accused Safti-Seal Products Infringe Under the Doctrine of Equivalents

To the extent Defendants contend the accused Safti-Seal products do not literally infringe the Patents-at-Issue under the Court's claim construction, the accused products still infringe under the doctrine of equivalents. The accused products infringe under the doctrine of equivalents because they perform substantially the same function in substantially the same way with substantially the same result as claimed in the Patents-at-Issue. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). They perform substantially the same function (*i.e.* seal head-of-wall construction joints) in substantially the same way (*i.e.* using intumescent substance) with substantially the same result (*i.e.* sealed joints) as claimed in the Patents-at-Issue. (*See* https://www.saftiseal.com.)

Defendants argue that the accused product do not infringe under the doctrine of equivalents because the Safti-Seal intumescent strip works in a different "way" to allow it to pass UL's testing:

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5

> The invention in the patents-in-suit does not – without substantial modification – pass fire testing standards by Underwriter Laboratories, whereas the accused products do….The undisputed facts that (1) the Plaintiffs' products embody the patents…, (2) Safti-Seal's thermal barrier is a primary difference between the parties' products (id. at 6), and (3) **the products function differently and produce different results in testing**; all are strong evidence that the thermal barrier is a difference between what the patents claim and Safti-Seal sells.

6

(Dkt. #104 at 16:21-17:3 (emphasis added; internal citations omitted).)

7
8
9
10
11
12
13
14
15

The claimed purpose of the patents is not to pass UL testing.  As stated in the Patents-at-Issue, the purpose is to seal gaps in the wall construction to prevent smoke and fire from spreading through room.  For example, the '365 Patent states that "[t]he invention disclosed herein is directed to a fire retardant head-of-wall assembly configured to seal a linear head-of-wall construction joint or gap when exposed to a heat source such as a building fire." (Dkt. #103-1 at Abstract.)  As recited in the preamble of claim 1 of the '365 Patent, the claimed head-of-wall assembly is "configured to seal a linear head-of-wall construction joint or gap when exposed to a heat source..." (Dkt. #103-1 at col. 6, lines 43-45.)

16
17

Klein admits that the Safti-Strip (with the thermal barrier) serves this same purpose:

18
19
20
21

> In Safti-Seal's new products, the flow of heat (as liberated from a fire) to the intumescent layer is significantly delayed because the heat must first pass through the insulating thermal barrier layer … Thus, it takes a substantially longer period of time for the flow of heat to reach the intumescent layer, which, in turn, means it takes substantially longer for the intumescent layer to expand, and for heat to transfer to the far side of the wall.

22
23
24
25
26

(Dkt. #104-3 at ¶13.)  While the thermal barrier may retard heat flow across the intumescent strip in the accused products, the function, manner, and result of using an intumescent strip to "seal a linear head-of-wall construction joint or gap when exposed to a heat source" is the same as claimed in the Patents-at-Issue.

27
28

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

How the accused products fare in UL certification testing is irrelevant to infringement under the doctrine of equivalents because UL standards are not the standard for judging the utility of the invention, particularly when UL standards are not mentioned in any of the claims.  UL safety standards are irrelevant here just as FDA standards were irrelevant in certain pharmaceutical patent cases.  *See, e.g., Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1349 n.3 (Fed. Cir. 2008) (explaining that FDA equivalence is not relevant to whether patent infringement occurred); *Baxter Int'l, Inc. v. CareFusion Corp.*, No. 15-CV-9986, 2017 WL 1049840, at *5 (N.D. Ill. Mar. 20, 2017) ("FDA approval is irrelevant to the question of patent infringement."); *see also*, *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent.").

### E.   The "Safti-Strip" Tape Infringes the Patents-in-Suit

Defendants argue that the Safti-Strip tape by itself does not *directly* infringe the Patents-at-Issue because Defendants sell the intumescent tape separately for assembly onto metal tracks by the customers.  (Dkt. #104 at 1:16-20.)  As Plaintiffs made clear in their Infringement Contentions, Plaintiffs are asserting only indirect infringement of the Safti-Strip tape itself. Defendants induce infringement of the Patents-at-Issue by selling Safti-Strip tape to customers to build the claimed head-of-wall assemblies:

> Plaintiffs further contend that Safti-Seal and/or Klein indirectly infringe the patent claims set forth herein, under at least 35 U.S.C. §271(b), by actively and knowingly inducing infringement of the patent claims by selling Safti-Strip material to customers ….

(Dkt. #103-5 at 1:15-21.)

### 1.   Defendants Induce Infringement by Selling the Safti-Strip Tape to be Used in an Infringing Manner

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

        The Safti-Strip tape is marketed and sold for infringing usage.  Safti-Seal's website features a video (https://www.youtube.com/watch?time_continue=86&v=iT_n6chfVuk) showing the installation of the Safti-Strip tape for a head-of-wall assembly as follows:



        Safti-Seal's website features photographs of the Safti-Strip tape used in "Current Projects" that infringe the Patents-in-Suit (whether the strip was field or factory applied):

(Dkt. #103-11.)

### 2.      No Substantial Noninfringing Use of the Safti-Strip

Defendants argue that "induced and contributory infringement each require … that the accused product has no substantial non-infringing uses." (Dkt. #104 at 1:6-8.)  That is legally wrong. "The existence of a substantial non-infringing use does not preclude a finding of inducement." *Toshiba Corp. v. Imation Corp.,* 681 F.3d 1358, 1364 (Fed. Cir. 2012) (citing *Elektromedizin GmbH v. Canady Tech. LLC,* 629 F.3d. 1278, 1284 (Fed. Cir. 2010)). Furthermore, Defendants have misconstrued the case upon which they rely, *C.R. Bard, Inc. v. Adv. Cardiovascular Sys., Inc.,* 911 F.2d 670, 675 (Fed. Cir. 1990). The *C.R. Bard* court found no inducement because of lack of evidence of whether the product was actually used in an infringing manner (which is not the issue in the present case). *Id.* It considered whether there were substantial non-infringing uses only to determine whether there was contributory infringement. *Id.* Thus, any evidence of alleged "non-infringing uses" is irrelevant for purposes of determining whether Defendants are inducing infringement.

There is no evidence that the Safti-Strip is used in any way other than to seal head-of-wall construction joints.  Safti-Seal's own video clearly instructs customers to use the Safti-Strip tape in an infringing manner. That is sufficient to show inducing infringement.  (Supp. Trojan Decl., Ex. 19.)

As for contributory infringement, Defendants present no evidence of any "substantial non-infringing uses."   In Klein's self-serving declaration, he states:

> Safti-Seal's customers have purchased it for use at the bottom of walls, at wall-ends, at control joints in the middle of walls, in elevator shafts, and around doorways. One Safti-Seal customer purchased Safti-Strip to create a fire-resistant gasket around the doors of a firearm safe. The majority of Safti-Seal's sales of Safti-Strip are not for use on headers at the top of walls, which is to say the majority of sales are not for uses that would infringe the patents in suit even under the Plaintiffs interpretation of their claims.

TROJAN LAW OFFICES
BEVERLY HILLS

(Dkt. #104-3 at ¶18.) First, at least some of the claims require only a U-shaped track, and not even a "header" track, so that even a bottom track or U-shaped stud is sufficient to meet the requirements of these claims in the '314 and '718 patents. Furthermore, *Defendants cite to no evidence to corroborate Klein's statements.* For example, although there are many photographs on Safti-Seal's website of different projects, all of them showing the Safti-Strip tape applied at the top of the sidewall, there are no photographs showing the Safti-Strip tape used "at control joints in the middle of walls, in elevator shafts, and around doorways" as described in Klein's declaration.

In fact, Plaintiffs propounded interrogatories and requests for documents that would show how the Safti-Strip tape is used. For example, Interrogatory No. 14 asked Defendants to "[i]dentify all projects in which any Safti-Seal products or Safti-Strip have been or are contracted to be installed…." (Supp. Trojan Decl., Ex. 17 at Response No. 14.) Document Request No. 9 asked for "[a]ll communications with third parties regarding the Safti-Strip." (Supp. Trojan Decl., Ex. 18 at 8.) In response to such discovery requests, Defendants never identified a single instance of any "noninfringing use" such as Klein now alleges in his declaration. (*Id*.)

Furthermore, it is not sufficient for Defendants' to identify one single allegedly non-infringing use. To avoid contributory infringement, a defendant must show that there are *substantial* non-infringing uses. "[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Toshiba Corp. v. Imation Corp.,* 681 F.3d 1358, 1362 (Fed. Cir. 2012). The Court can consider "the invention's intended purpose, and the intended market." *Id.* Even if accepted as true, the Klein declaration provides no evidence whether the alleged uses are "substantial." At best, they sound "occasional" or "unusual." Furthermore, a review of the patents and Safti-Seal's website plainly show that the invention's intended purpose and the intended market are fire stopping in head-of-wall assemblies. There is no "substantial" non-infringing use for the Safti-Seal products.

Hence, Defendants cannot be heard to claim non-infringing uses when they have no credible evidence of any such "substantial" use.

### 3. Potential "Noninfringing Uses" of the Safti-Strip Tape Does Not Matter Because There Is Overwhelming Evidence That Defendants Intended the Safti-Strip Tape to be Used in an Infringing Manner

Even if a product has some non-infringing uses, if an accused infringer instructs his customers to use his product for an infringing use, he has at least induced infringement. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364-65 (Fed. Cir. 2012) (holding that the "existence of a substantial non-infringing use does not preclude a finding of inducement," and explaining that, "where an alleged infringer designs a product for use in an infringing way and instructs users to use the product in an infringing way, there is sufficient evidence for a jury to find direct infringement."). Here, the evidence shows that Klein and Safti-Seal instructed their customers to use their products for an infringing use as described above. Hence, there is no triable issue of fact that the Safti-Strip infringes the asserted claims, and that Defendants induced their customers to make or use these infringing head-of-wall assemblies with Safti-Seal products.

### F. The Metal Track Products

Defendants argue that the metal tracks also do not infringe "for the same reasons given above with respect to the Safti-Strip":

> In addition to the Safti-Strip, discussed above, Defendant Safti-Seal also manufactures metal track products that consist of the Safti-Strip gasket applied to sheet-metal assemblies suitable for various installations in construction projects....These products cannot possibly infringe the patents-in-suit directly for the same reasons given above with respect to the Safti-Strip: they do not include wallboard, sheet metal studs, and other required elements set forth in the patent claims.

(Dkt. #104 at 12:18 – 13:11.) Again, Defendants have not identified sales record to show that the metal tracks are used for any purposes other than on head-of-wall assemblies. The photographs of

TROJAN LAW OFFICES
BEVERLY HILLS

"Current Projects" on Defendants' own website only shows the metal tracks used in head-of-wall assemblies.   Further, Defendants' argument that the accused Safti-Seal products pass UL certification for sealing construction gaps in head-of-wall assemblies further demonstrate that the accused products are used in head-of-wall assemblies that infringe the Patents-at-Issue.

### G.      Klein Has Infringed the Patents-in-Suit

Klein should be held personally liable for the infringement because as its sole owner and officer, he directed and authorized the patent infringement.   The Ninth Circuit instructs that "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."   *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).   Here, Klein is "Safti-Seal's owner, officer, office manager, employee, sales team, technical team, manufacturing team, and janitor."   (Dkt. #103-13 at Response to Request No. 6.)    Further, Defendants state that "Safti-Seal manufactures and stores Safti-Frame and Safti-Strip in Mr. Klein's garage, and at a warehouse in Auburn, Washington."   (*Id.* at Response to Request No. 7.)

As such, Klein is the moving, active conscious force behind Safti-Seal's infringement because he, and he alone is the final decision-maker for Safti-Seal.   *See, e.g.*, *Microsoft Corp. v. Suncrest Enter.*, No. C03-5424 JF (HRL), 2006 WL 1329881, at *7 (N.D. Cal. May 16, 2006) (noting "personal liability for trademark infringement and unfair competition is established if the officer is a moving, active conscious force behind the defendant corporation's infringement").   As Klein wears practically every hat at Safti-Seal—from owner to office manager, from sales team to technical team, from manufacturing team to warehouseman—not an inch of the accused products is made, sold, and moved without Klein's approval and hands-on involvement.   Hence, there can be no doubt that he authorized and ratified every aspect of Safti-Seal's infringing activities.   Therefore, the Court must deny Defendants' cross-motion for partial summary judgment as to

TROJAN LAW OFFICES
BEVERLY HILLS

1
2

Klein's personal liability, and instead, grant Plaintiffs' motion for summary adjudication on this issue.

3

### H.     The Undisputed Facts Establish a Breach of Contract

4
5
6
7
8

Defendants' sole argument for cross summary judgment on Plaintiffs' claim for breach of contract is that "Safti-Seal was not a party to the settlement agreement – that contract was between the Plaintiffs, Klein, and BlazeFrame." (Dkt. #104 at 21:2-3.) To be clear, Safti-Seal is not accused of breaching the settlement.  Klein and BlazeFrame breached the settlement.

9
10
11
12
13
14
15

If the Court finds Klein is personally liable for infringing the Patents-at-Issue, then Klein is in breach of the Settlement Agreement.  Under the Settlement Agreement, Klein is prohibited from offering for sale or selling any product covered by the Patents-at-Issue and from offering for sale or selling intumescent strips that he knows will be used to make the Licensed Products.  (Dkt. #11-1.)  Klein's sale of the infringing accused products is a continuing breach of the Settlement Agreement.

16
17
18
19
20
21
22
23
24

Alternatively, if the Court finds that the accused Safti-Seal products infringe the Patents-at-Issue, then Klein is in breach of the Settlement Agreement because, as the owner of Safti-Seal, he is in privity with it and, thus, its sales of the accused products under his direction constitute breach of the Settlement Agreement.  *Zendel v. Circle Location Servs., Inc.*, No. CV1107963SJOCWX, 2012 WL 12877182, at *8 (C.D. Cal. Apr. 5, 2012) ("privity runs between a close corporation and its sole or controlling stockholder" (internal quotations and citation omitted)).  Either way, summary judgment must also be granted on Plaintiffs' breach of contract claim if the Court concludes that the accused Safti-Seal products infringe the Patents-at-Issue.

25
26
27
28

Even if the Court finds Plaintiffs are not entitled to summary judgment on their breach of contract claim, Defendants are not entitled to summary judgment on their cross-motion. In addition to the claim that Klein breached by infringing the patents, there are still other breaches that need to

TROJAN LAW OFFICES
BEVERLY HILLS

be determined, including whether Klein breached the settlement agreement by improperly disclosing confidential terms of that agreement. At least that issue remains irrespective how the Court rules on the pending motions.

## I.   Plaintiffs Are Entitled to Summary Judgment on Defendants' Patent Misuse Defense

### 1.   Collateral Estoppel Bars Defendants' Patent Misuse Defense

Defendants argue that collateral estoppel is not applicable to their patent misuse defense. (Dkt. #104 at 23:15-17.)  Collateral estoppel bars Defendants' patent misuse defense because the misuse defense here is identical to the misuse defense that was dismissed with prejudice in the 5968 Case.  (Dkt. #102 at 20:11 – 21:5.)  Even if the patent misuse defense is not barred by collateral estoppel, the Court should still grant summary judgment against Defendants on this defense because Defendants have not raised any triable issue of fact as to patent misuse.

### 2.   There Is No Tying Agreement

Defendants argue that Plaintiffs have engaged in an impermissible "tying agreement." (Dkt. #104 at 24:1-7.)  Defendants contend that Plaintiffs, "together with Defendant Safti-Seal, are the only manufacturers of header tracks having a factory-applied intumescent strip," and that Plaintiffs used their market power to "require their BlazeFrame header track products to always be sold together with a non-patented product."  (*Id*.)  Defendants cite no evidence to support their contention that "Plaintiffs' selling practice is an unlawful tying arrangement because the unpatented add-on product, Clark's 'Perimeter L-Bead,' is sold at an inflated price and is not available from any alternative suppliers."  (*Id*. at 24:12-13.)  Because Defendants bear the burden of proof on their patent misuse defense, they must offer more than sheer speculation regarding a "tying agreement" to sustain the defense.  *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment");

TROJAN LAW OFFICES
BEVERLY HILLS

*Perez v. Gordon & Wong Law Grp.*, P.C., No. 11-CV-03323-LHK, 2012 WL 1029425, at *7 (N.D. Cal. Mar. 26, 2012) ("the defendant bears the burden of proof on an affirmative defense").

### 3.      No Reverse Settlement Payment

Defendants further assert that the relationship between the parties is "almost certainly a 'reverse settlement payment' of a nature that explained [*sic*] are highly suspect in *F.T.C. v. Actavis, Inc.*, 570 U.S. 136, 140 (2013)."  (Dkt. #104 at 23:10-11.) The facts of the several parties to this litigation do not fit the definition of "reverse settlement payment."

In *F.T.C.*, the Supreme Court taught that a reverse settlement payment is where "Company A sues Company B for patent infringement. The two companies settle under terms that require (1) Company B, the claimed infringer, not to produce the patented product until the patent's term expires, and (2) Company A, the patentee, to pay B many millions of dollars." *F.T.C. v. Actavis, Inc.*, 570 U.S. at 140-41.  This is not such a scenario – quite the contrary. In the present case, ClarkDietrich has never been accused of infringing the patents-in-suit.  It has always been a licensee, the licensor has merely changed (it was first BlazeFrame and is now CEMCO). Furthermore, ClarkDietrich has always paid its licensor for the right to commercialize the patented BlazeFrame products. It has never been paid not to produce products.

## III.    CONCLUSION

For the foregoing reasons, the Plaintiffs are entitled to partial summary judgment and Defendants' Cross-Motion for Summary Judgment should be denied.

Respectfully submitted,

TROJAN LAW OFFICES

by

June 24, 2019                              /s/ R. Joseph Trojan

R. Joseph Trojan *(pro hac vice)*

TROJAN LAW OFFICES
BEVERLY HILLS

9250 Wilshire Blvd.
Beverly Hills, CA
Attorney for Plaintiff,
CALIFORNIA EXPANDED METAL PRODUCTS
COMPANY

June 24, 2019                    /s/ Brian G. Bodine
                                 Brian G. Bodine (WSBA No. 22414)
                                 LANE POWELL PC
                                 1420 Fifth Avenue, Suite 4200
                                 Seattle, WA 98111
                                 Telephone: 206-223-7000
                                 Attorney for Plaintiff,
                                 CALIFORNIA EXPANDED METAL PRODUCTS
                                 COMPANY

June 24, 2019                    /s/ Ann G. Schoen
                                 Ann G. Schoen *(pro hac vice)*
                                 FROST BROWN TODD LLC
                                 301 East Fourth Street, Suite 3300
                                 Cincinnati, OH 45202
                                 Telephone: 513-651-6128
                                 Attorney for Plaintiff,
                                 CLARKWESTERN DIETRICH BUILDING
                                 SYSTEMS LLC

June 24, 2019                    /s/ Robert J. Carlson
                                 Robert J. Carlson (WSBA No. 18455)
                                 LEE & HAYES PLLC
                                 701 Pike Street, Suite 1600
                                 Seattle, WA 98101
                                 Telephone: 206-876-6029
                                 Attorney for Plaintiff,
                                 CLARKWESTERN DIETRICH BUILDING
                                 SYSTEMS LLC

TROJAN LAW OFFICES
BEVERLY HILLS

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of June 2019, I caused to have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

tjl@elamburke.com
thomas@seattlepatentlaw.com
pbageant@hollystonelaw.com
bob@leehayes.com
bodineb@lanepowell.com
JKersting@fbtlaw.com
ASchoen@fbtlaw.com

TROJAN LAW OFFICES

by

/s/ R. Joseph Trojan
R. Joseph Trojan *(pro hac vice)*
9250 Wilshire Blvd.
Beverly Hills, CA
Attorney for Plaintiff,
CALIFORNIA EXPANDED
METAL PRODUCTS COMPANY

0121667.0656744   4837-0693-6987v1

TROJAN LAW OFFICES
BEVERLY HILLS