UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CALIFORNIA EXPANDED METAL PRODUCTS COMPANY, et al., | CASE NO. C18-0659JLR |
| Plaintiffs, | AMENDED ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| JAMES A. KLEIN, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court are:  (1) Plaintiffs California Expanded Metal Products Company

("CEMCO") and Clarkwestern Dietrich Building Systems LLC's (d/b/a ClarkDietrich

Building Systems) ("ClarkDietrich") (collectively, "Plaintiffs") motion for summary

judgment (Pls. MSJ (Dkt. # 102)), and (2) Defendants James A. Klein, Safti-Seal, Inc.

("Safti-Seal"), and BlazeFrame Industries Ltd.'s ("BlazeFrame") (collectively,

"Defendants") cross-motion for summary judgment (Defs. MSJ/Resp. (Dkt. # 104)).

Defendants' cross-motion also serves as their response to Plaintiffs' summary judgment motion (*see* Defs. MSJ/Resp.; *see also* 6/7/18 Order (Dkt. # 106)), and Plaintiffs' response to Defendants' cross-motion serves as their reply to Defendants' opposition to their summary judgment motion (*see* Pls. Resp./Reply (Dkt. # 107)). Defendants filed a reply to Plaintiffs' opposition, and Plaintiffs filed a surreply. (*See* Defs. Reply (Dkt. # 110); Surreply (Dkt. # 112).) The court has reviewed the motions, the parties' submissions concerning the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS in part and DENIES in part Plaintiffs' motion for summary judgment and GRANTS in part and DENIES in part Defendants' motion for summary judgment.

//

//

//

---

[1] The parties request oral argument on the motions. (*See* Pls. MSJ at 1; Defs. MSJ/Resp. at 1.) The general rule is that the court should not deny a request for oral argument made by a party opposing a motion for summary judgment unless the motion is denied. *Dredge Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir. 1964). However, a district court's denial of a request for oral argument on summary judgment does not constitute reversible error in the absence of prejudice. *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (citing *Fernhoff v. Tahoe Reg'l Planning Agency*, 803 F.2d 979, 983 (9th Cir. 1986)). There is no prejudice in refusing to grant oral argument where the parties have ample opportunity to develop their legal and factual arguments through written submissions to the court. *Id.* ("When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument] . . . .") (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*). The parties have provided the court lengthy written submissions in support of their respective motions and in opposition to the opposing side's motion. (*See* Pls. MSJ; Defs. MSJ/Resp.; Pls. Resp./Reply; Defs. Reply.) The court has determined that oral argument would not be of assistance in deciding the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4), and thus DENIES the parties' requests for oral argument.

## II.    BACKGROUND

**A.    Factual Background**

This patent infringement dispute come on the heels of two prior suits among the parties.  Mr. Klein, a former CEMCO employee, is the named inventor of four related Patents:  U.S. Patent No. 7,681,365 ("the '365 patent"), U.S. Patent No. 7,814,718 ("the '718 patent"), U.S. Patent No. 8,136,314 ("the '314 patent"), and U.S. Patent No. 8,151,526 ("the '526 patent") (collectively, "the Patents").[2]  (*See* 5/10/19 Trojan Decl. (Dkt. # 103) ¶ 2, Ex. 1 ("'365 Patent"); *id.* ¶ 3, Ex. Ex. 2 ("'718 Patent"); *id.* ¶ 4, Ex. 3 ("'314 Patent"); *id.* ¶ 5, Ex. 4 ("'526 Patent").)  As explained below, *see infra* § II.B., the Patents cover head-of-wall assemblies that are used in commercial construction to prevent the spread of smoke and fire.  (*See, e.g.*, '365 Patent at Abstract.)  In May 2012, Mr. Klein assigned the Patents to BlazeFrame, a Washington corporation that he co-founded.  (Compl. ¶¶ 4, 12; Answer (Dkt. # 68) ¶¶ 2, 5; *see also* 8/6/18 Klein Decl. (Dkt. # 82-1) ¶ 3.)

Later that year, CEMCO sued Mr. Klein and ClarkDietrich in the United States District Court for the Central District of California.[3]  *See Cal. Expanded Metal Prods. Co. v. Clarkwestern Dietrich Bldg. Sys., LLC*, No. CV12-10791-DDP-MRW (C.D. Cal.)

---

[2] The '718 Patent is a continuation of the '365 Patent, the '314 Patent is a continuation of both the '365 Patent and the '718 Patent, and the '526 Patent is a continuation-in-part of the '365 Patent.  (*See* 4/17/19 Order (Dkt. # 98) at 8-9 (examining the relationship of the Patents).)

[3] Defendants represent that CEMCO sued ClarkDietrich because "[Mr.] Klein licensed the [P]atents to ClarkDietrich and CEMCO objected."  (Defs. MSJ at 4.)  However, Defendants cite no evidence to support that proposition.  (*See id.*)

("the first California case"). CEMCO alleged that Mr. Klein breached a contractual obligation to offer CEMCO an exclusive license to any construction products he invented after leaving CEMCO. *Id.*, Dkt. # 1. In October 2015, the parties reached a settlement agreement under which Mr. Klein and BlazeFrame sold the Patents to CEMCO in exchange for, *inter alia*, a license to sell head-of-wall assemblies covered by the Patents in a geographically restricted area ("the first settlement agreement"). (*See* 5/10/19 Trojan Decl. ¶ 7, Ex. 6.)

In August 2016, CEMCO—this time joined by ClarkDietrich—filed a second suit against Mr. Klein and BlazeFrame. *See Cal. Expanded Metal Prods. Co. v. Klein*, No. CV16-5968-DDP-MRW (C.D. Cal.) ("the second California case"). Plaintiffs alleged that BlazeFrame breached the first settlement agreement by selling licensed products outside the agreed-upon area. (*See generally* 5/10/19 Trojan Decl. ¶ 8, Ex. 7.) Plaintiffs further alleged that Mr. Klein and BlazeFrame had infringed the Patents that CEMCO acquired in the first settlement agreement. (*See id.*) In June 2017, the parties settled the second California case through a confidential agreement ("the second settlement agreement"), and the suit was dismissed. *See* No. CV16-5968-DDP-MRW, Dkt. # 119. CEMCO remains the owner of the Patents, and ClarkDietrich is the Patents' exclusive licensee. (*See* Compl. ¶ 84.)

On January 10, 2018, Plaintiffs filed this suit against Mr. Klein, BlazeFrame, and Safti-Seal, a Washington corporation that Mr. Klein founded in September 2017. (*See* Compl.; 8/6/18 Klein Decl. ¶ 4.) Plaintiffs allege that Mr. Klein and Safti-Seal sell multiple products that infringe at least one claim of each Patent. (Compl. ¶¶ 82-85.)

Additionally, Plaintiffs bring a breach of contract claim against Mr. Klein and BlazeFrame for alleged violations of the second settlement agreement. (*Id.* ¶¶ 73-81, 86-94.)

**B.     The Patents**

The Patents cover head-of-wall assemblies, or headers, that impede the spread of smoke and fire. (*See, e.g.*, '365 Patent at Abstract.) Illustratively, Figure 2 of the '365 Patent shows that the claimed header (16) is a "U"-shaped metal track comprising a horizontal web (26) that is connected to a pair of downward-facing sidewalls (28). (*Id.* at Fig. 2; *id.* at 6:43-56.) Like all the Patents, the '365 Patent claims "an elongated intumescent strip" (34) that is "affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls . . . ." (*Id.* at Fig. 2; *id.* at 6:57-60; *see also* '718 Patent at 10:23-25; '314 Patent at 10:53-54; '526 Patent at 7:41-44.) When exposed to heat, the intumescent material expands to fill the gap between the wall and the ceiling, preventing smoke and fire from penetrating adjacent areas of the building. (*See, e.g.*, '365 Patent at Abstract.)

//

//

//

//

//

//

//



*Fig. 2*

(*Id.* at Fig. 2.)

Claim 1 of the '526 patent is illustrative of the claims of the Patents-in-Suit alleged to be infringed.  The claim recites:

**1.** A fire-retardant head-of-wall assembly, comprising:

an elongated sheet-metal footer track;

an elongated sheet-metal header track confronting and vertically spaced apart from the footer track, the header track including a web integrally connected to a pair of spaced apart and downwardly extending sidewalls, each sidewall having an upper sidewall portion adjacent to the web and a lower sidewall portion;

an elongated intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the upper sidewall portion; . . . .

('526 Patent at 7:33-44; *see also* '365 Patent at 6:43-62; '718 Patent at 10:10-29; '314 Patent at 10:21-33.)

*//*

## C.     The Accused Products

Plaintiffs identify eight accused products, which fall into two groups:  (1) a tape product that includes intumescent material, called Safti-Strip ("the Safti-Strip tape"), and (2) sheet-metal tracks suitable for installation in commercial construction projects ("the accused metal track products") (collectively, "the accused products").  (*See* Pls. MSJ at 2 n.2; *see also* 5/10/19 Trojan Decl. ¶ 6, Ex. 5 ("Infringement Conts.") at 3; 6/3/19 Klein Decl. (Dkt. # 104-3) ¶¶ 16-17.)

The Safti-Strip tape "is a multi-layer gasket product" that is sold by the foot in rolls.  (6/3/19 Klein Decl. ¶ 17.)  It consists of a strip of intumescent material, purchased from a non-party retailer, which, in turn, is bonded with adhesive to a "thermal barrier made of closed-cell foam."  (*Id.*)  On the bottom of the thermal barrier is "a layer of peel-and-stick adhesive," which "can be used to apply the Safti-Strip to any surface a customer desires."  (*Id.* ¶¶ 17, 20.)  Mr. Klein attests that "[t]he following image depicts the [Safti-Strip tape] product accurately":



(*Id.* ¶ 17.)

//

The accused metal track products "include . . . various configurations of metal tracks with Safti-Strip attached to them." (*Id.* ¶ 19.) For example, the Safti-Seal DSL Slotted Track features a metal header with the Safti-Strip tape installed on one or both sidewall surfaces:



(*Id.* ¶ 19.)

Mr. Klein represents that he designed the accused metal track products to comply with updated safety standards set by a testing agency called Underwriter Laboratories ("UL"). (*Id.* ¶¶ 7-9.) He states that, after "test[ing] dozens of variations and configurations of header tracks in combination with different materials, at home, in [his] garage," he decided to "separate [the intumescent material] from the header track with a foamed thermoplastic thermal barrier." (*Id.* ¶ 9.) According to Mr. Klein, the thermal barrier increases the time needed for heat to penetrate a wall and ensures that the accused metal track products pass the UL safety standards currently in effect. (*Id.* ¶ 10.) Defendants contend that Plaintiffs' products, which are covered by the Patents, satisfy current UL standards only when modified to include "an add-on thermal barrier product . . . to the head-of-wall gap." (Defs. MSJ/Resp. at 16 (citing 6/3/19 Klein Decl. ¶ 14); *see also* Pessiki Decl. (Dkt. # 104-1) ¶ 14.)

## D.  Claim Construction

During claim construction, the parties disputed the meaning of four claim terms: (1) "intumescent strip"; (2) "affixed lengthwise on at least one of the outer sidewall surfaces"; (3) "inorganic filler"; and (4) "dispersed in a emulsion of polyvinyl acetate or silicone." (*See generally* Jt. Cl. Stmt. (Dkt. # 92).)  The first two claim terms appear in all four Patents.  (*See* '365 Patent at 6:57-60; '718 Patent at 10:23-25; '314 Patent at 10:53-54; '526 Patent at 7:41-44.)  The latter two claim terms appear only in the '314 Patent, which, uniquely among the Patents, claims an intumescent strip with a specific composition.  (*See* '314 Patent at 10:29-33.)

Following a *Markman*[4] hearing, the court construed the disputed terms as follows:

1.  "intumescent strip":  "a strip that comprises a substance that expands when exposed to heat"

2.  "affixed lengthwise on at least one of the outer sidewall surfaces":  "attached lengthwise, directly or by means of an intervening adhesive, to at least one of the outer sidewall surfaces"

3.  "inorganic filler":  "inorganic filler, including but not limited to perlite, vermiculite, expandable glasses, micas, clay, talc, borosilicates, cokes, charcoals, hard coals, brown coals, calcium carbonate, cereal grains, cork, bark granules, expandable clay, foamed concrete, metal sponge, pumice, tuff, and/or lava"

---

[4] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

(4/17/19 Order at 34.)  Additionally, the court declined to construe the claim term

"dispersed in a emulsion of polyvinyl acetate or silicone," finding that this claim term

carries its plain and ordinary meaning in the context of the asserted claims.  (*See id.* at

32-34.)  The parties' cross-motions followed the court's claim construction order.  (*See*

Pls. MSJ; Defs. MSJ/Resp.)

### III.    ANALYSIS

The parties cross-move for summary judgment on four issues:  (1) whether the

accused metal track products directly infringe the Patents; (2) whether Mr. Klein and

Safti-Seal induced infringement of the Patents; (3) whether Mr. Klein and Safti-Seal

contributorily infringed the Patents; and (4) whether Mr. Klein breached the second

settlement agreement.  (*See* Pls. MSJ at 1, 9-18); Defs. MSJ/Resp. at 3, 7-24.)

Additionally, Defendants move for summary judgment that Mr. Klein may not be held

individually liable for any infringing conduct (*see* Defs. MSJ/Resp. at 4-7), and Plaintiffs

move for summary judgment on Defendants' affirmative defense of patent misuse (*see*

Pls. MSJ at 18-22).  The court addresses the summary judgment standard before

considering the parties' arguments.

**A.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence shows "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

*Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the

outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and citation omitted). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003). Nor can a party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

**B.     Plaintiffs' Surreply**

As a threshold matter, the court considers Plaintiffs' request to strike Mr. Klein's supplemental declaration of June 28, 2019, which Defendants filed alongside their reply. (Surreply at 1-3; *see also* 6/28/19 Klein Decl. (Dkt. # 110-1).) Defendants rely on Mr. Klein's supplemental declaration to support their contention that they are entitled to summary judgment of no contributory infringement because the accused products have substantial non-infringing uses. (*See* Defs. Reply at 9-10); *see also infra* § III.E (explaining that, to prove contributory infringement, a plaintiff must establish that the allegedly infringing product does not have a substantial non-infringing use). In his declaration, Mr. Klein attests that he "reviewed Safti-Seal's sales records . . . for sales about which [he] . . . ha[s] knowledge," and, "[b]ased on those records," concluded that Safti-Seal has made and continues to make numerous sales of the Safti-Strip tape and the accused metal track products for purposes "other than head-of-wall uses." (6/28/19 Klein Decl. ¶¶ 3-4.) Mr. Klein also identifies purchasers that have bought the accused products for such purposes. (*Id.* at ¶¶ 3-5.)

Plaintiffs assert that the court should strike Mr. Klein's June 28, 2019, declaration for four reasons: (1) the declaration lacks foundation to support Mr. Klein's contention

that the accused products were sold for noninfringing uses; (2) Mr. Klein relied on

out-of-court statements from his customers when making the factual assertions contained

in the declaration; (3) the declaration draws upon information that Plaintiffs failed to

timely produce in discovery; and (4) the declaration alleges new facts that Defendants did

not provide in their cross-motion and opposition to Plaintiffs' summary judgment motion.

(Surreply at 1-3.)

The court agrees that Mr. Klein's June 28, 2019, declaration alleges new evidence

that Defendants should have presented in their opening brief. "It is well established that

new arguments and evidence presented for the first time in [r]eply are waived."

*Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing

*United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)) (striking supplemental

declarations on reply that "address issues which should have been addressed in the

opening brief"); *see also Wallace v. Countrywide Home Loans, Inc.*, No. SACV 08-1463

AG MLGX, 2009 WL 4349534, at *7 (C.D. Cal. Nov. 23, 2009) ("A district court may

refuse to consider new evidence submitted for the first time in a reply if the evidence

should have been presented with the opening brief.").

In their opening brief, Defendants vigorously argue that the accused products have

"substantial non-infringing uses." (Defs. MSJ/Resp. at 11-12.) Defendants' sole source

of support for that argument is Mr. Klein's June 3, 2019, declaration, in which Mr. Klein

summarily asserts that "[t]he majority of [Safti-Seal's] sales are not for uses that would

infringe the patents in suit even under the Plaintiffs['] interpretation of their claims."

(6/3/19 Klein Decl. ¶ 18.) Mr. Klein's supplemental declaration echoes that contention—

but also includes, for the first time, specific factual allegations about the frequency of the alleged non-infringing uses and the identities of purchasers. (*See* 6/28/19 Klein Decl. ¶¶ 3-5.) The court sees no reason why Mr. Klein could not have included those factual assertions in his sparsely supported first declaration, especially considering the central role his attestations played in Defendants' opening brief, and declines to give Defendants a second bite at the apple on reply.

The court therefore STRIKES Mr. Klein's supplemental declaration of June 28, 2019, and all portions of Defendants' reply brief that rely on that declaration. (*See* Defs. Reply at 9-10.) The court need not reach the other three arguments regarding Mr. Klein's supplemental declaration that Plaintiffs raise in their surreply.

## C.     Direct Infringement

Summary judgment of infringement or noninfringement is a two-step analysis. First, the court construes the meaning and scope of the asserted patent claims. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005). Second, "the court must determine whether the accused product . . . contains each limitation of the properly construed claims, either literally or by a substantial equivalent." *Id.* at 1357. "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1988). "The absence of even a single limitation of [a claim] from the accused device precludes a finding of literal infringement." *Id.* If a specific claim limitation is not literally present in the accused product, a patentee may establish infringement under the doctrine of equivalents. *See Freedman*, 420 F.3d at 1357. To prevail under the doctrine

of equivalents, the patentee must demonstrate that the accused product "performs substantially the same function in substantially the same way to obtain the same result" as each claim limitation of the patented product. *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1362 (Fed. Cir. 2019) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950)).

The parties cross-move for summary judgment on direct infringement. Plaintiffs contend that they are entitled to summary judgment that the accused metal track products directly infringe at least one claim of each Patent. (Pls. MSJ at 1, 9-13; *see also* Pls. Resp./Reply at 16 (explaining Plaintiffs do not assert direct infringement with respect to the Safti-Strip tape).) Defendants argue that they are entitled to summary judgment of noninfringement because Plaintiffs fail to raise a genuine dispute as to either literal infringement or infringement under the doctrine of equivalents. (Defs. MSJ/Resp. at 7-20; *see also* Defs. Reply at 2-9.) As foreshadowed in claim construction, the parties' dispute centers on two claim limitations: (1) "intumescent strip," and "affixed lengthwise on at least one of the outer sidewall surfaces." (*See* Pls. MSJ at 11-13; Defs. MSJ/Resp. at 12-20.)

Literal infringement is typically a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). "[A] literal infringement issue is properly decided upon summary judgment when . . . no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Id.* However, "[w]here the parties do not dispute any relevant facts regarding the accused product, . . . but disagree over possible claim interpretations, the question of literal

infringement collapses into claim construction and is amenable to summary judgment."

*Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1324 (Fed. Cir. 2002) (quoting *Gen. Mills, Inc.*

*v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997)) (alterations in *Rheox*); *see also*

*MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007) ("Because there

is no dispute regarding the operation of the accused systems, that issue reduces to a

question of claim interpretation and is amenable to summary judgment."); *Rambus Inc. v.*

*Hynix Semiconductor Inc.*, 642 F. Supp. 2d 970, 977-78 (N.D. Cal. 2008) (finding that,

where "the parties largely agree about the structure and function of the accused

[products], but dispute how the court's construction of [the patent] claims apply to those

structures and functions," the parties' disputes "collapse into question of law for the court

to resolve").

       This, largely, is one such case.  Neither side articulates a factual dispute about the

structure of the accused metal track products or the Safti-Strip tape attached to those

products.  (*See generally* Pls. MSJ; Defs. MSJ/Resp.)  Rather, the parties disagree about

whether the accused metal track products (1) include an "intumescent strip" that is (2)

"affixed lengthwise on at least one of the outer sidewall surfaces," within the meaning of

the court's construction of those claim terms.  This disagreement—which, at bottom,

concerns the proper scope of the claim terms—reduces to a question of law for the court.

*See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed.

Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of the[]

claims, the court, not the jury, must resolve the dispute.").  The court therefore finds this

//

1    aspect of the parties' direct infringement dispute appropriate for disposition on summary

2    judgment.

3         1.    "intumescent strip" and "affixed . . . on"

4         At the heart of the parties' disagreement is whether the claimed "intumescent

5    strip" encompasses the thermal barrier featured in the Safti-Strip tape.  (*See* Pls. MSJ at

6    11-12; Defs. MSJ/Resp. at 13-16.)  The court construed "intumescent strip" as a "strip

7    that comprises a substance that expands when exposed to heat."  (4/17/19 Order at 19.)

8    As the court emphasized in its claim construction order, "[t]his construction makes clear

9    that the intumescent strip need not include only an intumescent substance," and "is . . .

10   broad enough to encompass preferred embodiments in which the strip consists of a

11   composition containing an intumescent substance, where that composition lies atop a

12   non-intumescent substrate."  (*Id.*)

13        Plaintiffs argue that the accused metal track products include an intumescent strip

14   within the meaning of the court's construction.  (Pls. MSJ at 11-12.)  In Plaintiffs' view,

15   "the 'thermal barrier' [included in the Safti-Strip tape] is part and parcel of the

16   intumescent strip because the 'thermal barrier' is simply the non-intumescent substrate on

17   top of which the intumescent composition lies."  (*Id.* at 12.)  Defendants contend that the

18   thermal barrier is separate from the claimed, "commercially available" intumescent strip

19   integrated into the accused products.  (Defs. MSJ/Resp. at 14.)  According to Defendants,

20   Plaintiffs' position relies on the faulty premise that, "whenever an intumescent strip is

21   applied to a second object (i.e., a thermal barrier), that object becomes *part of* the strip."

22   (*Id.* at 15.)

The court first addresses Plaintiffs' contention that the "thermal barrier" included in the accused metal track products constitutes the sort of "non-intumescent substrate" discussed in the court's claim construction order.  (*See* 4/17/19 Order at 16-19.)  In that order, the court drew attention to "non-intumescent substrate[s]" when discussing U.S. Patent No. 6,207,085 ("Ackerman"), which the Patents incorporate by reference.  (*Id.* at 16-18.)  As the court emphasized, the Patents highlight Ackerman's "heat-expandable compositions" as "exemplary" of the "commercially available" intumescent strips that may be used to practice the inventive head-of-wall assemblies.  (*Id.* at 18.)  Ackerman discloses intumescent strips in which a composition containing intumescent material is "extruded onto thin flexible strips composed of wax paper, mineral wool, artificial fiber ribbons such as tetrahydrofuran fibers and aromatic amide fibers, polyethylene film, polypropylene film, polyurethane film or polyester film."  (*See id.* at 16 (quoting Ackerman at 5:49-54).)  Mindful of those embodiments, the court construed "intumescent strip" to "encompass intumescent strips in which the composition that contains the intumescent substance lies upon a non-intumescent substrate like wax paper or mineral wool."  (*Id.* at 19.)

The Ackerman embodiments—and the claim construction order—use the term "non-intumescent substrate" in a specific sense:  to refer a base, or backing, on which the intumescent substance-containing composition is extruded at the time of manufacture.  (*See id.* at 16-19.)  There is no dispute that the Safti-Strip tape comprises a commercially available intumescent tape product, which includes a non-intumescent backing like that discussed in Ackerman, in addition to a non-intumescent thermal barrier.  (*See* 6/3/19

Klein Decl. ¶¶17. 20.)  The court agrees with Defendants' expert, Dr. Stephen Pessiki, that "[t]he thermal barrier cannot be deemed to be the 'flexible substrate' identified in the Patents-at-Issue, as the pre-manufactured intumescent strip that is a component part of Safti-Seal's product has already been extruded onto a flexible substrate of its own." (Pessiki Decl. (Dkt. # 104-1) ¶ 20.)  The court thus finds that Plaintiffs' framing of the accused products' thermal barrier—as the type of flexible, non-intumescent substrate discussed in the court's claim construction order—is unpersuasive.

Nevertheless, the court finds that, as a matter of law, the Safti-Strip tape affixed to the accused metal track products is an "intumescent strip" within the meaning of the Patents.  The Saft-Strip is, unambiguously, "a strip that comprises a substance that expands when exposed to heat" because  it includes, among other components, a length of commercially available intumescent material that swells in response to smoke or fire, and it combines those components in the form of a strip.  (*See* 4/17/19 Order at 19); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1319 (Fed. Cir. 2009) ("The . . . term 'comprising,' . . . is well understood in patent law to mean 'including but not limited to.'").  The court acknowledges that the Safti-Strip's thermal barrier is not expressly alluded to in the Patents' specifications.  But that additional feature does not change the Safti-Strip's fundamental character as a strip that comprises an intumescent composition, and it does not pull the Safti-Strip outside of the scope of claim term.

//

//

//

Defendants cite no intrinsic or extrinsic evidence that compels the court to narrow its construction of "intumescent strip."[5]  Nor do Defendants cite any evidence tending to show that the inventor sought to limit the claimed intumescent strip as Defendants' reading of the court's construction of the claim term would require—*i.e.*, as consisting of an intumescent composition atop an optional flexible substrate, as disclosed in Ackerman, but nothing more.  (*See* Defs. MSJ/Resp. at 13-17.)  The Patents' specification notes that Ackerman's embodiments are "exemplary" of the intumescent strip that may be used to practice the invention.  (4/17/19 Order at 18.)  If the court were to find that any non-intumescent component of the claimed strip is limited to the flexible substrates onto which the intumescent composition is extruded, as seen in Ackerman, the court would impermissibly import limitations drawn from the Patents' specification into the claim term.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc).  By the same token, the inventor did not disclaim intumescent strips consisting of multiple layers or components.  Plaintiffs are thus "entitled to the full scope of [the Patents'] claim language."  *See Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004).

In substantial part, Defendants premise their noninfringement arguments on comparisons between the accused metal track products and Plaintiffs' products, which are covered by the Patents.  Specifically, Defendants emphasize that both Plaintiffs' products

---

[5] The Federal Circuit has noted district courts' discretion in this regard.  *See, e.g., Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[A] district court may engage in claim construction during various phases of litigation, not just in a *Markman* order.").

and the accused products include a substantially identical, commercially available "intumescent strip."  (Defs. MSJ/Resp. at 15.)  Defendants argue that there is no dispute that Plaintiffs' products embody the Patents, and that "the thermal barrier [in the accused products] is 'different' from the intumescent strip in [Plaintiffs' products]."  (*Id.* at 15-16.)  In addition, Defendants assert that the accused products function more effectively than Plaintiffs' products in fire-safety testing:  "[t]he invention in the patents-in-suit does not—without substantial modification—pass fire testing standards by Underwriter Laboratories, whereas the accused products do."  (*Id.* at 16 (footnote omitted).)  Defendants insist that these factors preclude summary judgment in favor of Plaintiffs.[6]  (*Id.* at 15.)

The court understands Defendants' arguments but finds them irrelevant.  Infringement is assessed by comparing the accused product and the patent claims, not the accused product and a commercial embodiment of the patent.  *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1347 (Fed. Cir. 2003) (vacating the district court's finding of noninfringement because "the court eschewed the cardinal principle that the accused device must be compared to the claims rather than a preferred or commercial embodiment"); *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1318, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its

_____

[6] In their motion, Defendants argue that these factors "would preclude a jury from agreeing with the Plaintiffs['']" arguments on infringement.  (Defs. MSJ/Resp. at 15.)  But, as discussed above, whether the Safti-Strip constitutes an "intumescent strip" within the meaning of the Patents is an issue of claim scope and is thus a question of law for the court.  *See supra* § III.C.

infringement analysis the accused product or process with the patentee's commercial

embodiment or other version of the product or process; the only proper comparison is

with the claims of the patent.").  Whether the accused products are visually distinct from,

or perform better than, commercial embodiments of the Patents falls outside the

infringement analysis.  *See Amgen*, 314 F.3d at 1347.  Put otherwise, Defendants cannot

prove noninfringement by comparing the form or function of the accused products to

Plaintiffs' products.

Additionally, Defendants argue that the testimony of Dr. Pessiki precludes a

finding that the Safti-Strip is an intumescent strip within the meaning of the Patents.  (*See*

Defs. MSJ/Resp. at 16.)  The court is not convinced.  Dr. Pessiki opines that a person of

ordinary skill in the fire protection industry would understand the claimed intumescent

strip to refer to a generic, pre-manufactured intumescent strip sold by non-party

companies; such persons "would not conclude that the thermal barrier, which is a

separate component of Safti-Seal's product that is only later adhered to the

pre-manufactured intumescent strip, is a component part of the intumescent strip, itself."

(Pessiki Decl. ¶ 21.)  However, Dr. Pessiki does not testify that a person of ordinary skill

in the art would understand that, as a rule, the claimed intumescent strip could not include

components additional to a commercially available intumescent product if, at the time of

sale, the strip retains its fundamental character as a strip that comprises a substance that

expands when exposed to heat.  (*See generally* Pessiki Decl.)  Moreover, Dr. Pessiki's

opinion risks confusing process and product limitations:  in opining that the Safti-Strip

falls outside the scope of the Patents because it includes a thermal barrier applied after

the commercially available, pre-manufactured intumescent strip is sold, he suggests that the claimed intumescent strip exists only when produced through certain methods. (*See id.* ¶ 21.) But, it is the end product—the Safti-Strip as attached to accused metal products—that matters for the infringement analysis, not the process by which it is made. (*See* 4/17/19 Order at 14 ("[T]he Patents claim a product that features an intumescent strip, rather than specific means of manufacturing an intumescent strip.").)

The foregoing analysis leads the court to conclude that the "intumescent strip" limitation reads on the accused metal track products that include a strip of the Strip-Safti tape. It follows that the "affixed . . . on" limitation reads on those products. The court construed "affixed lengthwise on at least one of the outer sidewall surfaces" to mean "attached lengthwise, directly or by means of an intervening adhesive, to at least one of the outer sidewall surfaces." (4/17/19 Order at 19-27.) There is no dispute that the bottom of the Safti-Strip is attached lengthwise to the surface of the accused metal track products by means of an intervening adhesive. (*See* 6/3/19 Klein Decl. ¶ 17.) Accordingly, the intumescent strip is "affixed . . . on" the accused metal track products within the meaning of the Patents.

The court now addresses whether the accused products meet the remaining elements of the asserted claims.

2. <u>Remaining Elements of the Asserted Claims</u>

Plaintiffs assert that the accused metal track products infringe claim 1 of the '365 Patent, claims 1 and 12 of the '718 Patent, claim 6 of the '314 Patent, and claim 1 of the '526 Patent. (Pls. MSJ at 1, 9-10.) In their summary judgment motion, Plaintiffs

summarily identify, in a footnote without citations, eight accused products.  (*See* Pls. MSJ at 2 n.2.)  To support their argument that the remaining claim elements read on the accused products, Plaintiffs refer the court to the preliminary infringement contentions they served on Defendants at the beginning of this litigation—a sprawling, 70-page document organized by claim limitation rather than by product.  (*See generally* Infringement Conts.)  Defendants argue that Plaintiffs' infringement contentions "do nothing more than recite in conclusory fashion that all Safti-Seal products infringe all claims, without actually identifying how and where," and that this approach cannot carry Plaintiffs' summary judgment burden.  (Defs. MSJ/Resp. at 7.)  The court agrees with Defendants.

A plaintiff claiming patent infringement bears the burden of proving that each accused product includes every limitation of an asserted claim or an equivalent of each limitation.  *See, e.g.*, *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) ("When a patentee with the burden of proof seeks summary judgment of infringement, it must make a *prima facie* showing of infringement as to each accused device before the burden shifts to the accused infringer to offer contrary evidence.").  Plaintiffs' infringement contentions are, for summary judgment purposes, woefully imprecise: despite a good-faith effort, the court cannot determine which of the accused metal track products allegedly infringe all elements of the asserted claims.  *Cf. Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).  Moreover, as Defendants point out, claim 1 of the '365 Patent,

claim 1 of the '718 Patent, and claim 1 of the '526 Patent all require wallboard and sheet-metal studs—limitations evidently not present in the accused metal track products. (Defs. MSJ/Resp. at 12-13.) The court declines to sort out on Plaintiffs' behalf which of the asserted claims and accused products are actually at issue. In view of these deficiencies, the court finds that Plaintiffs have failed to satisfy their burden to show that there is no genuine dispute of material fact that the accused metal track products include the remaining limitations of the asserted claims.

In sum, the court agrees with Plaintiffs on the defining issue of the parties' infringement dispute: the accused metal track products include an "intumescent strip" that is "affixed . . . on" the sidewall surface within the meaning of the Patents. The court therefore GRANTS in part Plaintiffs' motion for summary judgment and DENIES Defendants' cross-motion for summary judgment of no literal infringement. The court further finds that Plaintiffs fail to adduce sufficient evidence to establish that the accused metal track products meet the remaining limitations of the asserted claims. The court therefore DENIES in part Plaintiffs' motion for summary judgment of literal infringement.[7]

//

//

---

[7] Defendants argue that Plaintiffs cannot prove that the accused products infringe the Patents under the doctrine of equivalents. (*See* Defs. Reply at 7-9.) The court need not address Defendants' arguments on that point because the court finds that the relevant disputed limitations—"intumescent strip" and "affixed . . . on"—are literally present in the accused devices, and the parties do not discuss other claim limitations in the context of the doctrine of equivalents. *See supra* § III.C.1.

**D.    Induced Infringement**

The parties cross-move for summary judgment on Plaintiffs' induced infringement claim.  Under 35 U.S.C § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C § 271(b).  "Induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  In other words, a defendant induces infringement only if the defendant has knowledge of the infringed patent and "kn[ows] the acts [are] infringing."  *Commil USA, LLC v. Cisco Sys., Inc.*, --- U.S. ---, 135 S. Ct. 1920, 1928 (2015).  A party asserting an induced infringement claim must "prove that:  (1) a third party directly infringed the asserted claims of the [relevant] patents; (2) [the defendant] induced those infringing acts; and (3) [the defendant] knew the acts it induced constituted infringement."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*, 843 F.3d 1315, 1332 (Fed. Cir. 2016); *see also Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1016-17 (N.D. Cal. 2019).

Plaintiffs' induced infringement claim centers on the Safti-Strip tape.  Plaintiffs argue that they are entitled to summary judgment of induced infringement because there is no genuine dispute of material fact that "Safti-Seal instructs [its] customers to apply the Safti-Strip tape to wall assemblies that result in direct infringement" of the Patents.  (Pls. MSJ at 15.)  For support, Plaintiffs cite (1) a video on Safti-Seal's website, which demonstrates "the installation and building of a head-of-wall assembly" using the Safti-Strip tape; and (2) photographs on Safti-Seal's website that show head-of-wall

assemblies on construction sites.  (*Id.* at 15-16; *see also* 5/10/19 Trojan Decl. ¶¶ 11-12, Exs. 10-11.)

The court is persuaded that the Safti-Strip tape constitutes an "intumescent strip" within the meaning of the Patents.  *See supra* § III.C.1.  Accordingly, if a third party were to attach the Safti-Strip tape to a metal track product that satisfies the remaining limitations of the asserted claims, then that third-party product would directly infringe the Patents.  The court further observes that a plaintiff may rely on circumstantial evidence to establish induced infringement, *see Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2018), and the dissemination of instructions regarding the accused product may "prove acts of direct infringement by end-users," *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006).  Once again, however, Plaintiffs fail to identify which asserted claims of which Patents are at issue with respect to induced infringement.  (*See* Pls. MSJ at 14-18.)  The court declines to tie the loose ends of Plaintiffs' arguments for them.

Moreover, disputed issues of material fact remain as to Mr. Klein's intent.  "A reasonable, good-faith belief in noninfringement can negate the specific intent required for induced infringement."  *In re Biogen '755 Patent Litig.*, 335 F. Supp. 3d 688, 714 (D. N.J. 2018) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-68 (Fed. Cir. 2013), *vacated and remanded on other grounds*, 135 S. Ct. 1920 (2015)).  Whether an alleged infringer acted in good faith is a "quintessential issue of fact."  *EveryScape, Inc. v. Adobe Systems, Inc.*, No. 10-11597-RGS, 2014 WL 4261406, * 2 (D. Mass. Aug. 27, 2014).  Thus, "[t]he drawing of inferences, particularly in respect of an

intent-implicating question . . . is peculiarly within the province of the fact finder that observed the witnesses." *Rolls-Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1110 (Fed. Cir. 1986); *see also Fuji Photo Film Co. v. Jazz Photo Corp.,* 394 F.3d 1368, 1378 (Fed. Cir. 2005) (declining to disturb the jury's verdict because intent to induce infringement "is a factual determination particularly within the province of the trier of fact").

Here, on the evidence before the court, a reasonable factfinder could conclude that Mr. Klein and Safti-Seal had a good faith belief that the Safti-Strip does not infringe the intumescent strip claimed in the Patents. Mr. Klein attests that he "invented new products," including the Safti-Strip tape, "[i]n anticipation" of changing safety standards. (6/3/19 Klein Decl. ¶ 9.) He opines at length on the purported differences between the products covered by the Patents and the Safti-Strip tape. (*See, e.g.*, *id.* ¶ 13 ("Upon installation of Safti-Seal's tape product, the location of the intumescent strip on the surface of the thermal barrier, rather than on the surface of the header track is a key difference as compared to the Plaintiffs' products."); *id.* ¶¶ 13-15 (alleging that, although the products covered by the Patents do not pass the most current safety standards, the Safti-Strip tape's thermal barrier impedes the flow of heat such that the tape facilitates satisfaction of UL safety standards).) Although the effectiveness of Plaintiffs' products as compared to the accused products does not bear on the direct infringement analysis, *see supra* § III.C.1, Plaintiffs have not argued or shown that Mr. Klein himself realized as much. In short, Mr. Klein's attestations of good faith are sufficient to withstand

//

summary judgment. The court thus DENIES Plaintiffs' motion for summary judgment of induced infringement.

Defendants, for their part, argue that, as a matter of law, Plaintiffs cannot establish that Mr. Klein and Safti-Seal acted with specific intent to induce infringement of the Patents. (*See* Defs. MSJ/Resp. at 12.) The court disagrees. Given Mr. Klein's intimate knowledge of the Patents, as well as the detailed instructions on Safti-Seal's website regarding the installation of the Safti-Strip tape to metal header tracks (*see* 5/10/19 Trojan Decl. ¶ 11, Ex. 10), a reasonable factfinder could conclude that Mr. Klein intended that third-party purchasers apply the Safti-Strip tape to create a head-of-wall assembly that infringes the Patents. Additionally, Defendants assert that Plaintiffs cannot prove induced infringement because "the majority of Safti-Seal's sales of [the Safti-Strip tape] are for non-infringing purposes . . . ." (Defs. MSJ/Resp. at 11.) But, "[t]he existence of a substantial non-infringing use does not preclude a finding of inducement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012) (citing *Erbe Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1284 (Fed. Cir. 2010)). The court therefore DENIES Defendants' motion for summary judgment of no induced infringement.

**E.    Contributory Infringement**

The parties also cross-move for summary judgment on Plaintiffs' contributory infringement claim under 35 U.S.C. § 271(c). Section 271(c) "incorporates the core notion that one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer, provided that the component is not a staple

article of commerce suitable for substantial non-infringing use." *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008). To succeed on a claim of contributory patent infringement, the plaintiff must establish: "(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial non-infringing uses, and (4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Like induced infringement, "contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA*, 135 S. Ct. at 1926. But, unlike induced infringement, contributory infringement demands "only proof of a defendant's *knowledge*, not *intent*, that his activity cause infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017) (internal citation and quotation marks omitted).

Plaintiffs' theory of contributory infringement echoes their theory of induced infringement: "Safti-Seal instructs customers to apply the Safti-Strip tape to wall assemblies that result in direct infringement" of the Patents. (Pls. MSJ at 15.) Again, the court is convinced that the Safti-Strip tape constitutes an "intumescent strip" within the meaning of the Patents, and that a third party would directly infringe the Patents if that party were to attach the Safti-Strip tape to a metal track that satisfies the remaining limitations of the asserted claims. *See supra* § III.C.1. And, again, Plaintiffs' arguments suffer insurmountable imprecision: Plaintiffs fail to specify which of the asserted claims are allegedly contributorily infringed and do not argue that a third-party product satisfies

//

all the limitations of that claim or those claims.  (*See generally* Pls. MSJ; Pls. Resp./Reply.)

Furthermore, the court finds that disputes of material fact remain as to whether the Safti-Strip tape has a substantial non-infringing use that would preclude Plaintiffs' contributory infringement claim.  A substantial non-infringing use is one that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009).  In determining whether a component has a substantial non-infringing use, the factfinder may "consider not only the use's frequency, but also the use's practicality, the invention's intended purpose, and the intended market."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).  Once the plaintiff makes a *prima facie* showing that the defendant's product is not suitable for a substantial non-infringing use, the burden of demonstrating a non-infringing use shifts to the defendant.  *Golden Blount*, 438 F.3d at 1363.

Plaintiffs make a *prima facie* showing that the Safti-Strip does not have a substantial non-infringing use.  *See id.*  Plaintiffs represent that Safti-Seal's marketing and instructional materials direct customers to apply the Safti-Strip tape to a metal track to create a fire-blocking head-of-wall assembly but do not suggest any alternative uses— an assertion Defendants do not dispute.  (Pls. MSJ at 17 (citing 5/10/19 Trojan Decl., ¶ 11, Ex. 10); *see also* Defs. MSJ/Resp. at 10-12; Defs. Reply at 9-10.)  "Evidence that the instruction[s]" issued by Safti-Seal "[teach] only the infringing configuration" is sufficient to shift the burden to Defendants "to introduce some evidence that end-users

actually [used the accused products] in a non-infringing way." *See Golden Blount*, 438 F.3d at 1363-64.

Defendants meet that burden for summary judgment purposes. Mr. Klein attests that Safti-Seal's customers have purchased the Safti-Strip tape "for use at the bottom of walls, at wall-ends, at control joints in the middle of walls, in elevator shafts, and around doorways." (6/3/19 Klein Decl. ¶ 18.) Although Defendants do not produce direct evidence of these non-infringing uses (*i.e.*, the testimony of end-users), Mr. Klein's testimony regarding the purposes for which Safti-Seal's customers have purchased the Safti-Strip is sufficient to create a genuine dispute of material fact. Crediting Mr. Klein's testimony, as the court must do at summary judgment, the non-infringing uses to which purchasers put the Safti-Strip tape do not appear "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *See Vita-Mix Corp.*, 581 F.3d at 1327. On the other hand, this evidence is insufficient to show that no reasonable factfinder could conclude that the Safti-Strip tape does not have a substantial non-infringing use.[8]

Because disputes of material fact remain as to whether the Safti-Seal has a substantial non-infringing use, the court DENIES Plaintiffs' motion for summary

//

---

[8] Mr. Klein summarily asserts that "[t]he majority of Safti-Seal's sales of Safti-Strip are not for use on headers at the top of walls . . . ." (6/3/19 Klein Decl. ¶ 18.) This is the precisely the sort of unsupported conclusory statement the court should not credit on summary judgment. *See, e.g.*, *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990). The court also notes that it has struck Mr. Klein's June 29, 2019, declaration and does not consider the facts asserted therein.

judgment of contributory infringement and DENIES Defendants' motion for summary judgment of no contributory infringement.

**F.     Mr. Klein's Potential Personal Liability**

Defendants move for summary judgment that Mr. Klein may not be held personally liable for any infringement of the Patents.  Defendants argue that Plaintiffs "hav[e] produced no evidence that [Mr.] Klein, in his individual capacity, has committed any of the allegedly infringing conduct complained of by Plaintiffs in this suit."  (Defs. MSJ/Resp. at 4-5.)  Plaintiffs respond that Mr. Klein "is the moving, active . . . force" behind Safti-Seal's allegedly infringing activities and, as the sole owner and officer of Safti-Seal, he may be held personally liable for any infringement of the Patents.  (Pls. Resp./Reply at 21.)  As with many issues in this case, the parties' arguments on personal liability are scattershot:  neither side discusses the different standards for a corporate officer's personal liability for direct infringement, induced infringement, and contributory infringement.  The court addresses Defendants' motion with respect to each standard.

1.     Personal Liability for Direct Infringement

"Patent infringement is a tort," *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008), and, "[i]n general, a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong," *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1411 (Fed. Cir. 1996).  "However, the 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego,'" *Wordtech Sys., Inc. v. Integrated Network Sols.*, 609 F.3d 1308, 1313 (Fed.

Cir. 2010), or "unusual circumstances justify disregarding the corporate structure," *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1331 (Fed. Cir. 1999). "To determine whether corporate officers are personally liable for the direct infringement of the corporation under [35 U.S.C.] § 271(a) requires invocation of those general principles relating to piercing the corporate veil." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986).[9] Because those principles are not unique to patent law, district courts look to the law of the regional circuit when determining whether to pierce the corporate veil. *See Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007). The Ninth Circuit applies the law of the forum state to this inquiry. *See Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993).[10]

---

[9] Some district courts have expressed doubt that Federal Circuit law requires a plaintiff to pierce the corporate veil to hold a corporate officer individually liable for direct infringement. *See, e.g.*, *Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1402-04 (D. N.J. 1991). More recent Federal Circuit authority, however, reiterates the veil-piercing requirement, *see, e.g.*, *Wordtech*, 609 F.3d at 1313, and the court follows those district courts that have so acknowledged, *see, e.g.*, *MercAsia USA, Ltd. v. Zhu*, No. 3:17-CV-718 JD, 2018 WL 3833520, at *2 (N.D. Ind. Aug. 13, 2018); *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. 1:16-CV-264-RP, 2016 WL 3970978, at *2-4 (W.D. Tex. July 19, 2016).

[10] Plaintiffs argue that Mr. Klein may be held personally liable for patent infringement because, as Safti-Seal's "sole owner and officer, he directed and authorized the [alleged] patent infringement" and "is the final decision-maker for Safti-Seal." (Pls. Resp./Reply at 21.) Although Plaintiffs do not cite any Washington law (*see generally* Pls. MSJ; Pls. Resp./Reply at 21-22), the theory of liability they articulate aligns with the state law principle that a corporate officer may sustain individual liability if the officer personally directs or participates in the tortious conduct, *see Grayson v. Nordic Constr. Co.*, 599 P.2d 1271, 1274 (Wash. 1979). But, as the Washington Supreme Court recently noted, the personal-misconduct theory of individual liability is distinct from, and does not require, piercing the corporate veil. *See State v. Arlene's Flowers, Inc.*, 441 P.3d 1203, 1237 (Wash. 2019). Accordingly, Plaintiffs' theory of Mr. Klein's personal liability is not applicable to their direct infringement claim. Under Federal Circuit precedent, Plaintiffs must instead establish circumstances that justify piercing Safti-Seal's corporate veil. *See Al-Site Corp.*, 174 F.3d at 1331; *see also MercAsia USA, Ltd. v. Zhu*, No. 3:17-CV-718 JD, 2018 WL 3833520, at *2 (N.D. Ind. Aug. 13, 2018) (rejecting the argument that the defendant could be liable for direct infringement because state law principles supported

Under Washington law, piercing the corporate veil requires proof of two elements: "First, the corporate form must be intentionally used to violate or evade a duty; second, disregard [of the corporate form] must be necessary and required to prevent unjustified loss to the injured party." *Rogerson Hiller Corp. v. Port of Port Angeles*, 982 P.2d 131, 134 (Wash. Ct. App. 1999) (quoting *Meisel v. M & N Modern Hydraulic Press Co.*, 645 P.2d 689, 692 (Wash. 1982) (en banc)). To satisfy the first element, a party must establish "an abuse of the corporate form." *Meisel*, 645 P.2d at 692. To satisfy the second element, the party seeking relief must show "that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party." *Columbia Asset Recovery Grp., LLC v. Kelly*, 312 P.3d 687, 693 (Wash. Ct. App. 2013). "The question whether the corporate form should be disregarded is a question of fact." *Norhawk Invs., Inc. v. Subway Sandwich Shops, Inc.*, 811 P.2d 221, 222 (Wash. Ct. App. 1991).

Viewing the record in the light most favorable to Plaintiffs, the court concludes that Defendants are entitled to summary judgment that Mr. Klein may not be held personally liability for direct infringement of the Patents. Plaintiffs repeatedly assert that, because Mr. Klein is Safti-Seal's sole owner and officer, Mr. Klein is personally responsible for the alleged infringement of the Patents. (Pls. Resp./Reply at 21.) That factor proves nothing. *See Grayson*, 599 P.2d at 1274 ("[A] corporation's separate legal

---

corporate officers' liability in tort absent veil-piercing, on the ground that the Federal Circuit has "consistently held" that corporate officers may be "liable for direct infringement only when there is a basis to pierce the corporate veil.").

identity is not lost merely because all of its stock is held . . . by one person.").  Moreover, Plaintiffs cite no evidence from which a reasonable factfinder could conclude that Mr. Klein commingled personal and corporate funds, used Safti-Seal as a shell for another corporation, undercapitalized Safti-Seal, functioned as Safti-Seal's alter ego, or otherwise abused the corporate form.  *See Meisel*, 645 P.2d at 692; *see also Lacey Marketplace Assocs. II, LLC v. United Farmers of Alberta Co-op. Ltd.*, No. C13-0383JLR, 2015 WL 403165, at *10 (W.D. Wash. Jan. 28, 2015) (listing factors by which to assess abuse of the corporate form under Washington law).  Nor have Plaintiffs cited evidence from which a reasonable factfinder could conclude that piercing Safti-Seal's corporate veil is "necessary and required to prevent an unjustified loss" to Plaintiffs.  *See Columbia Asset*, 312 P.3d at 693.  Accordingly, on the record before the court, there is no genuine dispute of material fact that Mr. Klein is not personally liability for direct infringement of the Patents.

2. Personal Liability for Induced Infringement and Contributory Infringement

Under Federal Circuit law, "it is well settled that corporate officers who actively aid and abet their corporations' infringement may be personally liable for inducing infringement under [35 U.S.C.] § 271(b) regardless of whether the corporation is the alter ego of the corporate officer."  *Orthokinetics, Inc.*, 806 F.2d at 1579-80; *see also Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) (noting that "corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement regardless of whether the circumstances are

//

such that a court should disregard the corporate entity and pierce the corporate veil.") (emphasis omitted).

To be personally liable for inducing infringement, a corporate officer "must act culpably in that the officer must actively and knowingly assist with the corporation's infringement." *Hoover Grp.,* 84 F.3d at 1412. Personal culpability requires more than mere knowledge of the acts alleged to constitute infringement; instead, "[i]t must be established that the defendant possessed specific intent to encourage another's infringement." *Manville*, 917 F.2d at 553. "The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Id.*

As discussed above, *see supra* § III.D, Defendants do not show that there is no genuine issue of material fact as to Mr. Klein's knowledge of the Patents and intent to induce infringement of the Patents. Mr. Klein is the inventor of the Patents, and, at the time he founded Safti-Seal and began selling the accused products, he had already been involved in two lawsuits involving the Patents, the second of which featured allegations of infringement. *See supra* § II.A. Moreover, as Plaintiffs emphasize, Mr. Klein is responsible for essentially all of Safti-Seal's activities: he is "Safti-Seal's owner, officer, office manager, employee, sales team, technical team, manufacturing team, and janitor." (5/10/19 Trojan Decl. ¶ 14, Ex. 13 at Interrog. No. 6.) These factors could lead a reasonable factfinder to conclude that Mr. Klein intended to induce Safti-Seal's infringing acts and knew or should have known that his actions would induce infringement of the Patents. *See Manville*, 917 F.2d at 553; *see also Amicus, Inc. v.*

*Alosi*, 723 F. Supp. 429, 432 (N.D. Cal. 1989) ("[T]here is ample support for the position that liability [for inducement to infringe] should be imposed on an individual officer for the infringements of his corporation when the individual is basically responsible for all the activities of the corporation.").

As with induced infringement, "a corporation does not shield officers from liability for personally participating in contributory infringement." *Wordtech*, 609 F.3d at 1317; *see also Orthokinetics, Inc.*, 806 F.2d at 1579 (upholding the jury's imposition of personal liability for contributory infringement on the corporate officers where the officers "were directly responsible for the design and production of the infringing [products] and . . . were the only ones who stood to benefit from sales of those [products]"). Accordingly, if Plaintiffs prove contributory infringement at trial, and show that Mr. Klein personally participated in such infringement, the jury may impose on Mr. Klein personal liability for contributory infringement. *See id.*

In sum, the court GRANTS in part Defendants' motion for summary judgment insofar as Mr. Klein may not sustain personal liability for direct infringement of the Patents. The court DENIES in part Defendants' motion for summary judgment with respect to Mr. Klein's potential personal liability for induced and contributory infringement of the Patents.

## G.    Patent Misuse

Plaintiffs move for summary judgment on Defendants' affirmative defense of patent misuse, on which Defendants bear the burden of proof. (Pls. MSJ at 18-22); *Cipla Ltd. v. Amgen*, --- F. Supp. 3d ---, No. 19-44-LPS, 2019 WL 1970780, at *16 (D. Del.

May 2, 2019) (noting that the party asserting a patent misuse defense bears the burden of proof).  The patent misuse doctrine aims "to prevent a patentee from using the patent to obtain market benefit beyond that which inures in the statutory patent right." *Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 704 (Fed. Cir. 1992).  In evaluating a patent misuse defense, "[t]he key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect."  *C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1372 (Fed. Cir. 1998); *see also Va. Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 868 (Fed. Cir. 1997).

Plaintiffs argue that Defendants cannot show that Plaintiffs have impermissibly broadened the scope of the Patents with anti-competitive effect.  (Pls. MSJ at 19.)  In response, Defendants identify two grounds to support their patent misuse affirmative defense.

First, Defendants argue that Plaintiffs have entered an impermissible reverse payment settlement whereby CEMCO, the owner of the Patents, licensed the Patents to Clark-Dietrich, which CEMCO sued in the first California case, in exchange for payments from Clark-Dietrich.  (Defs. MSJ/Resp. at 23.)  Defendants further allege that CEMCO and Clark-Dietrich "then teamed up to file an infringement suit against a third business competitor (Safti-Seal, Inc.)."  (*Id.*)  Generally, a reverse payment settlement requires that an alleged patent infringer "not . . . produce the patented product until the patent's term expires" in exchange for payments from the patentee.  *See F.T.C. v. Actavis, Inc.,* 570 U.S. 136, 140 (2013).  Defendants cite no facts to suggest that happened here.

(*See* Defs. MSJ/Resp. at 23; Defs. Reply at 12.)  Nor do Defendants cite any facts that would lead a reasonable fact-finder to conclude that such an agreement, if it existed, has broadened the scope of the Patents with anti-competitive effect.  (*See generally id.*)

Second, Defendants argue that Plaintiffs have engaged in an improper "tying" arrangement that constitutes patent misuse.  (*Id.* at 24.)  Specifically, Defendants argue that, "[a]s a result of their market power and for purposes of increasing their profits, Plaintiffs now require their . . . header track products to *always* be sold together with a non-patented product (namely, Clark[-Dietrich]'s 'Perimeter L-Bead' product) . . . to meet UL's latest fire safety standards."  (*Id.*)  Defendants allege that the "'Perimeter L-Bead[]' is sold at an inflated price and is not available from any alternative suppliers."  (*Id.*)  The court recognizes that "[t]ying can constitute patent misuse:  A patent licensor who conditions the license on a patent licensee's purchase of an unpatented material for use in the invention may, under certain conditions, be impermissibly extending the scope of the subject matter encompassed by the patent grant."  *Monsanto*, 363 F.3d at 1341-42.  However, Defendants cite no evidence whatsoever to support their assertion that Plaintiffs engage in improper tying.  (*See generally* Defs. MSJ/Resp. at 24; Defs. Reply at 12.)  Such "[c]onclusory allegations unsupported by factual data cannot defeat summary judgment."  *Rivera*, 331 F.3d at 1078.

In sum, Defendants have provided no competent evidence that Plaintiffs entered a reverse payment settlement agreement or improperly tied a license to the Patents to an obligation to buy an unpatented product.  Nor have Defendants adduced evidence from which a reasonable factfinder could conclude that Plaintiffs otherwise broadened the

scope of the Patents with anti-competitive effect.  Accordingly, the court GRANTS

Plaintiffs' motion for summary judgment on Defendants' patent misuse defense.[11]

## H.    Breach of Contract

The parties cross-move for summary judgment on Plaintiffs' breach of contract

claim.  Plaintiffs allege that, under the second settlement agreement, BlazeFrame and Mr.

Klein agreed not to offer for sale or sell products covered by the Patents and intumescent

strips used to practice the head-of-wall assemblies covered by the Patents.  (Pls. MSJ at

17-18 (citing 1/18/18 Trojan Decl. ¶ 3, Ex. A (filed ex parte under seal)).)  In Plaintiffs'

view, "[s]ince the Safti-Seal products infringe the Patents[], [Mr.] Klein is in breach" of

the second settlement agreement."  (Pls. MSJ at 18.)  Defendants do not dispute

Plaintiffs' characterization of the second settlement agreement but argue that they, not

Plaintiffs, are entitled to summary judgment.  (*See* Defs. MSJ/Resp. at 20-21; Defs. Reply

at 11.)

First, Defendants contend that, because Plaintiffs have not established that Mr.

Klein or Safti-Seal infringed the Patents, Plaintiffs cannot prevail on their breach of

contract claim.  (Defs. MSJ/Resp. at 20.)  The court agrees with Defendants that, on the

present record, Plaintiffs have not proved that any Defendant directly infringed the

---

[11] Defendants repeatedly argue that patent misuse is a fact-intensive inquiry and, "at this stage of the litigation and prior the close of discovery, it simply is not amenable to resolution under Rule 56."  (Defs. MSJ/Resp. at 34; *see also* Defs. Reply at 12 (calling Plaintiffs' motion for summary judgment on patent misuse "premature").)  If Defendants believed that they lacked facts essential to justify their opposition to Plaintiffs' motion with respect to patent misuse, they could have sought relief under Federal Rule of Civil Procedure 56(d).  *See* Fed. R. Civ. P. 56(d). They did not.  (*See generally* Defs. MSJ/Resp.; Defs. Reply.)

Patents, induced infringement of the Patents, or contributorily infringed the Patents. *See*

*supra* §§ III.D-F. The court therefore DENIES Plaintiffs' motion for summary judgment

on their breach of contract claim. However, because Defendants are not entitled to

summary judgment on Plaintiffs' patent infringement claims, Defendants cannot prevail

on their cross-motion on this ground.

Second, Defendants argue that Plaintiffs' breach of contract claim fails because

the second settlement agreement binds only Mr. Klein and BlazeFrame—not Safti-Seal,

the only entity that sold the accused products. (Defs. MSJ/Resp. at 21; Defs/ Reply at

11.) According to Defendants, even if Safti-Seal sold products that infringed the Patents,

Safti-Seal could not be liable for breach of a contract to which it was not a party. (Defs.

MSJ/Resp. at 21.) Defendants further contend that "Mr. Klein cannot possibly have

breached the contract because, although he was a party, all actions he undertook with

respect to his business occurred in the capacity of his business." (Defs. Reply at 11.)

Plaintiffs insist that Defendants' arguments are meritless because Mr. Klein "is in

privity" with Safti-Seal and, accordingly, may be liable for breaching the second

settlement agreement. (Pls. Resp./Reply at 22.)

The parties' arguments mirror their dispute over Mr. Klein's potential personal

liability for infringement of the Patents. As discussed above, Mr. Klein may not be held

personally liable for direct infringement of the Patents because Plaintiffs have failed to

establish circumstances that justify piercing Safti-Seal's corporate veil. *See supra*

§ III.F.1. However, "corporate officers who actively assist with their corporation's

infringement may be personally liable for inducing infringement *regardless* of whether

the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil," and "a corporation does not shield officers from liability for personally participating in contributory infringement." *Wordtech*, 609 F.3d at 1316-17 (internal quotation marks and citations omitted); *see also supra* § III.F.2.  Therefore, if at trial Plaintiffs prove induced infringement and contributory infringement, and if Plaintiffs establish that the second settlement agreement prohibits those forms of infringement, Mr. Klein may be held personally liable for breach of contract.  The court thus DENIES Defendants' motion for summary judgment on Plaintiffs' breach of contract claim.

## I.      Summary

The court agrees with Plaintiffs that the Safti-Strip constitutes an "intumescent strip" within the meaning of the Patents.  That conclusion resolves the question at the heart of the parties' patent infringement dispute.  Plaintiffs, however, fail to adequately identify the Patent claims infringed and the specific accused products on which the asserted claims allegedly read.  The court therefore GRANTS in part and DENIES in part Plaintiffs' motion for summary judgment of direct infringement, induced infringement, and contributory infringement and DENIES Defendants' motion with respect to those claims.  Additionally, the court agrees with Defendants that Plaintiffs have not established circumstances that justify piercing Safti-Seal's corporate veil.  The court therefore GRANTS in part and DENIES in part Defendants' summary judgment motion on the issue of Mr. Klein's personal liability:  although Mr. Klein may not be personally liable for direct infringement, he may be personally liable for induced infringement and contributory infringement, should Plaintiffs prove those claims at trial.  Furthermore, the

court GRANTS Plaintiffs' motion for summary judgment on Defendants' affirmative defense of patent misuse and DENIES the parties' cross-motions for summary judgment on Plaintiffs' breach of contract claim.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Plaintiffs' motion for summary judgment (Dkt. # 102) and GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. # 104).

Dated this 22nd day of November, 2019.

JAMES L. ROBART
United States District Judge