THE HONORABLE JAMES L. ROBART

1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

10  CALIFORNIA EXPANDED METAL
PRODUCTS COMPANY, a California

11  corporation; and CLARKWESTERN
DIETRICH BUILDING SYSTEMS LLC,

12  dba CLARKDIETRICH BUILDING
SYSTEMS, an Ohio limited liability

13  company,

14                              Plaintiffs,

15       v.

16  JAMES A. KLEIN, an individual;
BLAZEFRAME INDUSTRIES, LTD., a

17  Washington company; and SAFTI-SEAL,
INC., a Washington company,

18                              Defendants.

CASE NO. 2:18−cv−00659−JLR

**PLAINTIFFS' TRIAL BRIEF**

The Honorable James L. Robart
Courtroom 14106

19
20
21
22       Plaintiffs California Expanded Metal Products Company ("CEMCO") and Clarkwestern

23  Dietrich Building Systems LLC ("ClarkDietrich") (together, "Plaintiffs") respectfully submit this

24  Trial Brief for the jury trial beginning on December 9, 2019.

25
26
27
28

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18−cv−00659−JLR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

**Table of Contents**

PAGE

I.    Introduction.................................................................................................................1

II.   Statement of Facts.......................................................................................................3

      A.    Brief Overview of Patents ...............................................................................3

      B.    The SAFTI-SEAL Products..............................................................................4

            1.    The Benefits of the Patented Products......................................................10

            2.    ClarkDietrich's History with the BlazeFrame Products ..........................11

                  a.    The License Agreements ...............................................................11

                  b.    ClarkDietrich Built the Market for the Patented
                        Products ........................................................................................12

            3.    ClarkDietrich and CEMCO Have Been Harmed by
                  SaftiSeal.........................................................................................................13

                  a.    The Market for Intumescent Track Products is
                        Limited to Three Players ..............................................................13

                  b.    ClarkDietrich is Losing Sales Because of
                        SaftiSeal's Infringement ...............................................................14

      C.    Procedural Summary .......................................................................................16

III.  Claims Plaintiffs Will Pursue at Trial.....................................................................17

      A.    Direct Patent Infringement by Safti-Seal.....................................................17

      B.    Induced Patent Infringement by Defendants Safti-Seal and Klein .........19

      C.    Contributory Patent Infringement by Defendants Safti-Seal and
            Klein .................................................................................................................21

      D.    Damages ............................................................................................................22

            1.    ClarkDietrich and CEMCO are Entitled to Lost Profits..........................22

                  a.    There was Demand for the Patented Products.............................23

                  b.    There is an Absence of Acceptable Non-infringing
                        Substitutes......................................................................................24

c.     ClarkDietrich has the Necessary Marketing and Manufacturing Capacity ................................................26

d.     ClarkDietrich's Lost Profits are Quantifiable ...............................27

2.     Alternatively, ClarkDietrich and CEMCO are Entitled to a Reasonable Royalty ................................................................27

E.     Willful Patent Infringement ...................................................................28

F.     Exceptional Case Standard ....................................................................30

IV.     Defendants' Affirmative Defenses ....................................................................31

A.     Direct, Contributory, and Induced Infringement Affirmative Defenses are Improper ...........................................................................31

B.     Failure to Join Affirmative Defense Is Not Supported by Facts ..........................31

C.     Failure of Causation Affirmative Defense Is Not Supported by Facts.......................................................................................................31

V.     Conclusion and Relief Requested ....................................................................32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

1

**Table of Authorities**

2

**Cases** PAGE(S)

3    *Amer. Seating Co. v. USSC Grp.*,
          514 F.3d 1262 (Fed. Cir. 2008) ........................................................... 22-23, 24
4
     *Amstar Corp. v. Envirotech Corp.*,
5          823 F.2d 1538 (Fed. Cir. 1987) ......................................................................22

6    *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
          567 F.3d 1314 (Fed. Cir. 2009) .....................................................................24
7
8    *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
          279 F.3d 1022 (Fed. Cir. 2002) .....................................................................20
9
10   *Fiskars, Inc. v. Hunt Mfg.*,
          279 F.3d 1378 (Fed. Cir. 2002) .....................................................................23
11
     *Fujitsu Ltd. v. Netgear Inc.*,
12         620 F.3d 1321 (Fed. Cir. 2010) .....................................................................21

13   *Georgia Pacific Corp. v. United States Plywood Corp.*,
          318 F.Supp. 1116 (S.D.N.Y.),
14         *modified by* 446 F.2d 295 (2nd Cir. 1971)...................................................28

15   *Gyromat Corp. v. Champion Spark Plug Co.*,
          735 F.2d 549 (Fed. Cir. 1984) .......................................................................24
16
17   *Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
          136 S. Ct. 1923 (2016)...................................................................................28
18
19   *K-2 Corp. v. Salomon S.A.*,
          191 F.3d 1356 (Fed. Cir. 1999) .....................................................................17
20
21   *Manville Sales Corp. v. Paramount Sys., Inc.*,
          917 F.2d 544 (Fed. Cir. 1990) .......................................................................19

22   *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*,
          303 F.3d 1294 (Fed. Cir. 2002) .....................................................................20
23
24   *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
          572 U.S. 545 (2014)......................................................................................30
25
26   *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
          806 F.2d 1565 (Fed. Cir. 1986) .....................................................................19
27
28   *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
          575 F.2d 1152 (6th Cir. 1978)..................................................................23, 27

TROJAN LAW OFFICES
BEVERLY HILLS

*Paper Converting Mach. Co. v. Magna-Graphics Corp.,*
    745 F.2d 11 (Fed. Cir. 1984) ............................................................27

*Powell v. Home Depot U.S.A., Inc.,*
    663 F.3d 1221 (Fed. Cir. 2011) ........................................................28

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,*
    875 F.3d 1369 (Fed. Cir. 2017) ...................................................24, 26

*Sensonics, Inc. v. Aerosonic Corp.,*
    81 F.3d 1566 (Fed. Cir. 1996) ...........................................................25

*State Indus., Inc. v. Mor-Flo Indus., Inc.,*
    883 F.2d 1573 (Fed. Cir. 1989) ........................................................27

*TWM Mfg. v. Dura Corp.,*
    789 F.2d 895 (Fed. Cir. 1986) ...........................................................27

*Wechsler v. Macke Int'l Trade, Inc.,*
    486 F.3d 1286 (Fed. Cir. 2007) ........................................................22

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.,*
    609 F.3d 1308 (Fed. Cir. 2010) ........................................................21

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rules*                                                                                    PAGE

35 U.S.C. § 271(b)............................................................................................................19, 20

35 U.S.C. § 284...................................................................................................................27

TROJAN LAW OFFICES
BEVERLY HILLS

### I.      Introduction

Plaintiffs and Defendants James A. Klein ("Klein") and BlazeFrame Industries Ltd. ("BlazeFrame Ind.") are all too familiar with each other, as this is the third lawsuit involving these parties.  All prior disputes involve the asserted patents related to track products and wall assemblies that are designed to impede the spread of smoke and fire using an intumescent strip.  This entire matter can be boiled down to the simple fact that Defendants infringe, or induce infringement of, the asserted patents despite previously selling the technology CEMCO to resolve the prior disputes.

The first litigation between these four parties resulted in a settlement agreement for the sale of six Patents covering the patented technology to CEMCO for ███████ and certain royalties.  CEMCO licensed this technology to Plaintiff ClarkDietrich and also permitted Klein and BlazeFrame Ind. to continue to sell the track products covered by the patented technology in a restricted six-state territory.  In turn, Klein and BlazeFrame Ind. ignored these restrictions which caused the second litigation.

The second litigation resulted in yet another settlement agreement.  This time Klein and BlazeFrame Ind. sold their BlazeFrame trademarks to ClarkDietrich and agreed to cease making and selling track products covered by the six patents previously sold to CEMCO.  This should have been the end of the dispute between these four parties, but yet again, Klein ignored the agreement and continues to sell the patented track products under a new company, Safti-Seal, Inc. ("Safti-Seal").

Now during the third litigation between the parties, Defendants Klein, BlazeFrame Ind., and Safti-Seal (together, "Defendants") still infringe the asserted patents and cause others to infringe under the guise of making and selling "new" products that include the "Safti-Strip" designed to circumvent the very patents they sold off.  Defendants continue to do so even after the Court explicitly found that "[n]evertheless, the court finds that, as a matter of law, the Safti-Strip tape

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5
6
7
8
9

affixed to the accused metal track products is an "intumescent strip" within the meaning of the Patents" during summary judgment  (Dkt. #117 at 19:8-10.)  Defendants were forewarned of the Court's conclusion during claim construction when the Court concluded earlier in the case on April 17, 2019 that "intumescent strip" means "a strip that comprises a substance that expands when exposed to heat" and found that "[t]his construction makes clear that the intumescent strip need not include only an intumescent substance. It is also broad enough to encompass preferred embodiments in which the strip consists of a composition containing an intumescent substance, where that composition lies atop a non-intumescent substrate." (Dkt. #98 at 19:9-14.)

10
11
12
13
14
15

Not only do Defendants infringe the patents, they have taken unreasonable litigation positions[1] including Defendants' contention that Court excluded all of Plaintiffs' direct infringement claims.  As the Court clarified, "Defendants' conclusion that the second portion of the court's order on the remaining claim elements 'ruled that no claim for literal infringement by any track product remains in the case' (see Resp. at 5-8) is not reasonable." (Dkt. #134 at 5:4-6.)

16
17
18
19
20
21
22
23
24

Based on the foregoing, Defendants should pay Plaintiffs' lost profits, or at a minimum, a reasonable royalty, for their direct, contributory, and induced infringement of the asserted patents now owned by CEMCO and licensed by ClarkDietrich.  Additionally, Defendants should be enjoined from making and selling the patented SaftifFrame track products and SaftiStrip products for any use in a track or wall assembly, as they have already been contractually required to do so. Lastly, because Defendants' infringement was willful (as of either the Court's claim construction order on April 14 or on August 14, 2019 after the Court's summary judgment order), this is an exceptional case of warranting an award of enhanced damages and attorneys' fees to Plaintiffs.

25
26
27
28

_____

[1] Defendants' arguments were rejected on numerous occasions, including Defendants' invalidity arguments (regarding patents Klein and BlazeFrame Ind. previously owned and assigned away) and inequitable conduct before the United States Patent and Trademark Office in prosecuting their own patents.  The Court struck these affirmative defenses under assignor estoppel theories. (Dkt. #91.)

TROJAN LAW OFFICES
BEVERLY HILLS

## II.      Statement of Facts

### A.      Brief Overview of Patents

Klein is the sole named inventor of U.S. Patents 7,681,365 ("the '365 Patent"), 7,814,718 ("the '718 Patent"), 7,866,108 ("the '108 Patent"), 8,056,293 ("the '293 Patent"), 8,136,314 ("the '314 Patent"), and 8,151,526 ("the '526 Patent").  Klein assigned these patents to his company BlazeFrame Ind.  BlazeFrame Ind. made and sold track products under these patents (referred to as "the BlazeFrame® products").

The technology at issue in these patents relates to wall assemblies used in the construction of buildings to seal wall construction joints and gaps.  A wall assembly includes a horizontal track that is typically made of metal and mounted to a ceiling or floor so that vertical studs can be inserted vertically to frame a wall as depicted below.

**Head-of-Wall Assembly**                    **Fig. 1 of the '365 Patent**

    

The track product is commonly a "U"-shaped track, defined by a web and two side flanges (also referred to as "sidewalls") that form an upside down "U" shape.

The patents are directed to fire-prevention wall products that prevent smoke and fire from spreading from one side of the wall to the other.  The patents all claim either track or wall assemblies having an intumescent strip attached on a sidewall of the metal track, which expands in a fire to seal the gap between the track product and the ceiling to prevent the spread of smoke and fire.

1
2
3
4
5
6
7
8

The following patents are at issue in this case: the '365 Patent, the '718 Patent, the '314 Patent, the '526 Patent (the "Asserted Patents").  While all claims are at issue in this case, the following independent claims are representative:  (1) Claims 1 and 6 of the '314 Patent and claim 12 of the '718 Patent (directed to track products with slots with an intumescent strip affixed on the track product);  and (2) Claim 1 of the '365 Patent, claim 1 of the '718 Patent, and claim 1 of the '526 Patent (directed to the complete wall assembly with an intumescent strip affixed to the track product).

## B.    The SAFTI-SEAL Products

Though patent infringement is to be determined by comparing the accused SAFTI-SEAL products to the asserted patents, it is worth noting that the SAFTI-SEAL track products are virtually the same as the BlazeFrame® track products (previously sold by Klein, BlazeFrame, and ClarkDietrich, but now exclusively made and sold by ClarkDietrich).  As Defendants themselves note, the only difference is that the SAFTI-SEAL track products include an additional "thermal barrier":

> Plaintiffs and Defendants thus both apply competing fire safety strips onto metal header tracks.  Plaintiffs' product is an intumescent strip in the form of a self-adhering 'tape' (commercially available in rolls from Rectorseal under the tradename BlazeSeal), whereas Defendants' product is also a tape product but, unlike Plaintiffs', it consists of an intumescent material glued onto a strip of a thermal insulating material (thermal barrier).

(Defs' Mot. at 14:3-8.)

More particularly, the SAFTI-SEAL track products use the same metal track products as the BlazeFrame® track products.  SAFTI-SEAL has UL approvals for all of the same track profiles that ClarkDietrich sells as part of its BlazeFrame products. Thus, SAFTI-SEAL has sold, and sells, SAFTI-FRAME products with the same track profiles, and SAFTI-STRIP for use with the same

track profiles, as ClarkDietrich. The configuration of the web and flanges of the metal track products are the same and are generally U-shaped as follows:

| Safti-Seal Product Profile Name | Representative Picture of Profile |
|---|---|
| PS7 - SaftiFrame "DSL" (Slotted Both Sides) Profiles with two slotted legs |  |
| PS4 – SaftiFrame "SL" (Slotted One Side) Profiles One slotted and One solid leg |  |
| PS1 – SaftiFrame "DL" (Deep Leg) Profiles with two solid legs |  |

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

| PS13 – SaftiFrame "VT" (Vertical Joint) profiles with two solid legs |  |
|---|---|
| PS36 – SaftiFrame Bottom of Wall |  |

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18−cv−00659−JLR

-6-

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

| | |
|---|---|
| PS10 – SaftiFrame "ODL" (Offset Deep Leg) Profiles with two offset solid legs |  |
| PS11 – SaftiFrame "ODSL" (Offset Slotted Leg) Profiles with two offset slotted lower legs |  |
| PS12 – SaftiFrame "OJR" (Offset J-Runner) with one 2" and one 3" solid legs |  |

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18–cv–00659–JLR
-7-
**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

| | |
|---|---|
| PS27 – SaftiFrame "JR" profiles with one short (front) and one long (back) leg |  |
| PS61 – "DJR" Double J-Runner (Shaft Wall) Profile |  |
| PS18 – SaftiSeal "RCS" (Slotted Leg Profile) to Accommodate Resilient Channel |  |

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18-cv-00659-JLR

-8-

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14

TROJAN LAW OFFICES
BEVERLY HILLS

| PS19 – SaftiSeal "RCD" (Deep Leg Track Profile) to Accommodate Resilient Channel |
| --- |

15  The SAFTI-SEAL track products also use the same intumescent material as the

16  BlazeFrame® track products.  The location of the intumescent material on the sidewall of the track

17  product (as opposed to another part of the track product) is the same.  Defendants' own photographs

18  show just how similar the two products are:

19

20  **BlazeFrame Track product**                     **Safti Seal Track product**




21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

In short, the only difference between these products is the "thermal barrier."

SaftiSeal started selling the accused products as soon as it went into business in 2017. As the named inventor, and assignor, of the Asserted Patents, Klein knew the patents well and understood what their claims covered. Damages accrue from the opening of SaftiSeal, i.e., September 1, 2017. No Defendant has suggested otherwise.

C.   The Patented BlazeFrame ProductsClarkDietrich is the exclusive licensee of the Asserted Patents. As such, it has the sole right to practice the patented inventions claimed in those patents, and exercises those rights by making and selling the BlazeFrame products. The patented BlazeFrame products consist of a generally U-shaped metal track, which can be in the shape of one of numerous profiles, with an intumescent strip attached to the side leg or legs of the generally U-shaped track. These BlazeFrame products are used by contractors to fabricate fire-rated wall assemblies typically when building a multi-story building. The BlazeFrame products can be used at the top of the wall as a "header" track, or at the bottom of the wall as a "footer."

1.   The Benefits of the Patented Products

Among the fire protection provided in buildings is passive fire stopping. Such "passive" fire stopping does not actively suppress a fire, but rather prevents or slows the spread of fire. Before the development of the patented BlazeFrame products, such passive fire stopping products used at the top and bottom of walls were predominantly intumescent caulk and mineral wool. They were applied after the metal wall framing was installed and before the dry wall was applied. Because they were applied separately, different tradesmen with different skills were hired just for the fireproofing task.

The Asserted Patents provide the ability to install passive fire-proofing without a separate, additional step of applying caulk and/or mineral wool. With the BlazeFrame products, the intumescent material is shipped to the construction site already factory applied to the track product. That track and fire-stopping material is then installed in a single step. Applying the intumescent to the track in the factory ensures that the intumescent is securely adhered to a clean

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18-cv-00659-JLR

-10-

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

1  steel surface under environmental conditions that ensure better adhesion and that the proper

2  amount of intumescent is provided to a given area of track. UL's inspectors regularly inspect

3  ClarkDietrich's numerous facilities where it manufactures the BlazeFrame products to ensure

4  ClarkDietrich maintains its rigorous quality control over this application process.

5        2.  ClarkDietrich's History with the BlazeFrame Products

6            a.  The License Agreements



PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18–cv–00659–JLR
-11-
**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

1



2

3

4

5

6

7

8

9           b.   <u>ClarkDietrich Built the Market for the Patented Products</u>

10          Since 2012, ClarkDietrich has invested millions of dollars in building product recognition

11   and acceptance particularly among architects, who specify the method of fire-proofing for a

12   particular wall assembly. ClarkDietrich has been methodical about its promotional efforts for the

13   BlazeFrame products. As part of these efforts, it has hosted hundreds of educational sessions with

14   architects and contractors, teaching them about the benefits of the patented products. When the

15   BlazeFrame products were new to the market, and ClarkDietrich first licensed the products, it

16   spent significant time and resources introducing Jim Klein, the inventor of the BlazeFrame

17   products, to its industry contacts, particularly the architects and contractors, to promote the

18   products.

19          ClarkDietrich also employs teams to review databases listing publicly-bid building

20   projects nationwide, and to scrutinize the construction document specifications, including among

21   other things, the fire-proofing specifications. If this team identifies a project for which the

22   BlazeFrame products have not been specified, a member of the team works with the architect in

23   an attempt to have BlazeFrame products specified as the fire-proofing.

24          ClarkDietrich has used this same process successfully with many of its proprietary

25   products, and it has been equally successful with its BlazeFrame products. A snapshot taken this

26   summer of such a database, known as the Dodge Report, highlights the effectiveness of

27   ClarkDietrich's efforts. That report showed that among projects that specified intumescent track

28

TROJAN LAW OFFICES
BEVERLY HILLS

products that provide the same benefits as the patented products (*i.e.,* ClarkDietrich's

BlazeFrame, SaftiSeal products, and CEMCO's FasTrack products), there were 2343 jobs that

specified only BlazeFrame products, 3 jobs that specified only SaftiSeal products, 280 jobs that

specified only FasTrack products, 3 jobs that specified both BlazeFrame and SaftiSeal products,

427 jobs that specified both BlazeFrame and FasTrack products, 5 jobs that specify both FasTrack

and SaftiSeal products, and no jobs that specified all three products. Of the jobs pending at the

time of the snapshot, BlazeFrame products were solely specified in about 89% of the jobs.

With each iteration of the BlazeFrame patent license agreements, ClarkDietrich negotiated

a progressively more exclusive ability to sell the patented BlazeFrame products. Having spent so

much time and money building the knowledge and acceptance of the BlazeFrame intumescent

track products in the market, ClarkDietrich wanted to be the sole beneficiary of its efforts.

    3.  <u>ClarkDietrich and CEMCO Have Been Harmed by SaftiSeal</u>

        a.  <u>The Market for Intumescent Track Products is Limited to Three Players</u>

Among passive fire-stopping products, there are three categories: traditional caulk and

mineral wool, intumescent track products, and secondary field-applied products. The traditional

caulk and mineral wool still dominate the overall industry. However, architects willing to use

other methods typically, and consistently, gravitate to one or the other available options. To the

extent an architect is willing to entertain a non-traditional passive fire-stopping option, the choice

is between intumescent track products or secondary field-applied products. In other words, an

architect who is willing to use something other than caulk and/or mineral wool, will typically

have a preference for either intumescent track products or secondary field-applied products. Once

that choice is made, and contractors are seeking bids to complete a project, it is not likely that a

change will be made in the building specification. However, an architect who is comfortable with

intumescent track products is more likely to entertain a request to change from, for example,

BlazeFrame products to SaftiSeal products because they are viewed as equivalents.

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18–cv–00659–JLR

-13-

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

According to Defendants, the non-traditional market comprises the following products: BlazeFrame products, SaftiSeal products, FasTrack products, Hilti Top Track Seal, STI Track Top Gasket, CEMCO FireGasket, CEMCO HotRod and HotRod XL, CEMCO Deflection Drift Angle, CEMCO FireBead, RectorSeal BlazeFoam, and RectorSeal Track-Safe. The CEMCO products (FasTrack, FireGasket, HotRod, HotRod XL, Deflection Drift Angle, and FireBead) and the RectorSeal products (BlazeFoam and Track-Safe) are each covered by patents owned by CEMCO. The STI product is covered by its patent. Thus, none of these products is an available, non-patented alternative to the Asserted Patents. In addition, ClarkDietrich's experience is that it rarely competed with either the Hilti or STI products – among other reasons because they do not provide the benefit of the patented products of saving an additional fire-stopping application step.

While the SaftiFrame product provides all the benefits of the products covered by the Asserted Patents (and all the benefits of the BlazeFrame products), arguably the SaftiStrip product does not prevent an additional fire-stopping application step. However, the market sees SaftiStrip as an intumescent track product and not a secondary-applied product largely because the SaftiSeal UL approvals for its products identify it as such. These UL approvals indicate that SaftiStrip can either be factory-applied (making SaftiFrame) or field-applied. In addition, according to emails betweem Defendants and their customers, and conversations ClarkDietrich has had with its customers, the market views both SaftiFrame and SaftiStrip as a replacement for BlazeFrame. Contractors and architects who have become comfortable with BlazeFrame believe that SaftiFrame and SaftiStrip is a cheaper substitute for the BlazeFrame products.

            b.   ClarkDietrich is Losing Sales Because of SaftiSeal's Infringement

Since about September 2017 when SaftiSeal entered the market, ClarkDietrich has lost sales of its BlazeFrame products. In 2019, its sales are about ███████ less than they had been the previous year. In general, each year that it has sold BlazeFrame products, ClarkDietrich has seen an increase in sales. However, since the introduction of SaftiSeal's products, and particularly its SaftiStrip product, ClarkDietrich's sales have fallen ███████████████. This decline

TROJAN LAW OFFICES
BEVERLY HILLS

1    is occurring even though the rest of ClarkDietrich's business, including its metal track product

2    sales, continue to increase.

3         SaftiSeal's products are designed to mimic and divert sales from ClarkDietrich's

4    BlazeFrame products. After ClarkDietrich has worked with architects and contractors to gain

5    acceptance of intumescent track products for a particular job and often had the specifications

6    updated to include BlazeFrame products for passive fire stopping, SaftiSeal and Klein swoop in

7    as the subcontractors are preparing final bids before beginning to build the project and offers a

8    cheaper substitute. SaftiSeal's sale of intumescent strip (the SaftiStrip) separate from steel track

9    products disrupts ClarkDietrich's business model of selling intumescent-applied tracks, causing

10   ClarkDietrich lost sales and pricing pressures.

11        If SaftiStrip and SaftiFrame had not appeared in the market, ClarkDietrich would have

12   sold its BlazeFrame patented product for the same jobs SaftiSeal is currently winning. In each

13   case, ClarkDietrich was selling its BlazeFrame products to be built into fire-rated wall assemblies.

14   It was not aware there was any other use for the products, and it has no UL approvals for any

15   other use of the products.

16        ClarkDietrich has identified seven specific jobs for two of its long-time BlazeFrame

17   customers (Valley Interiors and Component Assembly) where it quoted BlazeFrame products for

18   certain projects and lost those jobs to SaftiSeal. Plaintiffs have been unable to identify the specific

19   projects among SaftiSeal sales because SaftiSeal claims to be unable to identify specific projects.

20   However, each of these two customers told ClarkDietrich the jobs went to SaftiSeal. In fact,

21   Valley Interior has informed ClarkDietrich that currently it is purchasing only SaftiStrip for its

22   passive fires-stopping needs. Although it continues to sell all its other product lines to both Valley

23   and Component, ClarkDietrich has not quoted BlazeFrame products to either Valley or

24   Component in quite some time.

25        ClarkDietrich has even assisted other long-time BlazeFrame customers such as Anning-

26   Johnson to purchase the correct track profile for use with SaftiStrip. In an effort to assist a valued

27   customer, even though the customer bought from a competitor, ClarkDietrich directed Anning-

28

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

1   Johnson to the information about the necessary track profile to build a wall assembly on

2   SaftiSeal's website in accordance with SaftiStrip UL certifications.

3       Finally, SaftiSeal has provided quotations for SaftiSeal products in response to requests

4   for customers seeking "BlazeFrame" and it has shipped SaftiSeal products in response to

5   purchase orders requesting "BlazeFrame." Clearly, customers see the SaftiSeal products as

6   substitutes for the patented BlazeFrame products.

7

8   **C.    Procedural Summary**

9       This case was originally filed in the Central District of California, where the prior cases

10  involving these parties were heard before the Hon. Dean D. Pregerson.  On May 4, 2018, the case

11  was transferred to this District.

12      The Court presented its Claim Construction Order on April 17, 2019.   In the Claim

13  Construction Order, the Court construed the following terms: "intumescent strip" to mean "a strip

14  that comprises a substance that expands when exposed to heat"; "affixed lengthwise on at least one

15  of the outer sidewall surfaces" to mean "attached lengthwise, directly or by means of an intervening

16  adhesive, to at least one of the outer sidewall surfaces"; and "inorganic filler" to mean "inorganic

17  filler, including but not limited to perlite, vermiculite, expandable glasses, micas, clay, talc,

18  borosilicates, cokes, charcoals, hard coals, brown coals, calcium carbonate, cereal grains, cork, bark

19  granules, expandable clay, foamed concrete, metal sponge, tuff, and/or lava."   (Dkt. #98.)

20  Additionally, in the Court's Order on Summary Judgment, the Court ruled that the Safti-Strip tape

21  is an "intumescent strip" as constructed by the Court, and the "intumescent strip" limitation reads

22  onto the Safti-Frame products that include a strip of Safti-Strip tape.

23

24

25

26      Throughout this case, multiple Motions have been filed, including two separate Motions for

27  Summary Judgment, Motions in Limine, and a Motion to Strike.  Now that the Court has ruled on

28

TROJAN LAW OFFICES
BEVERLY HILLS

1    these Motions and conducted the Pretrial Conference, the case will proceed to trial on December 9,

2    2019.

3                                 **III.    Claims Plaintiffs Will Pursue at Trial**

4    **A.    Direct Patent Infringement by Safti-Seal**

5            Plaintiffs will prove that Defendant Safti-Seal infringes at least one claim of the Asserted

6    Patents.

7            As the Federal Circuit teaches, "the court first determines, as a matter of law, the correct

8    claim scope, and then compares the properly construed claim to the accused device to determine,

9    as a matter of fact, whether all of the claim limitations are present in the accused device, either

10   literally or by a substantial equivalent." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362 (Fed. Cir.

11

12   1999).

13           Here, Plaintiffs will prove that Safti-Seal directly infringes at least one claim of the Asserted

14   Patents.  The Court has already determined, as a matter of law, the correct claim scope of the key

15   claim terms at issue, namely, "intumescent strip" and "affixed . . . on" the track product track.[2]

16   The other limitations of the asserted claims are also present.  Each of the tracks in the SaftiFrame

17   products is generally U-shaped. Likewise, each of the UL approvals for SaftiSeal's SaftiFrame and

18   SaftiStrip products requires a generally U-shaped track to build a wall assembly. Likewise, each

19   example on SaftiSeal's website and each job for which ClarkDietrich lost sales of its BlazeFrame

20   products require a generally U-shaped track to build a wall assembly.

21

22           As a single example, all elements of claim 6 of the '314 Patent are present in Safti-Seal's

23   PS7 – SaftiFrame DSL product.  Specifically, claim 6 of the '314 Patent recites:

24           "A generally U-shaped sheet-metal track, comprising:

25           an elongated web integrally connected to a pair of spaced apart and outwardly

26           extending sidewalls with the web and sidewalls defining a U-shaped profile, each
             sidewall having inner and outer sidewall surfaces, each sidewall having a plurality

27

28   [2] *See supra* at Section II.D.

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

of slots positioned perpendicular to the lengthwise direction of the elongated web, each sidewall having a first sidewall portion adjacent to the web and a second sidewall portion adjacent to the first sidewall portion; and

an elongated heat expandable intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the first sidewall portion and not on the second sidewall portion."

(*See* the '314 Patent, claim 6.)  The following is a picture of the Safti-Seal PS7 – SaftiFrame DSL product (marked up for reference):



As shown here, and explained in Plaintiffs' infringement contentions, the Safti-Seal PS7 – SaftiFrame DSL accused product is a U-shaped sheet-metal track which comprises an elongated web (1) that is connected to a pair of sidewalls (2), each sidewall having an inner and outer surface and (3) plurality of slots positioned perpendicular to lengthwise direction of the web.  Each sidewall has a first sidewall portion (4) and a second sidewall portion (5) adjacent to the first sidewall portion.  An intumescent strip (6) is shown being affixed lengthwise on at least one of the outer sidewall surfaces, and positioned on the first sidewall portion (4) and not the second (5).  Therefore, each and every element of claim 6 of the '314 Patent is present in Safti-Seal's PS7 – SaftiFrame DSL products, which thereby infringe claim 6 of the '314 Patent.  This analysis is illustrative of claim 12 of the '718 Patent.  For similar reasons, SaftiSeal's other profiles with slotted legs, including the ODSL products, directly infringe as well.

Additionally, all of SaftiSeal's generally U-shaped track profiles an intumescent strip (DSL, SL, DL, VT, BT, ODL, ODSL, OJR, JR, DJR, RCS, and RCD) also directly infringe Claim 1,

TROJAN LAW OFFICES
BEVERLY HILLS

which recites, in part, the composition of the intumescent strip:  "(A) from 5 to 95% by weight of expandable graphite; (B) from 1 to 70% by weight of a fire retardant; (C) from 1 to about 50% by weight of an inorganic filler dispersed in an emulsion of polyvinyl acetate or silicone."  ('314 Patent, Claim 1.)  Safti-Seal directly infringes this claim because U.S. Patent No. 6,207,085, to Eva Ackerman ("the Ackerman Patent"), is "incorporate[d] by reference . . . which covers "heat expandable compositions" that may serve as the intumescent strip claimed in the Patents."  (Dkt. #98 at 12:18-20.)  Because the Ackerman Patent teaches the claimed composition, and intumescent strip sold by Rectorseal and used by Safti-Seal is covered by the Ackerman Patent, Safti-Seal also infringes the Claim 1 of the '314 Patent.

Based on the foregoing, Plaintiffs have suffered damages as a result of Defendants' infringement of at least one claim of the Asserted Patents by Safti-Seal's accused products.

**B.     Induced Patent Infringement by Defendants Safti-Seal and Klein-**

Plaintiffs will prove that Defendants Klein and Safti-Seal induce third parties to infringe at least one claim of the Asserted Patents.   Additionally, Klein directed Safti-Seal to induce infringement of the Asserted Patents, and, thus, Klein is personally liable for the induced infringement of the Asserted Patents.  *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1578–79 (Fed. Cir. 1986) ("[I]t is well settled that corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b) regardless of whether the corporation is the alter ego of the corporate officer."); *see also Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) (noting that "corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement regardless of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil.") (emphasis omitted).

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18–cv–00659–JLR

-19-

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

Inducement to infringe is defined by 35 U.S.C. § 271(b), which states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (2000). In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033, (Fed. Cir. 2002), and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002).

Here, Plaintiffs will show that there has been direct infringement of the Asserted Patents by the customers and installers of the Safti-Strip and Safti-Frame products. Defendants instruct their customers (direct infringers) to construct wall assemblies in accordance with the UL Listings such that the end-product will be certified fire-safe pursuant to the UL safety standards. Klein also issues Engineering Judgements as "Technical Director" of SaftiSeal, confirming that certain wall assemblies comply with UL standards. Once these wall assemblies are constructed according to the specification of the UL Listings or Klein's Engineering Judgment, the assemblies directly infringe at least one claim of the Asserted Patents. For example, the Fig. 3A of the '365 Patent has the same configuration of UL Report UL XHBN - Joint System No. HW-D-0498, which is available on SaftiSeal's website:

| The '365 Patent | UL XHBN - Joint Systems System No. HW-D-0498 |
|---|---|
|  Fig. 3A |  |

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18−cv−00659−JLR

-20-

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

| The '365 Patent | UL XHBN - Joint Systems System No. HW-D-0498 |
|---|---|
| Fig. 3A shows an exemplary embodiment of the fire retardant dynamic head-of-wall assembly of the '365 Patent | This UL Listing configuration generally shows each of the elements shown in Fig. 3A of the '365 Patent. |

Additionally, both Klein and Safti-Seal knowingly induced infringement and possessed the specific intent to encourage the customers' infringement, as Klein himself is the inventor of the Asserted Patents. Klein himself also knew the patent claims and that the UL Reports substantially aligned with the Asserted patent. Therefore Defendants Klein and Safti-Seal induced infringement of the Asserted Patents.

Plaintiffs have suffered damages as a result of Defendants inducing infringement of the Asserted Patents.

**C.     Contributory Patent Infringement by Defendants Safti-Seal and Klein-**

Plaintiffs will prove that Defendants Klein and Safti-Seal contributorily infringe at least one claim of the Asserted Patents. Additionally, Klein is personally liable for the contributory infringement of the Asserted Patents. *See Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1317 (Fed. Cir. 2010) ("As with inducement, a corporation does not shield officers from liability for personally participating in contributory infringement.")

The Federal Circuit teaches that to establish contributory infringement, the patent owner must show: 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial non-infringing uses, and 4) that the component is a material part of the invention. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5

Here, customers and end-users of the Safti-Strip and Safti-Frame products directly infringe the Asserted Patents by constructing wall assemblies in accordance with the UL Listings provided by Defendants, which instruct end-users to assemble the assemblies in a directly infringing manner. Klein has knowledge of the Asserted Patents, as he is the inventor of the Asserted Patents as described above.

6
7
8
9
10
11
12
13
14

Furthermore, the Safti-Strip and Safti-Frame products do not have any substantial non-infringing uses, and Klein and Safti-Seal only instructs customers to use the Safti-Frame and Safti-Tape products in an infringing way.  The Court has even struck evidence from Klein attempting to describe such non-infringing uses.  (Dkt. #117 at 13:7-8.)   Indeed, the Safti-Strip and Safti-Frame products are critical components for the wall assemblies, which serve to prevent the spread of smoke and fire. This allows the products to be fire-safe in accordance with the UL Listings and Certifications.

15
16

Plaintiffs have suffered damages as a result of Defendants contributory infringement of the Asserted Patents.

17

**D.    Damages**

18

1.    ClarkDietrich and CEMCO are Entitled to Lost Profits

19
20
21
22
23

A patentee (or in the present case, an exclusive licensee) is entitled to profits it has lost as a result of patent infringement if he can show that, but for the infringement, he would have made the sales made by the accused infringer. *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1543 (Fed. Cir. 1987). "[T]he availability of lost profits is a question of law for the court, not the jury." *Wechsler v. Macke Int'l Trade, Inc.,* 486 F.3d 1286, 1293 (Fed. Cir. 2007).

24
25
26
27

"To prove lost profits from lost sales, the patent owner bears the initial burden to show a reasonable probability that 'but for' the infringement, he would have made the sales. Once this reasonable probability is shown, the burden shifts to the infringer to show that the 'but for' causation analysis is unreasonable under the specific circumstances." *Amer. Seating Co. v. USSC*

28

TROJAN LAW OFFICES
BEVERLY HILLS

1  *Grp.,* 514 F.3d 1262, 1269 (Fed. Cir. 2008). "Although the parties must support their positions

2  with sound economic proof, absolute certainty is not required, for reconstruction of the 'but for'

3  market is 'by definition a hypothetical enterprise' based on the evidence introduced at trial."

4  *Fiskars, Inc. v. Hunt Mfg.,* 279 F.3d 1378, 1383 (Fed. Cir. 2002).

5      "To obtain as damages the profits on sales he would have made absent the infringement,

6  *i.e.,* the sales made by the infringer, a patent owner must prove (1) demand for the patented

7  product, (2) absence of acceptable non-infringing substitutes, (3) his manufacturing and

8  marketing capability to exploit the demand, and (4) the amount of the profit he would have

9  made." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978).

10          a.   There was Demand for the Patented Products

11      As shown below, ClarkDietrich's increasing sales of the patented BlazeFrame products

12  each year during the relevant time frame of 2016 through 2018 show strong demand for the

13  patented products. While ClarkDietrich's sales dropped in 2019, that is directly attributed to

14  SaftiSeal's increasing presence in the market, where its sales more than doubled from 2018 to

15  2019.



Revenue Of ClarkDietrich's BlazeFrame Products And Safti-Seal's Accused Products

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18-cv-00659-JLR

-23-

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

1   The Federal Circuit considers "a substantial number of sales" of infringing products containing

2   the patented features to be, itself, "compelling evidence" of the demand for the patented product.

3   *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 552 (Fed. Cir. 1984). In addition to

4   SaftiSeal's "substantial" and increasing sales of the infringing products, its own expert Daniel

5   Lindsay agrees that there is demand for the patented products. In light of the significant sales of

6   patented products by both ClarkDietrich and SaftiSeal, there is no question that there is demand

7   for the patented products. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314,

8   1330 (Fed. Cir. 2009).

9                    b.   There is an Absence of Acceptable Non-infringing Substitutes

10          To be an acceptable, non-infringing substitute, a product must have the advantages of the

11   patented invention that were important to people who purchased an alleged infringer's product."

12   *Am. Seating Co. v. USSC Grp,* 514 F.3d 1262, 1270 (Fed. Cir. 2008). The correct inquiry is whether

13   a non-infringing alternative would be acceptable compared to ClarkDietrich's patented BlazeFrame

14   product, not whether it is a substitute for the infringing SaftiSeal product. *Presidio Components,*

15   *Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017). The 'but for' inquiry

16   therefore requires a reconstruction of the market, as it would have developed absent the infringing

17   product, to determine what sales ClarkDietrich would have made. *Id.*

18

19          A primary benefit of the patented products is that it does not require an additional

20   construction step to apply the fire-stopping intumescent material and that material is applied in a

21   controlled dosage. The only products that provide such benefits are the BlazeFrame products, the

     SaftiSeal products, and the FasTrack products. Although one could argue that the SaftiStrip, which

22   can be field-applied after the track has been installed, does not provide this step-saving benefit.

23   However, it is marketed as an intumescent track product and its UL approvals permit both factory

24   application and field application (before or after track installation) of the intumescent strip. Thus,

25   the only acceptable non-infringing alternatives to the patented product are the FasTrack products,

26   which themselves are patented. The only, unrebutted evidence is that the FasTrack products have

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

about 11% of the market. As such, if SaftiSeal had never be in the market, ClarkDietrich would have made about 89% of the sales of intumescent track products.

The substitutability of SaftiSeal for BlazeFrame is evident from SaftiSeal's own marketing and customer communications. When SaftiSeal first began, it trumpeted its new SaftiSeal products as a product that can "replace old BlazeFrame." SaftiFrame and SaftiStrip were positioned as a new version of BlazeFrame.

ClarkDietrich has provided evidence of specific jobs for which it quoted BlazeFrame for fire-proof wall assemblies, only to lose the jobs to SaftiSeal. Two large customers of ClarkDietrich have not requested a quotation for BlazeFrame for some time, even though they continue to buy other products from ClarkDietrich. One of these customers has told ClarkDietrich that it only purchases SaftiStrip for its passive-fireproofing. In 2019, ClarkDietrich's sales of BlazeFrame products fell for the first time in years, even as SaftiSeal products sales increase.

ClarkDietrich sold its BlazeFrame product only for incorporation into patented wall assemblies. It is more likely than not that the SaftiSeal products are similarly going into such patented wall assemblies. Plaintiffs are unable to identify the type of project for each SaftiSeal sale because Klein and SaftiSeal claim not to keep such records. Any doubts that arise because of the inadequacy of Klein's or SaftiSeal's records should be resolved against Defendants and not Plaintiffs. *Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1572-73 (Fed. Cir. 1996).

SaftiSeal may argue that the secondary field-applied products are also suitable alternatives to the patented products. As an initial matter, all but two of these products (the Hilti and STI products) are covered by patents owned by plaintiff CEMCO. And the STI patent is covered by STI's patent. Thus, none of those products are "non-infringing", freely available substitutes. In addition, none of these products offer the benefits of the patented products. In particular, they each necessitate an additional post-track installation step of inserting a secondarily applied fire-proofing product.

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18-cv-00659-JLR

-25-

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

SaftiSeal also may argue that because its products meet the requirements of the so-called version 5 of the UL fireproofing test with no additional materials required, ClarkDietrich's BlazeFrame products cannot compete with the SaftiSeal product. However, that is the wrong analysis. The proper question is how would the market have developed *absent* the introduction of the accused product. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017). First, it is unclear whether version 5 is even applicable because the current international building code applies only version 4, or whether it has become an issue only because Klein and SaftiSeal have chosen to emphasize it for marketing purposes. Second, the BlazeFrame products comply with version 5 with the addition of either a generic backer rod or ClarkDietrich's perimeter L-bead product. In either case, neither product interferes with the benefits of the patented products. Either piece is applied at the same time as the finishing of the wallboard, without the need for an additional installation step or hiring of specialty tradesman, as is true with the traditional caulk or mineral wool. Thus, absent SaftiSeal's infringement, the market would have either continued using UL version 4, or accepted ClarkDietrich's modified product. Either way, the industry would have continued buying BlazeFrame products.

c. ClarkDietrich has the Necessary Marketing and Manufacturing Capacity

ClarkDietrich has a nationwide marketing organization that focuses on increasing the opportunities for, among other products, the BlazeFrame products. As shown by its hundreds of educational programs for architects and contractors, and its success as quantified by the thousands of job specifications exemplified in the Dodge Report, if SaftiSeal had not been in the market, ClarkDietrich's marketing organization could turn opportunities into sales. In fact, ClarkDietrich's marketing successes have more likely made SaftiSeal's sales efforts easier – ClarkDietrich has promoted acceptance of intumescent track products and SaftiSeal has capitalized on that growing acceptance. Thus, ClarkDietrich has the marketing capacity to make all sales that SaftiSeal made.

ClarkDietrich's manufacturing capacity has easily kept pace with its growing BlazeFrame sales. Because it has manufacturing of the patented BlazeFrame products spread across 14 facilities

-26-

TROJAN LAW OFFICES
BEVERLY HILLS

throughout the United States, it could easily have increased it output of products without incurring additional expense (other than the cost of the raw materials for the products themselves). Thus, ClarkDietrich easily has the manufacturing capacity to make all sales that SaftiSeal made.

d.   ClarkDietrich's Lost Profits are Quantifiable

ClarkDietrich's expert has calculated its lost profits by determining the revenue ClarkDietrich makes per foot of BlazeFrame product sold and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales. *Paper Converting Mach. Co. v. Magna-Graphics Corp.,* 745 F.2d 11 (Fed. Cir. 1984). She then applied that revenue to 89% of SaftiSeal's sales (ClarkDietrich's lost sales resulting from the SaftiFrame and SaftiStrip sales), taking into account that some of the SaftiStrip product is used on a product with intumescent applied to only one side of the track and some is used on a product with intumescent applied to both sides of the track. She then calculated CEMCO's lost profits based on its lost royalty revenues from ClarkDietrich. The result is that ClarkDietrich has lost profits of ████████ dollars and CEMCO has lost profits of ████████ dollars. For the 11% of SaftiSeal sales for which the Plaintiffs are not seeking lost profits, ClarkDietrich is also entitled to ████ and CEMCO is also entitled to ████ in reasonable royalties (both calculated at ██ /foot of SaftiSeal product). *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577 (Fed. Cir. 1989)(stating that "the award may be split between lost profits as actual damages to the extent they are proven and a reasonable royalty for the remainder.").

2.   Alternatively, ClarkDietrich and CEMCO are Entitled to a Reasonable Royalty

A patentee is entitled to no less than a reasonably royalty. 35 U.S.C. §284. A reasonable royalty is often determined by positing a hypothetical negotiation between a willing licensor of the patent and a willing licensee. *Panduit Corp.,* at 1158-59. "The willing licensee/licensor approach must be flexibly applied as a 'device in the aid of justice.'" *TWM Mfg. v. Dura Corp.,* 789 F.2d 895, 900 (Fed. Cir. 1986). In determining this hypothetically negotiated royalty, courts typically

TROJAN LAW OFFICES
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

look at the relevant circumstances, as captured by what are known as the 15 *Georgia Pacific* factors. *Georgia Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116 (S.D.N.Y.), *modified by* 446 F.2d 295 (2nd Cir. 1971). Neither the patentee's nor the infringer's net profit margin is a ceiling on a reasonable royalty. *Powell v. Home Depot U.S.A., Inc.,* 663 F.3d 1221, 1238-39 (Fed. Cir. 2011).

In the present case, in any hypothetical negotiation, ClarkDietrich would necessarily have to give up its exclusivity in the patented products. It would also want to protect the sizeable investment it has made in the BlazeFrame product line. Finally, it would seek to maintain its preferred product form of factory-assembled intumescent track products sold through channels of distribution. To do so, it would need to discourage sales of SaftiStrip and encourage sales of only SaftiFrame products, and it would seek to minimize the pricing advantage Klein and SaftiSeal enjoy by selling directly to contractors rather than through distributors. Thus, the parties to the hypothetical negotiation would negotiate a royalty rate that would meet these needs of ClarkDietrich and CEMCO, and reduce SaftiSeal's pricing advantages, while still leaving SaftiSeal with some pricing advantage. The resulting reasonable royalty, as explained in greater detail by Plaintiffs' damages expert is ███/ft of SaftiSeal product sold. Thus, if ClarkDietrich and CEMCO are not awarded lost profits as explained above, then ClarkDietrich is entitled to ███ in reasonable royalties and CEMCO is entitled to ███ in reasonable royalty damages.

## E.    Willful Patent Infringement

Plaintiffs will prove that Defendants Klein and Safti-Seal's conduct was willful, and thus enhanced damages will be proper to deter future infringement of the Asserted Patents by Defendants.

To show that the Patent Infringement was willful, Plaintiffs must first show "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, without regard to the state of mind of the accused infringer." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1930 (2016) (internal

1
2
3
4

quotations omitted). Then Plaintiffs must show, "again by clear and convincing evidence—that the risk of infringement was either known or so obvious that it should have been known to the accused infringer." *Id.* If both steps are satisfied, then the District Court can exercise its discretion to award enhanced damages. *Id.*

5
6
7
8
9
10
11
12
13
14
15
16
17
18

Here, Defendants clearly made and sold their Safti-Strip and Safti-Frame products despite an objectively high likelihood that they infringed the Asserted Patents. The risk of infringement was objectively high before the litigation began, and has only increased as the litigation progressed. Specifically, the Court's Claim Construction Order significantly raised the risk of infringement based upon the construction of "intumescent strip" and "affixed . . . on," yet Defendants' dug in their heels and continued promoting and selling the Accused Products. In fact, sales of the Accused Products have increased significantly in 2019. Then, the risk of infringement grew more after the Summary Judgment Order specifically ruling that the claimed term "intumescent strip" read onto the Safti-Strip product. Yet, Defendants continue to make and sell the products which are objectively very likely to infringe the Asserted Patents after *two* Court orders. If Defendants did not willfully infringe the patents after April 17, then they certainly infringed after the Court's summary judgment order dated August 14.

19
20
21
22
23
24
25

Additionally, the risk of infringement was so obvious or should have been so obvious to Defendants, and specifically Klein, as he was the inventor of the Asserted Patents and knew his simple addition of a "thermal barrier" constituted an obvious risk of infringement. This should have become even more obvious in light of the Claim Construction Order and Summary Judgment Order for the reasons stated above. Yet, Defendants continue promoting and selling the Accused Products in light of these facts.

26
27

Therefore, Plaintiffs should be awarded enhanced damages by the Court due to this willful infringement.

28

TROJAN LAW OFFICES
BEVERLY HILLS

**F.      Exceptional Case Standard**

Plaintiffs will prove that this is an exceptional case of Patent Infringement, and thus Plaintiffs' attorneys' fees should be paid by Defendants.

As stated by the Supreme Court, "an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

Here, it is important to consider this case should have been settled or disposed of after the Claim Construction Order, and definitely after the Summary Judgment Order essentially ruled that Defendants' Safti-Strip and Safti-Frame products read directly onto the only disputed terms of the Asserted Patents (i.e. "intumescent strip" and "affixed . . . on").  This places Plaintiffs' position at trial significantly stronger than that of Defendants.  Defendants have even attempted to make, in the Court's words, a "nonsensical and disingenuous" interpretation of the Summary Judgment Order, arguing that the Court granted Defendants' Motion for Summary Judgment on literal infringement, thereby doing away with each and every claim of literal infringement.[3]

Instead of analyzing the strengths and weaknesses of their litigation positions in light of the Court's orders, Defendants have needlessly caused Plaintiffs additional attorneys' fees responding to frivolous arguments, and filing motions to clarify their misguided interpretations of the Court's clear orders.  For example, Defendants' arguments were rejected on numerous occasions, including the Defendant's invalidity arguments (regarding patents Klein and BlazeFrame Ind. previously owned)  and  inequitable  conduct  before  the  United  States  Patent  and  Trademark  Office  in

---

[3] *See* Dkt. #134: Order on Plaintiffs' Motion for Clarification

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

prosecuting his own patents.  The Court struck these affirmative defenses under assignor estoppel theories.  (Dkt. #91.)

Lastly, the context of this *third* litigation involving these parties is critical.  Defendants have made it clear that they will go to great lengths to impermissibly practice the very patents they sold to CEMCO.  Based on the foregoing, Plaintiffs should be awarded attorneys' fees as this case is exceptional under the exceptional case standard set forth in *Octane Fitness*.

## IV.   Defendants' Affirmative Defenses

In the Pretrial Order, Defendants outline five "affirmative defenses."  Specifically, Defendants claim (1) no direct infringement, (2) no contributory infringement, (3) no induced infringement, (4) failure to join, and (5) failure of causation.

**A.   Direct, Contributory, and Induced Infringement Affirmative Defenses are Improper**

As an initial matter, these are improper affirmative defenses because Plaintiffs carry the burden of proving infringement.  Regardless, Plaintiffs' positions regarding these issues are set forth above.

**B.   Failure to Join Affirmative Defense Is Not Supported by Facts**

Defendants contend that Plaintiffs' claims are barred because the damages caused were the result of actions or non-actions of other parties not named in this lawsuit.  However, Defendants fail to point to any specific facts supporting this affirmative defense, and fail to mention any other party which may have caused Plaintiffs' damages.  Therefore, Defendants will be unsuccessful on their defense of failure to join.

**C.   Failure of Causation Affirmative Defense Is Not Supported by Facts**

Defendants contend that Plaintiffs are not entitled to damages because Plaintiffs' own conduct proximately caused their damages.  However, as with their failure to join defense, Defendants fail to point to any specific evidence that Plaintiffs have somehow caused their own

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18-cv-00659-JLR

-31-

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3

patent infringement and breach of contract damages.  Instead, Defendants rely upon their boilerplate language in their Amended Answer without providing additional facts or circumstances as to why they believe Plaintiffs proximately caused their own damages.

4

Therefore, Defendants will be unsuccessful in their defense of failure of causation.

5

## V.    Conclusion and Relief Requested

6
7
8
9
10
11
12
13
14
15

Throughout the litigious history of these Parties, Defendants, and specifically Klein, has sought to practice the very Asserted Patents he sold.  After the first dispute, Plaintiffs attempted to allow Klein to still practice his patents in a reasonably large territory.  However, he chose to ignore the settlement and breached its terms by selling outside his designated territory.  Then, Defendants and Klein agreed to leave the marketplace and to stop making and selling the patented products, an agreement he again ignored by adding  a "thermal barrier" to his prior products and selling it under a different name.  Based on the foregoing, Defendants must be held liable for their patent infringement and breach of contract.

16
17
18
19

Respectfully submitted,

TROJAN LAW OFFICES

by

20

December 2, 2019

/s/ R. Joseph Trojan
R. Joseph Trojan *(pro hac vice)*

21
22
23

9250 Wilshire Blvd.
Beverly Hills, CA
Attorney for Plaintiff,
CALIFORNIA EXPANDED METAL PRODUCTS
COMPANY

24
25

December 2, 2019

/s/ Brian G. Bodine
Brian G. Bodine (WSBA No. 22414)

26
27
28

LANE POWELL PC
1420 Fifth Avenue, Suite 4200
Seattle, WA 98111
Telephone: 206-223-7000
Attorney for Plaintiff,

PLAINTIFFS' TRIAL BRIEF
CASE No. 2:18–cv–00659–JLR

-32-

**TROJAN LAW OFFICES**
9250 WILSHIRE BLVD , STE 325
BEVERLY HILLS, CA 90212
310 777 8399  FAX: 310 777 8348

1

CALIFORNIA EXPANDED METAL PRODUCTS
COMPANY

2

December 2, 2019                                 /s/ Ann G. Schoen

3                                                Ann G. Schoen *(pro hac vice)*
                                                 FROST BROWN TODD LLC

4                                                301 East Fourth Street, Suite 3300
                                                 Cincinnati, OH 45202

5                                                Telephone: 513-651-6128

6                                                Attorney for Plaintiff,
                                                 CLARKWESTERN DIETRICH BUILDING

7                                                SYSTEMS LLC

8

9       December 2, 2019                         /s/ Robert J. Carlson
                                                 Robert J. Carlson (WSBA No. 18455)

10                                               LEE & HAYES PLLC
                                                 701 Pike Street, Suite 1600

11                                               Seattle, WA 98101
                                                 Telephone: 206-876-6029

12                                               Attorney for Plaintiff,
                                                 CLARKWESTERN DIETRICH BUILDING

13                                               SYSTEMS LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

1

**CERTIFICATE OF SERVICE**

2

3

I hereby certify that on the 2nd day of December 2019, I caused to have electronically

filed the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the following:

5

6

tjl@elamburke.com

7

thomas@seattlepatentlaw.com
pbageant@hollystonelaw.com

8

9

10

TROJAN LAW OFFICES

11

by

12

/s/ R. Joseph Trojan

13

R. Joseph Trojan *(pro hac vice)*
9250 Wilshire Blvd.

14

Beverly Hills, CA
Attorney for Plaintiff,

15

CALIFORNIA EXPANDED
METAL PRODUCTS COMPANY

16

17

18

19

20

21

22

23

24

25

26

27

28