UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CALIFORNIA EXPANDED METAL PRODUCTS COMPANY, a California corporation; and CLARKWESTERN DIETRICH BUILDING SYSTEMS LLC, dba CLARKDIETRICH BUILDING SYSTEMS, an Ohio limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES A. KLEIN, an individual; BLAZEFRAME INDUSTRIES, LTD., a Washington company; and SAFTI-SEAL, INC., a Washington company, <br><br> Defendants. | Case No. 18-cv-00659-JLR <br><br> **REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR CONTEMPT** <br><br> **(PROVISIONALLY FILED UNDER SEAL)** |

I. INTRODUCTION

THIS MATTER is before the Special Master on Plaintiffs', California Expanded Metal Company ("CEMCO") and Clarkwestern Dietrich Building Systems, LLC ("ClarkDietrich") (collectively, "Plaintiffs"), Motion for Contempt. Plaintiffs moved to reopen this case for patent infringement and breach of contract on June 22, 2020 (Dkt. No. 166), alleging violation by Defendants and several non-parties of a permanent injunction entered by consent on January 3, 2020 (Dkt. No. 164).

Defendants are James A. Klein ("Klein"), BlazeFrame Industries, Ltd.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

("BlazeFrame"), and Safti-Seal, Inc. ("Safti-Seal"). BlazeFrame and Safti-Seal were founded by defendant Klein; both are now "defunct." (Decl. of James Klein, signed 10/11/21 ("Klein Decl."), ¶2.) Plaintiffs' motion to reopen the case alleged contempt by all defendants and non-parties Seal4Safti, Inc. ("S4S"), SteelTec Supply, Inc. ("SteelTec"), Jaroslaw Sydry ("Sydry"), and Leszek Orszulak ("Orszulak") and sought discovery related to the allegations of contempt. (Dkt. Nos. 166 and 167.)

On October 5, 2020, the court granted Plaintiffs' motions in-part. (Dkt. No. 190.) The case was reopened for the initiation of contempt proceedings and discovery against Defendants. (*Id.*) Plaintiffs were also permitted to conduct additional discovery as to the non-parties as well as an opportunity to file a renewed motion to initiate contempt proceedings against the non-parties following discovery. (*Id.*)

On February 8, 2021, the undersigned Special Master was appointed pursuant to Fed. R. of Civ. P. 53 "to assist with the impending contempt proceedings and any related discovery issues that may arise." (Dkt. No. 208.) Following discovery, Plaintiffs renewed their motion to add the non-parties to these contempt proceedings and the Special Master recommended that the court grant the motion in-part to add S4S, finding S4S "legally identified" with defendant Safti-Seal. (Dkt. No. 220 (filed under seal).) Following objections filed by both parties, the court adopted the recommendation and added S4S to these contempt proceedings. (Dkt. No. 251.) Plaintiffs' motion for contempt was fully briefed by October 15, 2021, and hearing was held on November 30, 2021.[1]

---

[1] No party to these contempt proceedings has requested an evidentiary hearing on Plaintiffs' motion for contempt.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

NOW, THEREFORE, being fully advised of the matter, the Special Master hereby makes the following report and recommendation pursuant to Fed. R. of Civ. P. 53. For the reasons explained below, the Special Master recommends that Plaintiff's Motion for Contempt be GRANTED IN-PART and DENIED IN-PART. The Special Master recommends an order finding S4S and Defendant Klein in contempt for inducing infringement in violation of the agreed injunction through sales of the FRG Strip, which the undersigned finds no more than colorably different from the enjoined Safti-Strip product when applied to the outer surface of the sidewall of a U-shaped track. The recommended finding of contempt by inducement is based on S4S's and Klein's advertising, promotion, instructions, and engineering judgments, recommending use of the FRG Strip by placing it on the outer surface of the sidewall of a U-Shaped track.

Insofar as Plaintiffs' motion for contempt requests a finding of contempt based on direct infringement by Defendants and S4S, the motion is denied for a failure of proof by clear and convincing evidence that Defendants or S4S sold or offered for sale U-Shaped track products with the FRG Strip applied in an infringing manner. Additionally, Plaintiffs' motion alleging contributory infringement is also denied for a failure of proof by clear and convincing evidence that the FRG Strip sold in roll form, or the sale of U-shaped track products sold without the FRG Strip applied at the factory, are incapable of substantial noninfringing use.

## II.    FACTS

### A.    Procedural History

This case involves claims for infringement of U.S. Patent Nos. 7,681,365 ("the '365 patent"), 7,814,718 ("the '718 patent"), 8,136,314 ("the '314 patent"), and 8,151,526 ("the

Report and Recommendation - 3
CASE NO. 18-cv-00659

'526 patent") (collectively, "the Asserted Patents") and breach of contract. The Asserted Patents relate to head-of-wall assemblies that are used in commercial construction to prevent the spread of smoke and fire. (Dkt. No. 190, 5-6.)

In May 2012, Mr. Klein assigned the Asserted Patents to BlazeFrame. (*Id.*, 3 (citations omitted).) In 2012, CEMCO sued Mr. Klein and Clarkwestern in the Central District of California. *See Cal. Expanded Metal Prods. Co. v. Clarkwestern Dietrich Bldg. Sys.*, LLC, No. CV12-10791-DDP-MRW (C.D. Cal.). The parties settled in October 2015, with Mr. Klein and BlazeFrame selling the Asserted Patents to CEMCO in exchange for a license. (Dkt. No. 103, ¶7, Ex. 6.)

In August 2016, a second suit was filed against Klein and BlazeFrame, claiming breach of the settlement agreement and infringement of the Asserted Patents. *See Cal. Expanded Metal Prods. Co. v. Klein*, No. CV16-5968-DDP-MRW (C.D. Cal.). That suit settled in June 2017 and CEMCO remained the owner of the Asserted Patents with ClarkDietrich as the Asserted Patents' exclusive licensee. (Dkt. No. 1, ¶84.)

On January 10, 2018, Klein, Safti-Seal, and Blazeframe were sued in a case eventually transferred to this court. (Dkt. No. 1.) This case is the third involving the Asserted Patents and Mr. Klein. It was terminated on January 3, 2020, pursuant to a stipulated consent judgment and permanent injunction. (Dkt. No. 164.) The parties also consented to this court's continuing jurisdiction for purposes of enforcing the consent judgment and injunction. (*Id.*, 3.)

Under the terms of the injunction, effective April 1, 2020, Defendants and "such other persons who are in active concert or participation or in privity" with any defendant were enjoined from "infringing the Asserted Patents, by any means, directly or indirectly,

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

by making, having made, advertising, having advertised, marketing, having marketed, offering for sale, having offered for sale, selling or having offered for sale, any Accused Product." (*Id*, ¶1(a).) The enjoined parties are similarly prohibited from inducing others to "make, have made, advertise, have advertised, market, have marketed, offer for sale, have offered for sale, [or] . . . sell any Accused Products." (*Id*, ¶1(b).) Finally, the enjoined parties are prohibited from "contributorily infringing the Asserted Patents by providing Accused Products to others or by assisting third parties in providing Accused Products to others." (*Id*, ¶1(c).)

The Accused Products were defined as "(i) Safti-Frame with an intumescent strip on the surface of a sidewall of a U-shaped track, and (ii) Safti-Strip if applied to the outer surface of a sidewall of a U-shaped track." (*Id.*, 2.) The injunction was originally filed under seal by agreement and later unsealed on October 5, 2020. (Dkt. No.189.)

### B.    Plaintiffs' Allegations of Contempt

Plaintiffs assert that Klein, Safti-Seal, and S4S violated the injunction by making and selling "Fire Rated Gasket (FRG) products" that are no more than colorably different from the enjoined Safti-Strip and Safti-Frame products. (Motion, 1.) Plaintiffs use the term "FRG Strip" to refer to the FRG intumescent strip, which they allege is no more than colorably different from the enjoined "Safti-Strip." (*Id.*, n1.) Plaintiffs use the term "FRG Frame" to refer to metal tracks that have "factory applied" FRG Strip, which they allege is no more than colorably different from the enjoined "Safti-Frame." (*Id.*) While this is the terminology used in Plaintiffs' motion relating to claims of direct infringement against Klein, Safti-Seal, and S4S, Plaintiffs also allege inducement under 35 U.S.C. § 271(b) and contributory infringement under § 271(c) against these parties for their making and selling

LOWE GRAHAM JONES ᴾˡˡᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

of the FRG Strip and FRG Frame without the FRG Strip applied to the FRG Frame at the factory. (Motion, 32-50.)

Prior to entry of the injunction, defendant Safti-Seal sold Safti-Strip in a roll form "consisting of three primary layers," (1) an intumescent layer, (2) a foam thermal barrier, and (3) an adhesive. (Decl. of Jaroslaw Sydry in Support of Contempt Opp. ("Sydry Decl."), ¶3; Motion, 4, 20.) Safti-Strip was marketed by Safti-Seal from 2017 until the end of March 2020. (Sydry Decl., ¶3.) Prior to the injunction, Safti-Seal sold "a variety of common and custom metal track profiles" with Safti-Strip "factory applied" to them. (*Id.*; Motion, 4.)

Plaintiffs' allegations of contempt target the FRG Strip sold in roll form as applied in the field according to advertisements, instructions, and engineering judgments provided by S4S and according to specifications published by Underwriters Laboratories ("UL")[2] that were prepared, at least in-part, by Defendant Klein. (Motion, 9-14.) Plaintiffs also allege that S4S violated the injunction by selling a variety of metal track profiles with FRG Strip applied at the factory. (*Id.*, 12.) S4S admits that it made and sold the FRG Strip in roll form and continues to do so, but it denies that "Plaintiffs have . . . shown that FRG [Strip] was ever factory-applied by S4S to an actual 'U-shaped track.'" (S4S Resp. in Opp. to Motion, 34.) S4S also contends that "[w]hile S4S's product catalogue . . . features FRG [Strip] factory-applied to track, S4S has sold very few orders of FRG factory-applied to track" and that "[t]he vast majority of S4S customers purchase FRG in roll form." (*Id.*, 4 n.2.) Additionally, Mr. Sydry of S4S contends that once he learned of the injunction in

---

[2] UL is a standards-setting organization that develops safety standards for building materials, and it evaluates and issues certifications, or listings, for products that it deems to have met that standard. (See 5/13/21 Trojan Decl. ¶13, Ex. 12 ("UL Report").)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

October 2020, "in an abundance of caution," he and S4S co-owner Leszek Orszulak "made sure that S4S did not sell any FRG applied to U-shaped track." (Sydry Decl., ¶6.)

## III.    ANALYSIS

### A.    Applicable Legal Standard

The Federal Circuit has expressly held that the "criteria for adjudicating a violation of a prohibition against continued infringement by a party whose products have already been adjudged to be infringing is a matter of Federal Circuit law." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881 (Fed. Cir. 2011). Violating an injunction in a patent case harms the patent owner and is "an affront to the court for failure to obey its order." *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1524 (Fed. Cir. 1985), *overruled on other grounds by TiVo Inc.*, 646 F.3d 869. A party who violates an injunction that prohibits patent infringement may be held in civil contempt. *See, e.g.*, *TiVo Inc.*, 646 F.3d at 879-83 (outlining the appropriate standard for civil contempt proceedings based on allegations that a party has infringed a patent in violation of an injunction). "Contempt proceedings are generally summary in nature and may be decided by the court on affidavits and exhibits without the formalities of a full trial." *KSM Fastening Sys., Inc.*, 776 F.2d at 1524 (citations omitted).

A determination whether a new or modified device violates a permanent injunction against patent infringement must follow the two-step test outlined by *Tivo*. *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370 (Fed. Cir. 2014). According to that test, a party seeking to enforce an injunction must first show that "the newly accused product is not more than colorably different from the product found to infringe." *Tivo*, 646 F.3d at 882. This "colorably different" analysis "should focus on 'those aspects of the accused

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product.'" *Proveris*, 739 F.3d at 1370 (quoting *Tivo*, 646 F.3d at 882). Notably, after *Tivo*, the Federal Circuit rejects an "infringement-based understanding of the colorably different test" and instead focuses on "the differences between the features relied upon to establish infringement and the modified features of the newly accused products." *Tivo*, 646 F.3d at 882. "The primary question on contempt should be whether the newly accused product is so different from the product previously found to infringe that it raises 'a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Id.* (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S. Ct. 618, 28 L. Ed. 1106, 1885 Dec. Comm'r Pat. 295 (1885)).

In determining whether significant differences exist between the two products, "much is dependent on the nature of the products at issue" and the court may consider whether "the modification merely employs or combines elements already known in the prior art in a manner that would have been obvious to a person of ordinary skill in the art at the time the modification was made." *Id*. "[A] district court may seek expert testimony in making the determination" and "[t]he analysis may also take account of the policy that legitimate design-around efforts should always be encouraged as a path to spur further innovation." *Id.* at 883.

Accordingly, modifications deemed "significant" by the court when compared to those aspects of the device previously adjudged to infringe, render the modified device more than colorably different, "and contempt is not the appropriate remedy." *Proveris*, 739 F.3d at 1372. "Instead, a new infringement action must be brought regarding the newly accused product." *Id*. If, however, the court concludes that the modifications are "insignificant," i.e.,

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

not more than colorably different from those aspects supporting the prior finding of infringement, the court must then go on to the second step and determine whether the newly accused product in fact infringes the relevant claims. *Tivo*, 646 F.3d at 883.

Under *Tivo*'s second step, the court must still "evaluate the modified elements of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met" and "out of fairness, the district court is bound by any prior claim construction that it had performed in the case." *Id.* (citing *KSM Fastening Sys., Inc.*, 776 F.2d at 1528).

### B.     Whether *Tivo* Applies to This Case

As a preliminary matter, S4S argues that the *Tivo* standard is not the correct standard to apply in this case because the injunction followed "an agreed settlement that does not specify which elements of the accused products violate the asserted claims." (S4S Resp. in Opp. to Motion, 27). The undersigned disagrees. The case cited by S4S, *Heckmann Bldg. Prod. Inc. v. Hohmann & Barnard, Inc.*, 866 F. Supp. 2d 965 (N.D. Ill. 2012), merely stands for the proposition that *Tivo*'s two-part test for contempt should not apply where "[t]he case at bar does not involve a case of adjudged patent infringement, an entry of a preliminary injunction, *or a case of agreed patent infringement*." *Id.* at 973 (emphasis added). In *Heckmann*, the consent decree at issue "expressly provide[d] that it was entered 'without any adjudication of any issue of fact or law,'" rendering Tivo's "colorable difference" standard inapplicable. *Id.* (quoting from the injunction). In this case, by contrast, the parties substantially litigated the matter through claim construction and a summary judgment decision. (Dkt. Nos. 98 (claim construction order) and 117 (summary judgment order finding in-part that the accused Safti-Strip product satisfied the "intumescent strip"

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

limitation of the asserted claims).) As S4S recognizes, this case only settled "on the eve of trial" and after substantial issues relating to infringement had been determined. (S4S Resp. in Opp. to Motion, 2.) Additionally, the Federal Circuit instructs that *Tivo*'s two-part test must be applied, even in cases involving injunctions terminating infringement cases by settlement or consent. *See Proveris*,739 F.3d at 1370 (applying the *Tivo* standard to an injunction entered by consent).

## C. Scope of the Injunction

By its terms, the injunction only applies to continued acts of direct and indirect infringement involving a "U-shaped track." (Dkt. No. 164.) Each act prohibited by the injunction is limited to the "Accused Products," a term defined to mean "(1) Safti-Frame with an intumescent strip on the surface of a sidewall *of a U-shaped track*, and (2) Safti-Strip *if applied to the outer surface of a sidewall of a U-shaped track.*" (*Id.*, 2 (emphasis added).) The acts prohibited by the agreed injunction are therefore narrower than what Plaintiffs might have achieved at trial had they refused settlement and prevailed on all claims of the Asserted Patents. For example, claim 1 of the '314 Patent is not limited to any specific track profile. (Trojan Decl., Ex. 3.) Neither is claim 1 of the '365 Patent, nor claim 1 of the '526 Patent, nor claim 1 of the '718 Patent. (*Id.*, Exs., 1-2, 4.)

Plaintiffs take a broader view of the injunction, asserting contempt based on "[e]ach FRG Frame product." (*See* Motion. 28. *See also* Reply, 3 (arguing based on allegations made in Plaintiffs' trial brief (Dkt. No. 134) that Defendants knew they were "admitting to infringing . . . all claims" of all four Asserted Patents and that Plaintiffs had asserted infringement against "J-runner track profiles").) This broad view relies on an interpretation of the phrase "U-shaped track" to mean any "metal track designed to receive a stud." (Pilz

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Decl., ¶52.) No support is provided for this interpretation, such as evidence indicating this was how the parties understood the phrase "U-shaped track" at the time the injunction was agreed and entered. Nor does this interpretation appear supported by the Asserted Patents, which discuss the existence of "many cross-sectional shapes" and that the "primary" one is "U-shaped." (Trojan Decl., Ex. 2 ('718 Patent) at Col. 1:33-35; *see also* Hearing Rough Draft, 55:23-25 (reading from the '365 Patent at Col. 1:45-46 and confirming that "U-shaped" refers to the most common track profile but not every single track profile).)

No party offers argument concerning how the court should interpret the injunction's limitation to products involving a "U-shaped track." For its part, S4S contends that the injunction is unenforceable as vague because it failed to define what the parties intended by the phrase "U-shaped-track," among other reasons. (S4S Opp. in Resp. to Motion, 9-13.) The undersigned disagrees that the injunction is unenforceable as vague for reasons explained *infra* at §III.D. In short, the agreed injunction may be interpreted in view of evidence indicating what the parties meant by its terms. And "'the mere fact that . . . interpretation is necessary does not render the injunction so vague and ambiguous that a party cannot know what is expected of him.'" *Scardelletti v. Rinckwitz*, No. 02-1013, 2003 U.S. App. LEXIS 13500, 68 F. App'x 472, 479 (4th Cir. July 3, 2003) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) (internal quotations omitted)).

A consent order is a compromise "in which the parties give up something they might have won in litigation" and for that reason it "must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236, 95 S. Ct. 926, 934,

LOWE GRAHAM JONES ᴘʟʟᴄ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

43 L.Ed.2d 148, 161 (1975) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681-682, 91 S. Ct. 1752, 29 L.Ed.2d 256 (1971)) (internal quotation marks omitted). Thus, consent orders must be interpreted as contracts. *uPI Semiconductor Corp. v. ITC*, 767 F.3d 1372, 1377 (Fed. Cir. 2014). As with the interpretation of any contract, the court must consider the term at issue within "the four corners" of the order, aided by facts including "the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." *ITT Cont'l Baking*, 420 U.S. at 238.

Evidence regarding how the parties used the term "U-shaped track" in their marketing materials provides good evidence of what they meant by that same term in the consent injunction. *Teg-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("Even when a contract is unambiguous, it may be appropriate to turn to one common form of extrinsic evidence—evidence of trade practice and custom."). Klein cites marketing materials from CEMCO showing the term "U-shaped" used to define a specific track profile having three sides, (1) a top or bottom side, (2) a first leg extending from the top or bottom side at one end, and (3) a second leg extending from the top or bottom side at the other end. (Klein Decl., Ex. B.)

LOWE GRAHAM JONES ℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301



(*Id.*, 1.) At the oral hearing held on November 30, 2021, counsel for CEMCO confirmed that "U-shaped" is a "a term of art used in the industry" to describe a specific track profile. (Hearing Rough Draft, 10:13-21.) Klein testifies that based on industry usage of the term "U-shaped," he only considered Safti-Seal's "DL" and "DSL" track profiles to be "U-shaped" at the time he agreed on behalf of all Defendants to the injunction. (Klein Decl., ¶15.) Examples of Safti-Seal's pre-injunction DL and DSL track profiles when compared to CEMCO's use of the term "U-shaped" support Klein's understanding as to the specific track profile he agreed was infringing at the time the consent injunction was entered. (Trojan Decl., Ex. 51, 9-11 (filed as Dkt. No. 103-14 on May 10, 2019).)

During the claim construction phase of this case, the parties never asserted that the term "U-shaped" was in dispute or otherwise required interpretation. And as already mentioned, not all claims of the Asserted Patents used that term in any event. Insofar as "consent judgments must be construed in a manner that preserves the position for which the parties bargained," *Thatcher v. Kohl's Dep't Stores, Inc.*, 397 F.3d 1370, 1374 (Fed. Cir.



701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

2005), neither party can be said to have clearly bargained for a definition of "U-shaped" apart from how they both used that term at the time. Thus, neither party should be allowed to seek a construction of the term "U-shaped" different from how they used that term at the time the consent judgment was entered.

### D. Whether the Injunction is Impermissibly Vague

Next, S4S asserts that the injunction is impermissibly vague because "the enjoined 'Accused Products' are not sufficiently defined in the injunction nor does the injunction spell out the bases for finding those products infringed the Patents." (S4S Resp. in Opp. to Motion, 7.) "Every order granting an injunction and every restraining order . . . shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." Fed. R. of Civ. P. 65(d). Notwithstanding these strictures, courts do not set aside injunctions under Rule 65(d) "unless they are so vague that they have no reasonably specific meaning." *E.&J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992). Rather than applying Rule 65(d) rigidly, courts determine the propriety of an injunctive order by inquiring into whether the parties subject thereto understand their obligations under the order. *Williams v. City of Dothan*, 818 F.2d 755, 761 (11th Cir. 1987) (citing *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 978-79 (11th Cir.), *cert. denied sub nom. Simmons v. Combs*, 479 U.S. 853, 93 L. Ed. 2d 120, 107 S. Ct. 187 (1986)), *modified by*, 828 F.2d 13 (11th Cir. 1987). Furthermore, the degree of particularity required depends on the nature of the subject matter. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191-92, 93 L. Ed. 599, 69 S. Ct. 497 (1949) (decrees of generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown).

Report and Recommendation - 14
CASE NO. 18-cv-00659

Taking first S4S's complaint that the injunction fails to sufficiently define the Accused Products, S4S fails to explain what it is about the injunction's definition of Accused Products it does not understand.[3] The injunction defines the Accused Products as "(i) Safti-Frame with an intumescent strip on the surface of a sidewall of a U-shaped track, and (ii) Safti-Strip if applied to the outer surface of a sidewall of a U-shaped track." (Dkt. No. 164, 2.) As explained *supra* at §III.C, Defendants understood, based on industry usage of the term, what the injunction meant by "U-shaped track" and this understanding is consistent with CEMCO's advertising and with how that term is used in the Asserted Patents. S4S's briefing recognizes that "'Safti-Strip' was a tape product sold by Safti-Seal, Inc. in a roll, consisting of three primary layers: an intumescent layer, a foam, thermal barrier, and a rubber adhesive." (S4S Resp. in Opp. to Motion, 3 (citing Sydry Decl., ¶3).) S4S also understands that "'Safti-Frame' was a metal track product also sold by Safti-Seal, Inc. with factory applied intumescent." (*Id.*)

As for S4S's complaint that the injunction does not "spell out the bases for finding those products infringed the Patents," S4S provides no authority that would require this level of detail in an injunction, particularly one entered on the basis of an agreement that the "Accused Products," as defined in the injunction, infringed the Asserted Patents. Even if the accused infringer modifies an element of the enjoined product which was not

---

[3] As explained *infra* at § III.E, the definition of Accused Products in the injunction (Dkt. No. 164) does not include a limitation as to where the claimed "intumescent strip" is placed, specifying only that it is placed "on the surface of a sidewall of a U-shaped track" (for the enjoined Safti-Frame product) or "the *outer* surface of a sidewall of a U-shaped track" (for the enjoined Safti-Strip product). (Dkt. No. 164 (emphasis added).) And because several asserted claims contain no requirement that the intumescent strip be placed only on the "first sidewall portion" or the "upper sidewall portion," FRG Strips of different widths do no render that product (when applied to the [outer] surface of a sidewall of a U-shaped track) more than colorably different from the enjoined Safti-Strip product.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

expressly identified to be "a basis for the prior finding of infringement," the court must nevertheless examine that modification under the holding in *Tivo* to determine whether the modification is "significant" and thus renders the new product "more than colorably different." *Proveris*, 739 F.3d at 1371. Similarly, the court cannot ignore such modifications in its analysis of a modified product under *Tivo*'s colorably different test simply because the modified element was not mentioned as a basis for infringement in the injunction. *Id.* n.1 (reasoning "that logic would render it virtually impossible to show that a product is more than colorably different from an earlier infringing product, thereby effectively punishing a defendant for conceding infringement"). Thus, the mere fact that the consent injunction does not specify the basis for infringement does not render the injunction unenforceable as vague.

S4S relies on *Gates v. Shinn*, 98 F.3d 463 (9th Cir. 1996), for the proposition that "an injunction [which] does not clearly describe prohibited conduct . . . is not enforceable by contempt." *Id.* at 468. But *Gates* is distinguishable. In that case, the Ninth Circuit vacated an order holding prison officials in contempt of a consent decree requiring the officials to provide "appropriate psychiatric evaluation and treatment." When disputes arose as to the level of care being provided at the prison, the court-appointed mediator in charge of developing institutional reforms disagreed with the prison's psychiatric expert as to the "appropriate" level of care. When the prison refused to follow the mediator's proposed modifications to the existing treatment program, the district court held it in contempt. *Id.* at 471. Vacating the contempt finding, the Ninth Circuit held that the prison's refusal to follow the mediator's modifications could not support a contempt finding because there was substantial disagreement among medical experts regarding the "appropriate" level of care

LOWE GRAHAM JONES 

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

and whether the Mediator's proposed modifications asked too much from the prison under the circumstances. *Id.* at 472-473.

Unlike the situation in *Gates*, the injunction here does not contain terms about which the parties disagreed at the time. Nor does the conduct prohibited by the injunction call for evaluation of competing opinions as to what is "appropriate" or "reasonable" under the circumstances, as was the case in *Gates*.

Finally, as Plaintiffs point out in reply, the injunction here states that "Defendants acknowledge that they have read this Stipulation and Judgment and Permanent Injunction and have had it explained by counsel of their choosing, *and fully understand it and agree to be bound thereby, and will not deny the truth or accuracy of any term or provision herein*." (Dkt. No. 164 (emphasis added).) Because S4S has been deemed "legally identified" with Defendants (Dkt. No. 251), it should be deemed to have waived any challenge to the injunction on the grounds that its terms are not understandable.

## E.     Colorable Differences Analysis

There is no dispute that at the time the parties settled this matter, Klein was working on a modified head-of-wall track product including fire-stopping technology. The parties' settlement provided that

> Klein may develop a new product(s) ("the New Product") that is not covered by any claim of the patents-in-suit ("the Patents"). If he is able to do so, and obtain UL certification for his New Product, he may certify the design-around under the existing UL numbers. Any product that is certified under the existing UL numbers in accordance with this paragraph must not infringe, directly or indirectly, any claim of the Patents.

(Declaration of Jim Klein in Support of Defs. Opp. to Motion ("Klein Decl"), Ex. A.)

Pursuant the parties' settlement agreement, Klein agreed "any manufacturing or sales of

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

this New Product will not be made by Defendants." (*Id.*) Klein further agreed that any new design he developed could be sold "to a bona fide third-party company over which he has no ownership role or right to control." (*Id.*) The settlement agreement further specified that "[s]uch third party may not be any one of the parties to the present action and/or any party that is owned and/or controlled by Defendants and/or owned and/or controlled by any agent of Defendants." (*Id.*) Finally, "Klein may be an employee or consultant to that company, but in no event shall he direct its operations or sales." (*Id.*)

When the case settled in 2019, Safti-Seal sold Safti-Strip in a roll form and factory-applied to metal tracks of various configurations with reference to UL2079 (5th Ed.) standards. (Trojan Decl., Ex. 51 (attaching Dkt. No. 103-14, a compilation of marketing material for the Safti-Seal products from https://www.saftiseal.com/ as of May 2019).)

By January 2020, Klein had developed modifications to the enjoined Safti-Strip product and began transitioning sales by Safti-Seal to the modified FRG Strip. (Trojan Ex. 5 (Klein Depo. Tran. At 162:21-23.) Klein sold his modified FRG designs and all rights to make or sell FRG products to S4S in March 2020. (Trojan Decl., Ex. 11 (Klein Suppl. Interr. Resp.), 3.) David Tullis, a former employee of Safti-Seal who works for S4S hoped for a "seamless transition from [Safti-Seal] to [S4S]" so that Safti-Seal customers would become S4S customers. (Trojan Decl., Ex. 9 ("Tullis Dep.") at 79:23-80:13.) Mr. Klein communicated the same to customers, notifying one customer in February 2020:

> We are changing the names or [sic] our roll or strip stock to FRG . . . so the "Safti-Frame" and "Safti-Strip" names . . . will be gone by the end of March. We will carry over any warranty, technical support, etc [. . .] so other than the name change things should be seamless[.]

(Trojan Decl., Ex. 19, 1.)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

While the modified FRG Strip has evolved over time, Defendants contend that "every formulation of S4S's FRG product is over 50% different in material composition from the Safti-Strip product enjoined in this case . . . and FRG has improved functionality as compared to Safti-Strip." (Defs. Resp. in Opp. to Motion, 6 (citing Sydry Decl., ¶¶7-8).) The most recent iteration of FRG Strip called "FRG Flex" increases the amount of foam used and uses a different kind of foam than what was originally specified for the FRG Strip. (S4S Resp. in Opp. to Motion, 5 (citing Sydry Decl., ¶9).) FRG Flex is now the only version of FRG Strip marketed by S4S. *Id.*

The parties agree that the modifications to Safti-Strip developed by Klein and embodied in the various formulations of the FRG Strip (including the most recent formulation know as FRG Flex) are limited to the thermal barrier and the adhesive. (Motion 5; Sydry Decl., ¶8.) Regarding Safti-Strip's intumescent layer, FRG Strip uses the same intumescent material made by RectorSeal that it did for Safti-Strip.[4] (Trojan Decl., Ex. 5 (Klein Dep.) at 34:23-35:3 and 46:21-25; *see also id.* Ex. 6 (Sydry Dep.) at 50:6-8; *see also* Pilz Decl., Ex. 33 at 2.) Notably, Klein testified that he did not ask RectorSeal to change its formulation for the intumescent material. (Trojan Decl., Ex. 5 (Klein Dep.) at 240:20-21.) Additionally, email correspondence between Klein and Eva Ackerman (an employee for RectorSeal) from August 2020 confirms that the formulation for the intumescent material remains unchanged since before the effective date of the injunction and that it is the same

---

[4] Both Klein and S4S suggest that RectorSeal could have reformulated its intumescent material during the time in between settlement in 2019 and when S4S started selling FRG Strip in April 2020. (Defs. Resp. in Opp. to Motion, 14; S4S Resp. in Opp. to Motion, 32.) While it is certainly possible that RectorSeal could have reformulated its intumescent material, the evidence does not suggest that it did or that Klein intended to order a different intumescent material from RectorSeal for the FRG Strip. (Trojan Decl., Ex. 5 (Klein Depo. Tran.) at 241:3-242:16.)



LOWE GRAHAM JONES ᴘʟʟᴄ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

material RectorSeal sells to other customers. (Trojan Decl., Ex. 42.)

Defendants and S4S assert that changes to Safti-Strip's foam and adhesive layers as embodied in the modified FRG Strip product are significant rendering the modified product more than colorably different from the enjoined Safti-Strip product. (S4S Resp. in Opp. to Motion, 32; Defs. Resp. in Opp. to Motion, 14.) The undersigned disagrees. In contempt proceedings following a contested infringement action, as is the case here, "it will often be that the underlying infringement litigation focused detailed attention on a few heavily disputed claim limitations and certain corresponding elements of an infringing product, and the colorable differences analysis in such cases will benefit from that precision." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1300 (Fed. Cir. 2012).

In this case, the court ruled against Defendants as a matter of law that the composition of the foam layer or its positioning relative to Safti-Strip's intumescent material were grounds for non-infringement. (Dkt. No. 117.) Additionally, the court ruled against Defendants on arguments claiming that Safti-Strip did not qualify as an "intumescent strip" within the meaning of the asserted claims because it included a layer of material in addition to an intumescent material. (Dkt. No. 98.)

On November 18, 2018, the court denied Defendants' motion for summary judgment of non-infringement (Dkt. No. 89), a motion arguing that Safti-Strip did not meet claim limitations requiring an "intumescent strip" that was "affixed . . . on" the outer sidewall surface of a metal track (Dkt. No. 72). The court denied that motion because it raised claim construction issues before they had been fully briefed. (Dkt. No. 89, 17.) In the court's claim-construction ruling the term "intumescent strip" was construed to mean a "strip that comprises a substance that expands when exposed to heat." (Dkt. No. 98 at 19:9-

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

10.) As the court explained, "[t]his construction makes clear that the intumescent strip need not include only an intumescent substance. It is also broad enough to encompass preferred embodiments in which the strip consists of a composition containing an intumescent substance, where that composition lies atop a non-intumescent substrate." (*Id.* at 19:10-14.) Additionally, the court construed "affixed…on" to mean "attached lengthwise, directly or by means of an intervening adhesive, to at least one of the outer sidewall surfaces." (*Id.* at 26:20-22.) Additionally, in the court's August 14, 2019 summary judgment order it found "as a matter of law, the Safti-Strip tape affixed to the accused metal track products is an 'intumescent strip' within the meaning of the Patents." (Dkt. No. 117 at 19:8-10.) The court also found "the intumescent strip is 'affixed ... on' the accused metal track products within the meaning of the Patents." (*Id.* at 23:15-16; *see also*, Dkt. No. 134, 3 (order on motion for clarification).)

In short, the fact that Safti-Strip included a foam layer and the fact that that foam layer was interposed between an intumescent substance and the outer surface of the track's sidewall provided no grounds for non-infringement of the asserted claims. Similarly, the existence of an adhesive layer or its composition could not have brought Safti-Strip outside the scope of the asserted claims.

Aside from asserting that the modified foam and adhesive layers of the FRG Strip provide enhanced functionality, Defendants and S4S fail to show that these modifications matter under *Tivo*'s colorably different test. Under that test, "[t]he primary question on contempt should be whether the newly accused product is so different from the product previously found to infringe that it raises 'a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Tivo*, 646 F.3d at 882 (quoting *Cal. Artificial Stone Paving Co.*

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

*v. Molitor*, 113 U.S. 609, 618, 5 S. Ct. 618, 28 L.Ed. 1106 (1885)). Here, because the court's rulings provided that Safti-Strip's foam and adhesive layers do not matter for infringement purposes, any alleged enhanced functionality of the FRG Strip provided by the foam or adhesive layer fails to raise "a fair ground of doubt as to whether [the FRG Strip] infringes," so long as the other elements of the asserted claims continue to be met. And the record shows no other modifications made by Klein or S4S that might serve to bring FRG Strip outside of the scope of the asserted claims.

Further supporting the finding that FRG Strip is no more than colorably different from the enjoined Safti-Strip are Defendants' several admissions of FRG Strip's interchangeability with Safti-Strip and that the transition to FRG Strip was just a rebrand of the product name.[5] (Trojan Decl., Exs. 12 ("another party is making and renaming the same product Fire Rated Gasket"), 13 ("FRG looks, feels, works, and comes in the same roll quantity as current Safti-Strip"), 14-18 (fulfilling Purchase orders for Safti-Strip with FRG Strip), 19 ("we are changing the names or [sic] our roll or strip stock to FRG (fire Rated Gasket)"), 44 (email discussing "rebranding"); *see also* Pilz Decl., Exs. 1a, 1b, and 2a.) Further, Sydry testified that the FRG Strip and Safti-Strip products are interchangeable:

> Q. So you could either use FRG or safety strip and they would work the same?

---

[5] S4S suggests that the court should ignore this evidence as it was provided merely to "calm customers' nerves." (S4S Resp. in Opp. to Motion, 33 n. 18 (citing *Gatearm Techs., Inc. v. Access Masters, LLC*, No. 14-62697-CIV, 25 2020 WL 6808670, at *16 (S.D. Fla. Apr. 30, 2020), report and recommendation adopted, 2020 WL 4923637 (S.D. Fla. Aug. 21, 2020), affd, 2021 WL 2701711 (Fed. Cir. June 30, 2021)).) But Klein's affirmations of FRG's sameness to and interchangeability with the enjoined Safti-Strip were neither isolated nor limited to marketing communications. And they exist within the context of other evidence, all supporting a finding that FRG Strip could be substituted for the enjoined Safti-Strip and that FRG Strip functions in substantially the same way as Safti-Strip and accomplishes substantially the same, albeit allegedly better, result. (Trojan Ex. 7: (Sydry Dep.) at 277:4-6; Trojan Ex. 5: (Klein Dep.) at 128:15-21; *see also* Ex. 55 ("Our UL certifications provide support that FRG can be used in the same manner providing improved results for fire rated conditions.").)

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

A. That's how I understand it, yeah.

(Trojan Ex. 7 (Sydry Dep.) at 277:4-6.) Klein also testified that the FRG products can be substituted for the SSR products:

> Q. Because the FRG product is equivalent to the Safti-Strip for purposes of this order; correct?
> A. I would say FRG is superior to Safti-Strip, but it can be substituted for -- FRG can be substituted from a performance and certification for what Safti-Strip can do but Safti-Strip cannot be used for FRG.

(Trojan Ex. 5 (Klein Dep.) at 128:15-21.) Defendants also told their customers that the "FRG can be used to replace current Safti-Strip material product going forward." (Trojan Ex. 13, CEMCO 002790.). Additionally, UL did not require new fire testing when changing the references on the approved UL listings from Safti-Strip and Safti-Frame to FRG products, providing evidence that UL did not consider the change significant enough to require additional testing. (Trojan Exs. 5 (Klein Dep.) at 191:6-193:14, 228:2-229:25; Trojan Ex. 26 at 006400, 006410; Trojan Ex. 27 at UL 402.)

Finally, Defendants and S4S claim that the FRG Strip and FRG Frame products are more than colorably different from the enjoined Safti-Strip and Safti-Frame products because (1) "FRG is applied to a different location on the track than Safti-Seal's strip was," (2) "[w]hen FRG strips are applied to tracks, they are configured to cover substantially more of the track's sidewall surface than Safti-Strip was, and (3) "FRG is frequently (perhaps usually) applied to different track profiles than the Safti-Strip was." (Defs. Resp. in Opp. to Motion, 14-15; *see also* S4S Resp. in Opp. to Motion, 32-34 (citing Klein Decl. ¶19).) The undersigned disagrees that any of these arguments successfully identifies a significant, i.e., "more than colorable" difference between the Accused Products and FRG Strip when applied to the outer surface of a sidewall of a U-shaped track.

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

First, no evidence suggests that the DL or DSL track profiles were modified and Klein himself admits that these are "U-shaped tracks." (Klein Decl., ¶15.) Moreover, a simple comparison of the enjoined Safti-Frame's DL and DSL profiles with the FRG Frame's DL and DSL profiles show no changes in track profile or position for the intumescent strip. (Pilz Decl., ¶¶25-29 and Exs. 16-20; *see also* Trojan Decl., Ex. 51 at 9-11.) And while both S4S and Klein argue that the FRG Strip is wider than Safti-Strip (or "may come in many different widths"), and for that reason may cover more area than just the "first sidewall portion" or "upper sidewall portion" of a U-shaped track (S4S Resp. in Opp., 47; Defs. Resp. in Opp. to Motion, 21), the definition of the "Accused Products" is not so limited as to *where* Safti-Strip is positioned on the outer surface of the sidewall of a U-shaped track.[6] (Dkt. No. 164.) Additionally, several asserted claims do not require positioning of the "intumescent strip" only on the "first sidewall portion" or the "upper sidewall portion." (Trojan Decl., Ex. 3 (claim 1 of the '314 Patent), 1 (claim 1 of the '365 Patent), 4 (claim 1 of the '526 Patent), and 2 (claim 1 of the '718 Patent).) Accordingly, none of these other arguments show that FRG Strip as applied to the outer surface of a sidewall of a U-shaped track (as shown in Defendants' and S4S's product literature and UL certifications) is more than colorably different from the Accused Products. (Pilz Decl., Exs. 16-20; *Compare* Pilz Exs. 5 (UL No. HW-D-0498) and 10 (UL No. HW-D-0890); *see also* Pilz Decl., Ex. 28 at 3 (attaching FRG product submittals "[a]dding FRG as alternate to SAFTI-STRIP").)

---

[6] And as explained *supra* at §§ III.C-D, the absence of such specificity does not render the injunction impermissibly vague, but rather reflects the parties' agreement as what products were deemed infringing and thereby within the scope of the injunction.



LOWE GRAHAM JONES ₚₗₗ𝖼

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

### F.    Infringement Analysis

Having found that the FRG Strip when applied to the outer surface of the sidewall of U-shaped track is not more than colorably different from the Accused Products as defined in the injunction, the court must determine whether that product infringes any claim of the Asserted Patents. *Tivo*, 646 F.3d at 883. The infringement analysis will focus on the U-shaped track products because those are the only products within the scope of the injunction. *See supra* at § III.C.

#### 1.    Direct Infringement by Defendants and S4S

Of the claims asserted by Plaintiffs in their motion, claims 1 and 6 of the '314 Patent and Claim 12 of the '718 Patent prohibit the use, sale, and offer for sale of track products with an intumescent strip. In other words, they do not require the entire wall assembly (including studs and wallboard) for a finding of direct infringement under 35 U.S.C. § 271(a). These facts are important to a determination whether Defendants and S4S may be liable for contempt by direct infringement for the sale or offer for sale of FRG Frame products with FRG Strip affixed to the outer surface of a sidewall of a U-shaped track. Defendants and S4S do not sell or offer to sell completed wall assemblies, so they cannot directly infringe claims requiring elements of the wall assembly, i.e., studs and wallboard.

S4S asserts that claim 1 of the '314 Patent requires the entire wall assembly because the claimed "header track" is "for use in a stud wall assembly." (S4S Resp. in Opp. to Motion at 43.) But this language appears only in the claim's preamble. S4S offers no evidence or argument to support a finding that the claim's preamble should be read to limit claims 1 of the '314 Patent.

Ordinarily, a claim's preamble is not limiting, particularly when it simply states the

LOWE GRAHAM JONES ᴾ&#x029F;&#x029F;&#x1D04;

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

purpose or intended use of the invention. *See Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003); *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997). Accordingly, the only asserted claims that Defendants and S4S could have directly infringed in violation of 35 U.S.C. § 271(a) are claims 1 and 6 of the '314 Patent and claim 12 of the '718 Patent. The remaining asserted claims (i.e., claim 1 of the '365 Patent, claim 1 of the '526 Patent, and claim 1 of the '718 Patent) each require the entire wall assembly and thus can only be infringed indirectly by either contributory infringement in violation of § 271(c) or by inducement in violation of § 271(b).

### a.  Claim 1 of the '314 Patent

Claim 1 of the '314 Patent covers a header track for use in a stud wall assembly comprising:

> an elongated web having a pair of spaced apart and downwardly extending sidewalls, each sidewall having inner and outer sidewall surfaces, and an elongated heat expandable intumescent strip affixed lengthwise on at least one of the outers sidewall surfaces of the pair of sidewalls, the intumescent strip having a composition that comprises: (A) from 5 to 95% by weight of expandable graphite; (B) from 1 to 70% by weight of a fire retardant; (C) from 1 to about 50% by weight of an inorganic filler dispersed in a emulsion of polyvinyl acetate or silicone.

(Trojan Decl., Ex. 3 (claim 1 of the '314 Patent).) Plaintiffs include an "exemplary" claim chart for claim 1 of the '314 Patent to support allegations of direct infringement by S4S, Klein, and Safti-Seal. This claim chart also references a UL listing "HW-D-0980" that the undersigned was unable to locate in the evidence. However, UL listing HW-D-0890 appears to depict a track profile similar to the DSL track profile depicted in the claim chart, however, the UL listing does not specify any specific track profile for the "ceiling runners," a term used in the UL listing to refer to the top-most portion (2.A) of a UL-certified "wall

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

assembly." (Pilz Decl., Ex. 87.)

While not analyzed on an element-by-element basis by the Plaintiffs in a claim chart, the PS6-DSL product, according to S4S product literature, includes the FRG Strip affixed lengthwise on the outer surface of both sidewalls of a U-shaped track. (Pilz Decl., Exs. 17.) The PS6-DSL track profile includes slots on both sides; however, the infringement analysis is the same for the "PS4-DL (Deep Leg) Profiles with two solid legs" (*Id.* Ex. 16), the PS5-SL (Slotted One Side) Profiles One Slotted and One Solid Leg" (*Id.* Ex. 18), and the PS10-VT (Vertical Joint) Profiles with two solid legs" (*Id.* Ex. 19). All of these products include U-shaped track profiles with the FRG Strip affixed lengthwise on the outer surface of both sidewalls. The evidence also includes charts for this claim, comparing it to various product profiles offered by S4S. (Pilz Decl. Exs. 77 (including a chart for this claim versus "PS24-Bottom of Wall" specification, 78 (including a chart of this claim versus "PS10 VT (Vertical Joint) profiles"), and 79 (including a chart of this claim versus "PS49 JSR Slotted-J-Runner Profiles").)

To show that the chemical-composition limitations are met for this claim, Plaintiffs cite Klein's deposition testimony confirming that the FRG and FRG Flex intumescent strip includes the same BlazeSeal intumescent material from RectorSeal that was used in the enjoined Safti-Strip product. (Trojan Decl., Ex. 5 (Klein Dep.) at 34:23-35:3; 46:21-25; 161:2-11; 162:24-163:1; 167:19-21, 240:14-242:16) *see also id.* Ex. 6 (Sydry Depo. Tran.) at 50:6-8; *see also* Pilz Decl., Ex. 33 at 2.) Plaintiffs also rely on a declaration from an employee from RectorSeal, Eva Ackerman, signed July 25, 2019, confirming that the composition of the BlazeSeal intumescent strip meets the specific weight limitations of claim 1 of the '314 Patent. (Trojan Decl., Ex. 25; *see also id.*, Ex. 5 (Klein Dep.) at 34:23-

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

35:3 and 46:21-25.)

Notably, to infringe claim 1 of the '314 Patent, the intumescent need only be "affixed lengthwise on at least one of the outer[] sidewall surfaces of the pair of sidewalls." (*Id.*) Based on the claim charts submitted by Plaintiffs comparing the elements of this claim to S4S's FRG Frame products having the DL or DSL (i.e., "U-shaped") track profile (Pilz Decl., Exs. 87, and 16-19), the FRG strip is affixed lengthwise on at least one of the outer sidewall surfaces.

Defendants and S4S do not offer evidence to counter Plaintiffs' showing that the FRG Frame products (as described by S4S on its website and in product literature for the DL and DSL track profiles) meet each limitation of claim 1 of the '314 Patent. Instead, Defendants and S4S contend that the Plaintiffs have failed to meet their burden to prove direct infringement of this claim by clear and convincing evidence based on the mere possibility that RectorSeal could have changed the composition of the intumescent material. (Defs. Resp. in Opp. to Motion, 14; S4S Resp. in Opp. to Motion, 32.) This possibility by itself does not outweigh other evidence, namely Klein's testimony (Trojan Decl., Ex. 5 (Klein Dep.) at 34:23-35:3; 46:21-25; 161:2-11; 162:24-163:1; 167:19-21, 240:14-242:16) and Sydry's testimony (*id.* Ex. 6 (Sydry Dep.) at 50:6-8), which taken together support a finding that the intumescent material remains the same.

### b.     Claim 12 of the '718 Patent and Claim 6 of the '314 Patent

Claim 12 of the '718 Patent covers an elongated U-shaped sheet-metal track, comprising:

> an elongated web integrally connected to a pair of spaced apart and outwardly extending sidewalls with the web and sidewalls defining a U-shaped profile, each sidewall having inner and outer sidewall surfaces, each

Report and Recommendation - 28
CASE NO. 18-cv-00659

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

sidewall having a plurality of slots positioned perpendicular to the lengthwise direction of the elongated web, each sidewall having a first sidewall portion adjacent to the web and a second sidewall portion adjacent to the first sidewall portion;

and an elongated heat expandable intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the first sidewall portion and not on the second sidewall portion.

(Decl. of R. Joseph Trojan in Supp. of Motion ("Trojan Decl."), Ex. 2 (claim 12 of the '718 Patent).) Plaintiffs include an "exemplary" claim chart for claim 12 of the '718 Patent to support allegations of direct infringement by S4S, Klein, and Safti-Seal, relying on a "product profile" description for the "PS6 DSL (Slotted Both Sides) Profiles with two slotted legs" downloaded from www.saftiseal.com, a website advertising the accused FRG Product. (Motion, 29-30 (citing Pilz Decl., Ex. 106 and Trojan Decl., Ex. 40 at DEF 3556)); Trojan Decl., Ex. 5 (Klein Dep.) at 59:19-60:8).) While not specifically cited in the Motion, Plaintiffs' evidence also includes charts for this claim versus the following UL listings: HW-D-0889, HW-D-0890, HW-D-0891, and HW-D-0893. (Pilz Decl., Exs 34-37.)

Claim 6 of the '314 Patent covers a generally U-shaped sheet-metal track comprising:

an elongated web integrally connected to a pair of spaced apart and outwardly extending sidewalls with the web and sidewalls defining a U-shaped profile, each sidewall having inner and outer sidewall surfaces, each sidewall having a plurality of slots positioned perpendicular to the lengthwise direction of the elongated web, each sidewall having a first sidewall portion adjacent to the web and a second sidewall portion adjacent to the first sidewall portion;

and an elongated heat expandable intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the first sidewall portion and not on the second sidewall portion.

Report and Recommendation - 29
CASE NO. 18-cv-00659

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

(Trojan Decl., Ex. 3 (claim 6 of the '314 Patent).) Plaintiffs include a claim chart to support claims of direct infringement by Defendants and S4S, relying on the same DSL track profile evidence identified in the claim chart for Claim 12 of the '718 Patent. (Motion, 31-32.) While not specifically discussed in the motion, Plaintiffs' evidence includes claim charts for this claim versus the PS6-DSL and PS8-ODSL profiles sold by S4S. (Pilz Decl., Exs. 38-39.)

For direct infringement of claim 12 of the '718 Patent, Plaintiffs also rely on ODSL product profile, "PS8 'ODSL' (Offset Slotted Leg) Profiles with two offset slotted lower legs." (Motion, 32 (citing Pilz Decl., Ex. 108). *See also* Pilz Decl., Exs. 40-41 (including claim charts for this claim versus the PS6-DSL profile and the PS8-ODSL profile).) While Plaintiffs' claim chart for claim 12 of the '718 Patent includes a reference to the "HW-D-0980 UL listing" (Motion, 30), the undersigned was unable to locate that specific UL listing in the evidence. However, UL listing HW-D-0890 appears to depict a track profile similar to the DSL track profile depicted in the claim chart. As already mentioned, the UL listings do not specify any specific track profile for the "ceiling runners," a term used in the UL listings to refer to the top-most portion (2.A) of a UL-certified "wall assembly." (Pilz Decl., Exs. 87 (UL listing No. HW-D-0890) and 35 (claim chart comparing this claim versus the UL listing No. HW-D-0890).)

Notably, claim 12 of the '718 Patent and claim 6 of the '314 Patent require that the intumescent strip be "positioned on the first sidewall portion and not on the second sidewall portion." In its claim construction order, the court did not interpret these terms. (Dkt. No. 98.) Nevertheless, on a motion for contempt, the Federal Circuit requires the court to interpret any terms in dispute even where those terms were not construed in the underlying

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

litigation. *Proveris*, 739 F.3d at 1372.

Neither party proposes a definition for "first sidewall portion" or "second sidewall portion." S4S explains that the claim language itself requires that the first sidewall portion be "adjacent to the web," which S4S understands as an "upper limit of the . . . first sidewall portion." (S4S Resp. in Opp. to Motion, 24.) S4S contends that the claims and respective specifications "say nothing of the lower limit of the . . . first sidewall portion, which renders the claim[] indefinite." (*Id.*)

According to Federal Circuit law, "a claim may be invalid as indefinite when (1) different known methods exist for calculating a claimed parameter, (2) nothing in the record suggests using one method in particular, and (3) application of the different methods result in materially different outcomes for the claim's scope." *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, No. 2020-1212, 838 Fed. Appx. 538, 2020 U.S. App. LEXIS 40849, 2020 WL 7828776, at *3 (Fed. Cir. Dec. 31, 2020) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015); *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 634 (Fed. Cir. 2015)).

Here, the record on these claims is incomplete, particularly with respect to how the terms "first sidewall portion" and "second sidewall portion" ought to be interpreted and whether they are indefinite. The undersigned is therefore unable to interpret these claims within the context of these contempt proceedings on such a limited record or to make any determination as to whether these claims are indefinite. Accordingly, neither of these claims may serve as the basis for a finding of contempt on Plaintiffs' pending motion.

  2. **Evidence of Infringing Sales or Offers for Sale by Defendants and S4S**

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

There is no evidence indicating that Klein or Safti-Seal sold or offered for sale any FRG Frame or FRG Strip products after April 1, 2020, the effective date of the injunction. (Hearing Transcript Rough Draft at 16:1-7.) Defendant Klein testified that by April 1, 2020, sales of the FRG products had fully transitioned to S4S. (Trojan Ex. 5 (Klein Dep.) at 30:2-11.) Accordingly, the undersigned finds that sales or offers for sale of the FRG Frame and FRG Strip products occurring after April 1, 2020 were by S4S.

S4S contends that that the record lacks evidence that it ever sold any FRG Frame product with FRG Strip applied at the factory to a U-shaped track. (S4S Resp. in Opp. to Motion at 34.) S4S lists FRG Frame products in its catalogue (as Safti-Seal did) with FRG Strip factory-applied (*Id.* at 4 n.2) and those catalogues or price lists show FRG Strip factory applied to a U-shaped track. (Pilz Decl., Exs. 104-106.) Sydry testified that S4S began selling head-of-wall track with intumescent factory-applied sometime during the summer of 2020. (Trojan Decl., Ex. 6 (Sydry Dep.) at 54:9-22.) The record contains some invoices from S4S (and a purchase order to S4S) for FRG Strip (Trojan Decl. Exs. 15-18), but the undersigned was unable to find similar documents in the record reflecting orders for the sale of FRG Frame with the FRG Strip factory-applied to a U-shaped track.

General advertisements are not considered "offers for sale" within the meaning of 35 U.S.C. § 271(a) but are instead merely solicitations for offers. *Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1028 (Fed. Cir. 2016). Accordingly, the Federal Circuit has noted that "contract law traditionally recognizes that mere advertising and promoting of a product may be nothing more than an invitation for offers, while responding to such an invitation may itself be an offer." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001). Thus, "[g]enerally, it is considered unreasonable for a person to believe that

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

advertisements and solicitations are offers that bind the advertiser." *Mesaros v. United States*, 845 F.2d 1576, 1581 (Fed. Cir. 1988).

The Federal Circuit has held that price quotations directly targeted at potential customers can constitute an offer for sale, creating liability for direct infringement under § 271(a). *See 3D Sys. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998) (denying motion to dismiss for lack of personal jurisdiction in view of price quotation letters sent to California residents); *see also HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999) (restating the holding in *3D Systems*). Since both *3D Systems* and *Hollyanne* were decided, the Federal Circuit has "revised its 'offer to sell' analysis in light of the Supreme Court's opinion in *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55, 119 S. Ct. 304, 142 L. Ed. 2d 261 (1998)." *HVLPO2, LLC v. Oxygen Frog, LLC*, 187 F. Supp. 3d 1097, 1111 (D. Neb. 2016) (citing *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000); *Xactware, Inc. v. Symbility Sol. Inc.*, 402 F. Supp. 2d 1359, 1367 (D. Utah 2005) (explaining that *Rotec* offers "a much different analysis" from *3D Systems*); and *EBS Auto. Servs. v. Illinois Tool Works, Inc.*, 2011 U.S. Dist. LEXIS 102163, 2011 WL 4021323, at *12 n.13 (S.D. Cal. Sept. 12, 2011) (questioning the continuing viability of the *3D Systems* rule in light of *Rotec*)).

Under the rule in *Rotec*, "the meaning of 'offer to sell' is to be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority." *Rotec*, 215 F.3d at 1255. Thus, an offer to sell requires a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (quoting Restatement (Second) of Contracts § 24 (1981)). The court further held in *Rotec* that "offers to sell" under § 271(a) has the

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

same meaning as "commercial offer for sale" in the context of determining whether an on-sale bar applies under 35 U.S.C. § 102(b), because both "invoke the traditional contractual analysis." *Id.*

In view of the caselaw following *Rotec* applying traditional sources of authority on contracts to determine when one "offers for sale" a device accused of infringement under § 271(a), the undersigned agrees with S4S that the record lacks clear and convincing evidence showing S4S ever offered for sale FRG Strip factory-applied to the surface of a sidewall of a U-shaped track. While the record does show Klein sending (on behalf of S4S) a price list to the Anning-Johnson Company including FRG Strip applied to a U-shaped track (Trojan Decl., Ex. 20), the price list includes all track profiles, and it is unclear whether Klein's communication was meant to generate interest by the customer in FRG Strip factory-applied to a U-shaped track or FRG Strip factory-applied to another track profile. (*See* Trojan Decl., Ex. 6 (Sydry Depo. Tran.) at 196:1-197:16.) Additionally, the record does not include documents showing a clear offer by S4S to sell FRG Strip factory-applied to a U-shaped track. Such evidence might include sales-orders signed and sent to the customer specifying FRG Strip applied to the sidewall of a U-shaped track, or otherwise identifying the track profile and specifying that S4S would deliver the product in a certain quantity and at a certain price with FRG Strip factory-applied.

### 3. Contributory Infringement

Plaintiffs assert contributory infringement by S4S (*see* 35 U.S.C. § 271(c)) in view of sales and offers for sale of the FRG Strip in roll form and by selling FRG Strip factory-applied to FRG Frame products. (Motion, 48-50.) The statute prohibiting contributory infringement provides

Report and Recommendation - 34
CASE NO. 18-cv-00659

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). "To establish contributory infringement, the patent owner must show the following elements . . . 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Taking first Plaintiffs' allegation that S4S committed contributory infringement by selling the FRG Strip product in roll form, that allegation must be rejected because the record lacks proof the FRG Strip "has no substantial noninfringing uses." According to testimony submitted by an S4S employee, FRG Strip has been sold for projects and applications that could not possibly infringe asserted claims requiring metal framing applications.[7] This is because FRG Strip has been sold for use in wood-framed walls. (Tullis Decl., ¶5.) And as for claims that arguably do not require metal framing,[8] Plaintiffs have failed to prove that FRG strip necessarily must be used on track profiles having "an elongated web" and "a pair of spaced apart and downwardly extending sidewalls," as required by claims 1 and 6 of the '314 Patent and claim 12 of the '718 Patent. For example,

---

[7] The asserted claims requiring metal framing applications are as follows: claim 1 of the '365 Patent, claim 1 of the '718 Patent, and claim 1 of the '526 Patent. (Trojan Decl., Exs. 1-2, and 4.)

[8] Claim 6 of the '314 Patent and claim 12 of the '718 patent both include preamble language that could limit each claim's application to "sheet-metal" tracks, however, the undersigned does not find it necessary to resolve that issue on this motion for contempt given each of those claims' limitations require a track profile that may not be required with every application of the FRG Strip sold in roll form.

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Mr. Tullis describes uses for FRG Strip in a variety of applications, several of which do not necessarily require use of the FRG Strip on track profiles as claimed in claims 1 and 6 of the '314 Patent and claim 12 of the '718 Patent, let alone "U-shaped" track profiles, which are the only kinds of track profiles covered by the injunction. (Tullis Decl., ¶¶3-4.) The undersigned also agrees with S4S, that the burden to prove substantial noninfringing uses remains on the patent owner in a case asserting contributory infringement. (S4S Brief in Opp. to Motion, 26 (citing *Fujitsu*, 620 F.3d at 1326).) Here, Plaintiffs' motion fails to establish this necessary element of its case, so its claims for contributory infringement based on S4S's sale of FRG Strip in roll form should be rejected.

Regarding Plaintiffs' claims for contributory infringement based on the alleged sale by S4S of FRG Frame products with Safti-Strip factory-applied to a U-shaped track, as already mentioned, the evidence is insufficient to find that this ever happened. But even if it did, contributory infringement of claims requiring sheet-metal studs, i.e., claim 1 of the '365 Patent, claim 1 of the '526 Patent, and claim 1 of the '718 Patent, based on the sale by S4S of U-shaped FRG Frame products with FRG Strip factory-applied, requires proof that such products have no substantial non-infringing uses. Plaintiffs have failed to establish this necessary element of their case for contributory infringement of these claims as well because it remains unclear on this record whether these FRG Frame products could be used in non-infringing wall assemblies.

### 4.    Inducement

To prove inducement, Plaintiffs must show "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Min. & Mfg. Co.*

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

*v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002). This requires a showing that at least one third party engaged in direct infringement and that the defendant "took an affirmative act to encourage [direct] infringement with the knowledge that the induced acts constitute patent infringement." *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) ("To prove inducement of infringement, the patentee must []show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."). *See also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (holding that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement").

### a) Affirmative Acts Encouraging Infringement

Plaintiffs allege affirmative acts by S4S and Klein encouraging infringement based on instructions S4S provides on its website (prepared at least in party by Defendant Klein) showing how to use the FRG Strip with various track profiles, including U-shaped track profiles. (Motion, 45-46.) Plaintiffs also allege that Klein and S4S provide engineering judgments[9] "where they instruct the clients to install FRG Strip on the upper sidewall portions of u-shaped tracks as part of firestopping wall assemblies." (*Id.*, 46.) Finally, Plaintiffs allege that S4S encourages infringement by others through its publication and distribution of the UL listings, which according to Plaintiffs "requires the intumescent 'strip' or 'gasket' be affixed on the upper portion of the metal track" for compliance with local building codes. (*Id.*, 47.)

---

[9] "Engineering judgments" are provided when variations from the industry standard (as provided in the UL listed assembly) are called for. (Trojan Ex. 5 (Klein Depo. Tran.) at 74:4-75:8.)

Report and Recommendation - 37
CASE NO. 18-cv-00659

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

The Federal Circuit affirms findings of inducement based on instructions provided by the accused inducer recommending use of the accused product in an infringing manner. *See*, *e.g.*, *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364-66 (Fed. Cir. 2012). Similarly, advertisements promoting use of an infringing product can also support an inducement finding. *See*, *e.g.*, *Lucent Techs. V. Gateway, Inc.*, 580 F.3d 1301, 1322-23 (Fed. Cir. 2009). Particularly relevant to this case, "[t]he existence of a substantial non-infringing use does not preclude a finding of inducement." *Toshiba*, 681 F.3d at 1364.

The evidence is clear and convincing that S4S not only provides instructions showing how to use the FRG Strip in an infringing manner (Pilz Decl., Ex. 102), it recommends it in advertising and promotional literature showing application of the FRG Strip to U-shaped track (*Id.*, Ex. 104-106). Indeed, S4S maintains on its website an instructional video illustrating how an intumescent strip is applied to a U-shaped track and how that track may be used to complete UL-certified wall assemblies. (Trojan Decl., Ex. 52.) Klein and S4S also send emails recommending use of the FRG Strip in an infringing manner on a U-shaped track. (Trojan Decl., Exs. 45-46.) On behalf of S4S, Klein also explicitly recommends customers apply FRG Strip on U-shaped track in head-of-wall applications and he instructs them to apply the strip "tight against the substrate [such as a ceiling] before you put pressure on it" to apply it to the flange of the track. (Trojan Ex. 5 (Klein Dep.) at 231:1-234:13, Trojan Ex. 38.) Similarly, Klein and S4S regularly provide engineering judgments where they recommend customers install FRG Strip on the upper sidewall portions of U-shaped tracks as part of firestopping wall assemblies. (Trojan Exs. 48-50.)

b) **Direct Infringement by S4S's Customers**

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Plaintiffs allege direct infringement by S4S's customers "by building wall assemblies in the configurations that are described in the various UL listings identified on the S4S website, each of which was obtained by S4S to ensure sales of the FRG products." (Motion, 32 (citing Trojan Ex. 6: (Sydry Dep.), at 64:14-65:9; Trojan Ex. 7: (Sydry Dep.), at 266:6-19).) These allegations of direct infringement by S4S's customers rely on exemplary claim charts for claim 1 of the '365 Patent, claim 1 of the '526 Patent, and claim 1 of the '718 Patent.

Claim 1 of the '365 Patent covers a fire retardant head-of-wall assembly configured to seal a linear head-of-wall construction joint or gap when exposed to a heat source, comprising:

an elongated sheet-metal footer track;

an elongated sheet-metal header track confronting and vertically spaced apart from the footer track, the header track including a web integrally connected to a pair of spaced apart and downwardly extending sidewalls, the web having a top exterior web surface positioned immediately adjacent to a ceiling and a bottom interior web surface, each sidewall being substantially coplanar and having inner and outer sidewall surfaces, each sidewall having an upper sidewall portion adjacent to the web and a lower sidewall portion;

an elongated intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the upper sidewall portion, the intumescent strip having an outer strip surface offset from the outer sidewall surface an intumescent strip offset distance;

a plurality of sheet-metal studs having upper and lower end portions, the studs being vertically positioned between the spaced apart and confronting footer and header tracks such that the lower end portions are received into the footer track and the upper end portions are received into the header track, each of the upper end portions of the plurality of studs being spaced apart from the bottom interior web surface of the header track a first gap distance that allows for ceiling deflections; and

wallboard attached to at least one side of the plurality of studs, the wallboard



LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

having a top linear end surface positioned apart from the ceiling a second gap distance that allows for ceiling deflections and defines the linear head-of-wall construction joint or gap, the wallboard having an elongated upper interior wallboard surface in linear contact with and bearing against the outer strip surface of the elongated intumescent strip.

(Trojan Decl., Ex. 1 (claim 1 of the '365 Patent).) Plaintiffs allege this claim is infringed by S4S's customers relying on UL listing No. HW-D-890. (Motion, 33-36 (citing UL listing HW-D-0890, attached to Pilz Decl. at Ex. 87). *See also* Pilz Ex. 30 (including a claim chart for this claim versus UL listing HW-D-0890).) Plaintiffs also allege that this claim is directly infringed by S4S's customers relying on the following additional UL listings: HW-D-0892 (Pilz Decl., Ex. 89), HW-D-0889 (Pilz Decl., Ex. 86), HW-D-0891 (Pilz Decl., Ex. 88), HW-D-0893 (Pilz Decl., Ex. 90), HW-D-0894 (Pilz Decl., Ex. 91), HW-D-0900 (Pils Decl., Ex. 101), HW-D-0896 (Pilz Decl., Ex. 93), HW-D-0899 (Pilz Decl., Ex. 96). HW-D-0898 (Pilz Decl., Ex. 95), HW-D-0895 (Pilz Decl., Ex. 92), HW-D-0897 (Pilz Decl., Ex. 94), HW-D-0903 (Pilz Decl., Ex. 99), HW-D-0904 (Pilz Decl., Ex. 100), HW-D-0901 (Pilz Decl., Ex. 97), and HW-D-0902 (Pilz Decl., Ex. 98). (Motion, 42-44. *See also* Pilz Decl., Exs. 29 (including a chart for this claim versus UL listing HW-D-0899), 31 (including a chart for this claim versus UL listing HW-D-0891), 32 (including a chart for this claim versus UL listing HW-D-0893), 71 (including a chart for this claim versus UL listing HW-D-0897), and 73 (including a chart for this claim versus UL listing HW-D-0901).)

Claim 1 of the '526 Patent covers a fire retardant head-of-wall assembly, comprising:

an elongated sheet-metal footer track;

an elongated sheet-metal header track confronting and vertically spaced apart from the footer track, the header track including a web integrally connected to a pair of spaced apart and downwardly extending sidewalls,

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

each sidewall having an upper sidewall portion adjacent to the web and a lower sidewall portion;

an elongated intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the upper sidewall portion;

a plurality of sheet-metal studs having upper and lower end portions, the studs being vertically positioned between the spaced apart and confronting footer and header tracks such that the lower end portions are received into the footer track and the upper end portions are received into the header track;

wallboard attached to at least one side of the plurality of studs, the wallboard having an elongated upper interior wallboard surface in contact with the outer strip surface of the elongated intumescent strip.

(Trojan Decl., Ex. 4 (claim 1 of the '526 Patent).) Once again, Plaintiffs allege this claim is directly infringed by S4S's customers relying on UL listing No. HW-D-0890. (Motion, 36-38 (citing UL listing HW-D-0890, attached to Pilz Decl. at Ex. 87).) Plaintiffs also include a chart asserting that this claim is directly infringed by S4S's customers relying on the same additional UL listings identified above with respect to claim 1 of the '365 Patent. (Motion, 42-44.)

Claim 1 of the '718 Patent covers a fire retardant head-of-wall assembly configured to seal a linear head-of-wall construction joint or gap when exposed to a heat source, comprising:

an elongated sheet-metal footer track;

an elongated sheet-metal header track confronting and vertically spaced apart from the footer track, the header track including a web integrally connected to a pair of spaced apart and downwardly extending sidewalls, the web having a top exterior web surface positioned adjacent to a ceiling and a bottom interior web surface, each sidewall having inner and outer sidewall surfaces, each sidewall having an upper sidewall portion adjacent to the web and a lower sidewall portion;

an elongated heat expandable intumescent strip affixed lengthwise on at least

Report and Recommendation - 41
CASE NO. 18-cv-00659



LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the upper sidewall portion, the intumescent strip having an outer strip surface offset from the outer sidewall surface an intumescent strip offset distance;

a plurality of sheet-metal studs having upper and lower end portions, the studs being vertically positioned between the spaced apart and confronting footer and header tracks such that the lower end portions are received into the footer track and the upper end portions are received into the header track, each of the upper end portions of the plurality of studs being spaced apart from the bottom interior web surface of the header track a first gap distance that allows for ceiling deflections; and

wallboard attached to at least one side of the plurality of studs, the wallboard having a top linear end surface positioned apart from the ceiling a second gap distance that allows for ceiling deflections and defines the linear head-of-wall construction joint or gap, the wallboard having an elongated upper interior wallboard surface in linear contact with the outer strip surface of the elongated intumescent strip.

(Trojan Decl., Ex. 2 (Claim 1 of the '718 Patent).) Once again, Plaintiffs allege this claim is infringed by S4S's customers relying on UL listing No. HW-D-0890. (Motion, 38-41 (citing UL listing HW-D-0890, attached to Pilz Decl. at Exs. 87).) Plaintiffs also include a chart asserting that this claim is directly infringed by S4S's customers relying on the same additional UL listings identified above with respect to claim 1 of the '365 Patent and claim 1 of the '526 Patent. (Motion, 42-44. *See also* Pilz Decl., Exs 29-32.)

Relying again on the same UL listings identified above, Plaintiffs also assert direct infringement by S4S's customers of claim 1 of the '314 Patent contending that each UL listing specifies the FRG Strip containing intumescent manufactured by RectorSeal "and if the track has slots on both sides, they are also directly infringing claim 6 of the '314 Patent and claim 12 of the '718 Patent." (Motion, 42-44 (citing Pilz Exs. 29-32, 34-37, 38-41, 69-74, 75-76, and 80-83).) Plaintiffs also assert direct infringement by S4S's customers of claim 1 of the '314 Patent relying on UL listings BW-S-0055 and BW-S-0054. (Motion 43.

LOWE GRAHAM JONES ᴘʟʟᴄ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

*See also* Pilz Decl. Exs. 84-85.) Each of these UL listings specify "steel floor runners" with FRG Strip attached. (*Id.*)

S4S does not offer evidence or argument describing how its FRG Strip is used by customers. Rather, Defendants and S4S challenge Plaintiffs' reliance on the UL listings for proof of direct infringement by S4S's customers, arguing that the use of a U-shaped track is merely an "option" and that the UL listings fail to show how S4S's customers actually install the FRG Strip in the field. (Klein Resp. in Opp. to Motion, 28; S4S Resp. in Opp to Motion, 45 (asserting that the UL listings do not "require" customers to use the FRG Strip in an infringing manner).) While it is true that the UL listings do not specify a particular track profile, the UL listings are used by S4S along with instructions, drawings, engineering judgments, and product listings, all showing the use of FRG Strip on U-shaped track profiles. (*See supra* at §III.4.a.) Indeed, according to the Asserted Patents, the U-shaped track profile is the most common track profile. (Trojan Decl., Ex. 1 at Col. 1:42-46.) Accordingly, the UL listings along with other evidence showing S4S's continued advertisement, instruction, and illustrations showing use of FRG Strip on U-Shaped track, support an inference that customers directly infringed the Asserted Patents. In fact, based on this record it would be unreasonable to conclude that no customer actually used FRG Strip as shown in the UL listings, nor would it be reasonable on this record to conclude that no customer installed FRG Strip on the surface of the sidewall of U-Shaped track.

It is well settled that direct infringement, particularly within the context of an allegation of inducement, may be proven by circumstantial evidence. *Toshiba*, 681 F.3d at 1364 (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009)). *See also Alco Standard Corp v. Tenn. Valley Auth.*, 808 F.2d 1490, 1503 (Fed. Cir. 1986)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

("Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive."). Circumstantial evidence must show that at least one person directly infringed an asserted claim during the relevant time period. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("[A] finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period.").

Here, while the UL listings may not *require* application of the FRG Strip to a U-Shaped track, S4S's use of the ULs along with instructions and recommendations to use the FRG Strip on a U-shaped track and in an infringing manner, make direct infringement by S4S's customers highly likely because customers are required to build according to local building codes, all of which require placement of the intumescent as shown in the ULs. *Toshiba*, 681 F.3d at 1365 ("where an alleged infringer designs a product for use in an infringing way and instructs users to use the product in an infringing way, there is sufficient evidence for a jury to find direct infringement").

## G. S4S's Invalidity Arguments

S4S makes a number of invalidity arguments, however, given that S4S has been found to be legally identified with Safti-Seal for the purposes of these contempt proceedings (Dkt. No. 251), S4S cannot assert invalidity as a defense to contempt. *See Merial*, 681 F.3d at 1300 (citing *Additive Controls & Measurement Sys. v. Flowdata, Inc.*, 154 F.3d 1345, 1350 (Fed. Cir. 1998)).

Even if S4S could assert invalidity as a defense to contempt, the Special Master agrees with Plaintiffs that S4S should be estopped from doing so based on the prior assignment of the patents to CEMCO. This is known as "assignor estoppel" and the doctrine



701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

remains applicable to the facts of this case after the Supreme Court's recent opinion in *Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 2302, 210 L. Ed. 2d 689 (2021). Here, Klein sold the patents to CEMCO, started Safti-Seal, was enjoined, then teamed-up with S4S (itself legally identified with Safti-Seal) to sell FRG products. In *Minerva*, the Supreme Court reiterated that assignor estoppel applies "when an inventor says one thing (explicitly or implicitly) in assigning a patent and the opposite in litigating against the patent's owner." *Id.* at 2304. That is the case here, so assignor estoppel should apply to any invalidity challenges S4S might have had.

## H.    S4S's Unclean Hands Arguments

S4S contends that "Plaintiffs should be barred by the doctrines of unclean hands and estoppel from relying on the construction of 'intumescent strip' that was adopted in this case based on CEMCO's conduct in simultaneously taking contrary positions before Judge Robart and the PTO in order to obtain that construction." (S4S Brief in Opp. to Motion, 17.) This argument should be rejected because it fails to clearly show how the positions advanced before the USPTO to obtain allowance of a family of patents unrelated by prosecution history to the Asserted Patents could be used to support estoppel by unclean hands. The Federal Circuit holds that common claim terms must be construed consistently across different patents where the patents are related by common priority claims. *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1369 (Fed. Cir. 2016) ("where multiple patents derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents."). Here, prosecution of the application giving rise to the Pilz '389 Patent is unrelated by priority claim to the Asserted Patents. Further, the claims at issue in the Pilz '389 Patent are

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

for a different invention and do not expressly claim an invention including an "intumescent strip." Nor is it at all clear (on this record) that the positions taken by CEMCO during prosecution of the Pilz '389 Patent directly contradict the positions taken by CEMCO regarding the interpretation of "intumescent strip" in this litigation.

## I.    Motions to Strike

Finally, S4S asks that the court strike the expert report of Eric Bergman. (S4S Brief in Opp. to Motion, 36.) Because the undersigned finds it unnecessary to rely on any portion of the Bergman report, this motion should be DENIED as moot.

## IV.    CONCLUSION

The undersigned recommends an order finding S4S and Defendant Klein in contempt for inducing infringement in violation of the agreed injunction through sales of the FRG Strip, which the undersigned finds no more than colorably different from the enjoined Safti-Strip product when applied to the outer surface of the sidewall of a U-shaped track. Insofar as this finding is based on S4S's and Klein's advertising, promotion, instructions, and engineering judgments, all recommending use of the FRG Strip by placing it on the outer surface of the sidewall of a U-Shaped track, discovery related to damages and remedies, which was bifurcated from liability discovery in these proceedings (Dkt. No. 253), should focus on the impact and extent of this conduct as it relates to direct infringement by S4S's customers. Discovery related to remedies, damages, and any further enforcement proceedings should also take into consideration the extent to which FRG Strip and S4S's U-shaped metal framing products have substantial non-infringing uses. The recommendation against a finding of contempt based on contributory infringement should not be misconstrued as a finding that these products have substantial not infringing uses,

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

only that there has been a failure of proof on that point. Accordingly, further discovery and briefing is warranted regarding whether and to what extent S4S may continue to sell FRG Strip in roll form and U-shaped metal track products, absent the affirmative acts found to induce direct infringement.

Consistent with Dkt. No. 253, should a final order of contempt be entered, the parties should be further ordered to meet and confer within seven (7) days of any such order and submit within fourteen (14) days a joint status report setting forth a proposed schedule regarding how to proceed with the damages phase.

Dated this 10th day of December, 2021

_____
Mark P. Walters
Special Master

LOWE GRAHAM JONES pllc

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 10, 2021, a copy of this pleading was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record via the court's electronic filing system.

*/s/Rischel Voigt*
Rischel Voigt, Paralegal

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301