UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CALIFORNIA EXPANDED
METAL PRODUCTS COMPANY,
et al.,

            Plaintiffs,

      v.

JAMES A. KLEIN, et al.,

            Defendants.

CASE NO. C18-0659JLR

ORDER

## I.   INTRODUCTION

Before the court are motions for attorneys' fees and costs filed by Plaintiffs

California Expanded Metal Products Company ("CEMCO") and Clarkwestern Dietrich

Building Systems LLC ("ClarkDietrich") (together, "Plaintiffs").  (CEMCO Mot. (Dkt.

# 369); CEMCO Reply (Dkt. # 375); ClarkDietrich Mot. (Dkt. # 367); ClarkDietrich

Reply (Dkt. # 374).)  Defendants James A. Klein, BlazeFrame Industries, Ltd., and

Safti-Seal, Inc. (collectively, "Defendants") oppose both motions.  (Resp. (Dkt. # 372).)

1   Non-party Seal4Safti, Inc. ("S4S") joins in Defendants' opposition to Plaintiffs'

2   motions.[1]  (Joinder (Dkt. # 373).)  The court has considered the motions, the parties'

3   submissions, the relevant portions of the record, and the governing law.  Being fully

4   advised, the court GRANTS in part CEMCO and ClarkDietrich's motions for attorneys'

5   fees and costs.

## II.   BACKGROUND

7       The court has set forth the history of this case in detail in its prior orders.  (*See,*

8   *e.g.*, 2/16/22 Order (Dkt. # 301) at 3-20; 1/26/23 Order (Dkt. # 332) at 3-10.)  Therefore,

9   the court summarizes below the background relevant to Plaintiffs' motions for attorneys'

10  fees and costs.

11      As part of their settlement in this patent infringement case, Plaintiffs and

12  Defendants agreed to entry of a consent judgment and permanent injunction, which the

13  court approved on January 3, 2020.  (*See* Consent J. & Injunction (Dkt. # 164).)  On June

14  22, 2020, Plaintiffs filed a motion to reopen this case to initiate contempt proceedings

15  against Defendants and Non-Parties S4S, SteelTec Supply, Inc. ("SteelTec"), Jaroslaw

16  Sydry, and Leszek Orszulak (collectively, "Non-Parties").  (Mot. to Reopen (Dkts. ##

17  173-1 (sealed), 166 (redacted)) at 1-2.)  Plaintiffs alleged that Defendants, acting in

18  concert with the Non-Parties, had violated the permanent injunction by continuing to

19  make and sell products that infringed upon Plaintiffs' patent rights.  (*See generally id.*)

20  The court granted the motion to reopen with respect to Defendants only.  (*See* 10/19/20

21

22      [1] S4S was not a party to the underlying litigation, but it was added to these contempt
    proceedings on September 1, 2021.  (*See* 9/1/21 Order (Dkt. # 251).)

1    Order (Dkt. # 190) at 9-15.)  The court subsequently added S4S to the contempt

2    proceedings after finding S4S to be "legally identified" with Safti-Seal, Inc.  (*See* 7/20/21

3    R&R (Dkt. # 220 (sealed)); 9/1/21 Order (Dkt. # 251) at 14-22.)

4         On February 16, 2022, the court granted Plaintiffs' motion for contempt in part,

5    finding Mr. Klein and S4S in contempt of the court's permanent injunction based on

6    induced infringement of Plaintiffs' patents.  (2/16/22 Order (Dkt. # 301) at 54; *see* Mot.

7    for Contempt (Dkt. # 275 (sealed)).)  The parties then embarked on the damages phase of

8    these contempt proceedings.  (*See* 2/16/22 Order at 54 (directing the parties to confer on

9    how to proceed with the damages phase).)

10        In January 2023, the court issued an order granting in part and denying in part

11   Plaintiffs' motion for contempt damages against Mr. Klein and S4S.  (1/26/23 Order

12   (Dkt. # 332).)  In relevant part, the court granted Plaintiffs an award of attorneys' fees

13   and costs "reasonably and necessarily incurred in their attempt to enforce compliance

14   with the court's permanent injunction" and held that Mr. Klein and S4S were "jointly and

15   severally liable for any award of attorneys' fees and costs."  (*Id.* at 23-26, 38-39.)  The

16   court directed Plaintiffs, however, to defer moving for attorneys' fees and costs until after

17   the court resolved certain outstanding damages issues.  (*Id.* at 39.)  In an order filed on

18   July 10, 2023, the court resolved those issues, directed Plaintiffs to file their motions for

19   reasonable attorneys' fees and costs by no later than August 18, 2023, and entered

20   judgment in Plaintiffs' favor for $974,645.32 in actual damages.  (7/10/23 Order (Dkt.

21   # 360) at 3-4, 7/10/23 Judgment (Dkt. # 361); *see also* 7/21/23 Am. Judgment (Dkt.

22   # 364) (amending the judgment to include pre-judgment interest).)

ORDER - 3

1    The parties subsequently stipulated to extend the briefing schedule for Plaintiffs'

2   motions for attorneys' fees and costs, and Plaintiffs timely filed their motions in

3   accordance with that stipulation.  (8/11/23 Order (Dkt. # 366) (granting the parties'

4   stipulated motion to extend the briefing schedule); CEMCO Mot.; ClarkDietrich Mot.)

5   Defendants timely responded, and Plaintiffs both filed replies.  (Resp.; CEMCO Reply;

6   ClarkDietrich Reply.)  The motions are now ripe for decision.

7                                    **III.   ANALYSIS**

8    Below, the court considers Plaintiffs' requests for fees, then reviews their requests

9   for costs, and, finally, addresses Defendants' attempt to revisit the question of Mr. Klein

10   and S4S's joint and several liability for the fee and cost awards.

11   **A.   Attorneys' Fees**

12    Below, the court reviews the legal standards that govern the court's consideration

13   of Plaintiffs' motions for attorneys' fees, then applies these standards to determine the

14   reasonable amount of fees to award each Plaintiff.

15   1.    Legal Standards

16    To determine whether counsel's requested fees are reasonable, the court applies

17   the "lodestar" method.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir.

18   2008).  The court begins by finding the "lodestar," which is calculated by multiplying

19   "the number of hours . . . reasonably expended on the litigation by a reasonable hourly

20   rate."  *Id.* (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir.

21   2001)).  Although the resulting figure is presumptively reasonable, the court may, if

22   circumstances warrant, adjust the lodestar figure up or down based on additional

1    factors—referred to as the "*Kerr* factors"—that were not already subsumed in the initial

2    lodestar calculation.  *Id.* at 982 (referring the to 12 factors enumerated in *Kerr v. Screen*

3    *Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)); *see also Cairns v. Franklin Mint Co.*,

4    292 F.3d 1139, 1158 (9th Cir. 2002) (noting that the court need not consider the *Kerr*

5    factors unless necessary to support the reasonableness of the fee award).  These factors

6    are:

7           (1) the time and labor required, (2) the novelty and difficulty of the questions
            involved, (3) the skill requisite to perform the legal service properly, (4) the
8           preclusion of other employment by the attorney due to acceptance of the case,
            (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time
9           limitations imposed by the client or the circumstances, (8) the amount
            involved and the results obtained, (9) the experience, reputation, and ability
10          of the attorneys, (10) the 'undesirability' of the case, (11) the nature and
            length of the professional relationship with the client, and (12) awards in
11          similar cases.

12   *Kerr*, 526 F.3d at 70.

13          The "reasonable hourly rate" used in the lodestar "is the rate prevailing in the

14   community for similar work performed by attorneys of comparable skill, experience, and

15   reputation."  *Camacho*, 523 F.3d at 979 (internal quotations and citations omitted).  The

16   relevant community for determining whether hourly rates are reasonable "is the forum in

17   which the district court sits."  *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir.

18   1997)).

19          To determine a reasonable number of hours to be compensated, the court must

20   consider "whether, in light of the circumstances, the time could reasonably have been

21   billed to a private client."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.

22   2008).  The hours claimed by a party may be reduced by the court if the "documentation

1    of the hours is inadequate"; "if the case was overstaffed and hours are duplicated"; or "if

2    the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City*

3    *of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986); *see also McCown v. City of*

4    *Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (stating that the court may exclude hours

5    that were not reasonably expended, such as those "that are excessive, redundant, or

6    otherwise unnecessary" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))).

7    When faced with a voluminous fee application, the court has the "authority to make

8    across-the-board percentage cuts either in the number of hours claimed or in the final

9    lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates*

10   *v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *N.Y. State Ass'n for*

11   *Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

12          Here, Defendants do not oppose the hourly rates requested by Plaintiffs' attorneys.

13   (Resp. at 5.)  Instead, they focus their opposition on their assertion that the number of

14   hours Plaintiffs' attorneys claim they expended on the litigation was unreasonable.  (*See*

15   *id.* at 5-10.)  The court has independently reviewed Plaintiffs' attorneys' hourly rates and

16   determines that they are consistent with the hourly rates charged by attorneys of

17   comparable skill, experience, and reputation in the Seattle legal community.  (*See* 9/1/23

18   Trojan Decl. (Dkt. # 370) ¶¶ 13-17 (setting forth average hourly rates for CEMCO's

19   attorneys and paralegals at Trojan Law Offices ("TLO")); *id.* ¶ 18 (setting forth the

20   hourly fee for CEMCO's local counsel at Lane Powell PC ("Lane Powell"));

21   Blickensderfer Decl. (Dkt. # 368) ¶¶ 3-7 (setting forth hourly rates for ClarkDietrich's

22   attorneys and paralegal at Frost Brown Todd LLP ("FBT")); *id.* ¶¶ 10-11 (setting forth

1   hourly fees for ClarkDietrich's local counsel at Lee & Hayes PC ("Lee & Hayes")).)  The

2   court focuses its discussion below, therefore, on determining whether the hours of

3   attorney work for which Plaintiffs seek compensation is reasonable.

4       2.    <u>Byer Declaration</u>

5       As a preliminary matter, however, the court addresses the expert declaration of

6   Benjamin J. Byer, a partner in Davis Wright Tremaine LLP's commercial litigation group

7   whom Plaintiffs retained to opine on the reasonableness of their billing rates, hours

8   worked, and other factors relevant to the court's calculation of the attorneys' fees awards.

9   (*See generally* Byer Decl. (Dkt. # 371).  *See, e.g.*, CEMCO Mot. at 2-5 (citing Mr. Byer's

10  declaration to support its attorneys' hourly rates and hours expended); ClarkDietrich Mot.

11  at 3-5 (citing Mr. Byer's declaration to support its attorneys' hourly rates).)  Defendants

12  argue that the court should not give any weight to Mr. Byer's declaration because Mr.

13  Byer's opinions will not assist the court in its evaluation of Plaintiffs' attorneys' fee

14  petitions.  (Resp. at 2.)  The court agrees.  First, because Defendants do not challenge the

15  reasonableness of Plaintiffs' attorneys' hourly rates (*id.* at 5), Mr. Byer's opinions

16  regarding those rates are irrelevant.  Second, the court is well aware that the parties have

17  intensely litigated every aspect of these contempt proceedings, including by filing

18  discovery motions and objections to the Special Master's reports.  Thus, Mr. Byer's

19  opinion that that this case was intensely litigated (*see* Byer Decl. at 10) sheds no new

20  light on the parties' fee petitions.  Finally, the court has ample experience reviewing

21  billing records filed in support of attorneys' fees petitions in complex litigation and need

22  not refer to an expert declaration to determine whether the hours expended by counsel

1    during this action are reasonable.  As a result, the court has neither considered nor relied

2    upon Mr. Byer's declaration in drafting this order.  For these reasons, to the extent

3    Plaintiffs request reimbursement of Mr. Byer's expert fees and any other fees or costs

4    associated with the preparation of Mr. Byer's declaration (*see, e.g.*, CEMCO Mot. at 13),

5    that request is DENIED.

6         3.    CEMCO's Attorneys Fees

7         CEMCO seeks a total award of $865,100 in attorneys' fees incurred between April

8    1, 2023, and July 31, 2023.  (*See* CEMCO Mot.; 9/1/23 Trojan Decl. ¶¶ 17-26

9    (summarizing the work performed by CEMCO's attorneys); *id.* ¶ 4, Ex. 1 ("TLO

10   Invoices"); *id.* ¶ 18, Ex. 6 ("Lane Powell Invoices").)  Although TLO's attorneys' fees

11   totaled $1,037,913.30, TLO discounted its fees for early payment and waived at least one

12   time entry, resulting in actual fees after discounts of $835,681.00.  (9/1/23 Trojan Decl.

13   ¶¶ 4, 17.)  CEMCO's local counsel billed $29,419.00 through June 30, 2023.  (*Id.* ¶ 18.)

14        CEMCO divides its calculation of TLO's compensable attorneys' fees into four

15   periods, as follows:

16        1.    From April 1, 2020, to September 1, 2021, TLO billed discounted fees of

17              $586,701.17 for 1,799.08 hours of work to reopen the case, conduct discovery,

18              and add S4S to the proceedings.  (CEMCO Mot. at 7-8 (discussing the work

19              done during this period and citing relevant docket entries); 9/1/23 Trojan Decl.

20              ¶¶ 20-21; *id.* ¶ 20, Ex. 7 (summarizing TLO's invoices during this period).)

21        2.    From September 2, 2021, to February 16, 2022, TLO billed discounted fees of

22              $86,369.83 for 235.95 hours to prove contempt.  (CEMCO Mot. at 8-10

1    (discussing the work done during this period and citing relevant docket

2    entries); 9/1/23 Trojan Decl. ¶ 22, Ex. 8 (summarizing TLO's invoices during

3    this period).)

4    3.    From February 17, 2022, to January 26, 2023, TLO billed discounted fees of

5          $114,548.60 for 291.33 hours of work to prove contempt damages.  (CEMCO

6          Mot. at 10 (discussing the work done during this period and citing relevant

7          docket entries); 9/1/23 Trojan Decl. ¶¶ 22-23; *id.* ¶ 22, Ex. 9 (summarizing

8          TLO's invoices during this period).)

9    4.    Finally, from January 27, 2023 to July 31, 2023, TLO billed discounted fees of

10         $48,061.40 for 143.68 hours of work, including moving for reconsideration of

11         the court's January 26, 2023 order discharging the daily fine it issued to S4S.

12         (CEMCO Mot. at 10-11 (discussing the work done during this period and

13         citing relevant docket entries); 9/1/23 Trojan Decl. ¶ 25, Ex. 10 (summarizing

14         TLO's invoices during this period).)

15         Defendants counter that the court should (1) cap the total amount of fees awarded

16   to both Plaintiffs at $607,770.65, the amount of profits that the court ordered S4S to

17   disgorge in its January 26, 2023 order (Resp at 6-7 (citing 1/26/23 Order at 20)), or

18   (2) reduce CEMCO's total fees award to $302,785 based on across-the-board reductions

19   and consideration of the *Kerr* factors (*see id.* at 7-11).

20         The court rejects Defendants' first proposal.  Defendants argue that capping total

21   fees at the amount of disgorgement ordered is consistent with *Kerr* factor number eight,

22   under which the court should consider "the amount involved and the results obtained" in

1    determining a reasonable fee award.  (Resp. at 7); *Kerr*, 526 F.2d at 70.  They assert that

2    Plaintiffs achieved only limited success in these contempt proceedings because "claims

3    against five of the seven targeted defendants were dismissed, claims against the majority

4    of S4S's products were dismissed, all allegations of direct infringement, and contributory

5    infringement were dismissed, . . . the [c]ourt found that where Plaintiffs did prove

6    induced infringement they did not prove any actual damage to themselves resulted," and

7    the court rejected Plaintiffs' assertions that they were entitled to "between two and three

8    million dollars," trebled.  (Resp. at 6.)  Defendants, however, cite no authority for the

9    proposition that the court must cap attorneys' fees at the amount of damages awarded and

10   they do not propose any way to divide the capped fees between CEMCO and

11   ClarkDietrich.  (*Id.* at 5-7.)  In any event, the court ultimately ordered S4S to disgorge a

12   total of $974,645.32 in profits, rendering Defendants' proposal to apply a $607,770.65

13   cap unreasonable.  (*See id.*; *see* 7/10/23 Order at 2-3, 5 (awarding Plaintiff an additional

14   $366,874.67 in disgorgement of S4S's profits from May 16, 2022 to June 12, 2023, on

15   top of the $607,770.65 awarded in the court's January 26, 2023 order).)  Therefore, the

16   court declines Defendants' proposal to cap Plaintiffs' attorneys' fees award at the amount

17   of disgorgement awarded in the January 23, 2023 order.

18          Defendants next assert that the court should "adopt an across-the-board approach

19   and adjust all invoices downward."  (Resp. at 7 (capitalization altered).)  Specifically,

20   Defendants argue that the court should reduce CEMCO's time by 30% for excessive

21   block-billing and by an additional 50% "based upon its practice of billing administrative

22   or junior tasks at partner rates" pursuant to *Kerr* factors one, two, three, and nine.  (Resp.

1    at 8, 10); *see Kerr*, 526 F.2d at 70 (stating the court should consider "(1) the time and

2    labor required, (2) the novelty and difficulty of the questions involved, (3) the skill

3    requisite to perform the legal service properly, [and] . . . (9) the experience, reputation,

4    and ability of the attorneys").

5         In light of the voluminous invoices that CEMCO submitted, the court agrees with

6    Defendants that "an 'hour-by-hour analysis' of the time claimed is impractical." (Resp.

7    at 7 (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)); *see*

8    TLO Invoices (totaling 181 pages); Lane Powell Invoices (totaling 92 pages).)

9    Therefore, rather than identify specific time entries to cut, the court instead considers

10   "across-the-board percentage cuts" to the CEMCO' proposed lodestar figures. *Gates*,

11   987 F.2d at 1399. The court, however, disagrees with the specific cuts Defendants

12   request.

13        First, the court concludes that a reduction in fees for unsuccessful efforts is

14   warranted under *Kerr* factor number eight. The court disagrees with Defendants'

15   assertion that Plaintiffs "obtained almost none" of the relief they sought in these

16   contempt proceedings. (*See* Resp. at 6.) Nevertheless, although CEMCO achieved

17   substantial success in this action (*see generally* Dkt.), the court agrees that a reduction is

18   warranted to reflect unsuccessful work related to initiating contempt proceedings against

19   SteelTec, Jaroslaw Sydry, and Leszek Orszulak; pursuing unsuccessful damages theories;

20   and moving to reconsider the court's order discharging S4S's fine. Having reviewed the

21   docket of this case and CEMCO's attorneys' invoices, the court concludes that a 10% cut

22   is appropriate to reflect unsuccessful efforts.

1    Second, the court agrees with Defendants that a reduction in fees is warranted on

2    the basis of block-billing.  Several of TLO's attorneys—in particular Francis Z. Wong,

3    and to a lesser extent, Dylan C. Dang—routinely engaged in block-billing, making it

4    difficult for the court to determine whether the time those attorneys spent on specific

5    tasks was reasonable.  (*See* Resp. at 7-8; *see generally* TLO Invoices.)  The court,

6    however, disagrees that TLO's block-billing is so egregious that an across-the-board 30%

7    cut to TLO's fees is warranted.  To the contrary, most of TLO's time entries for most of

8    its timekeepers reflect appropriate billing practices.  (*See generally* TLO Invoices.)  The

9    court concludes, therefore, that it is appropriate to cut Mr. Wong's fees by 20% and Mr.

10   Dang's fees by 15%, resulting in a total reduction for block-billing of $134,404.39.[2]  *See*

11   *Lahiri v. Universal Music and Video Dist. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010)

12   (approving reductions of fees incurred by the attorneys and paralegals who were

13   primarily responsible for block-billing). The court finds, however, that CEMCO's local

14   counsel did not engage in block-billing and therefore does not reduce Lane Powell's

15   claimed fees on that basis.  (*See generally* Lane Powell Invoices.)

16   Third, the court agrees with Defendants that TLO's invoices include certain fees

17   that are administrative in nature (such as time spent downloading or transmitting

18   documents), or otherwise inappropriate to charge to a client (for example, fees for time

19   spent in software training).  (*See, e.g.*, Resp. at 10 (citing examples in TLO's invoices).

20

21   ———————————

22   [2] Mr. Wong's fees are reduced by $72,767.50 (1,119.50 hours x 0.2 x $325.00/hour
discounted billing rate).  Mr. Dang's fees are reduced by $61,636.89 (1,177.4 hours x 0.15 x
$349.00/hour discounted billing rate).  (*See* TLO Invoices at 182; Trojan Decl. ¶ 17).

1  *See generally* TLO Invoices.)  The court does not, however, agree with Defendants that

2  these time entries are so prevalent that they justify an additional across-the-board 50%

3  reduction to the lodestar.  (*See* Resp. at 10.)  Instead, having reviewed TLO's invoices,

4  the court concludes that a reduction to TLO's requested fees of 10% to reflect

5  administrative or otherwise unbillable time is appropriate.  The court does not find any

6  basis to reduce Lane Powell's fees for administrative and unbillable time.  (*See generally*

7  Lane Powell Invoices.)

8        Finally, the court disagrees with Defendants' assertion that TLO regularly billed

9  administrative or junior-level tasks at partner rates.  (*See* Resp. at 7-8.)  The lead partner

10  on the case, Robert J. Trojan, billed just over 100 hours over the three years these

11  contempt proceedings have been underway.  (*See* CEMCO Mot. at 3.)  Most of the

12  work—well over 2200 hours' worth—was done by Mr. Wong and Mr. Dang, more junior

13  attorneys whose average discounted billing rates were $325.00 and $349.00 respectively.

14  (*See id.* at 5.)  Based on its review of TLO's invoices and its knowledge of hourly rates

15  charged by patent counsel in the Seattle area, the court cannot conclude that TLO

16  unreasonably billed junior-level work at partner rates and declines to further reduce

17  CEMCO's fee award on that basis.

18        In sum, the court first reduces Mr. Wong's and Mr. Dang's fees for block billing;

19  and then reduces TLO's total remaining fees by 10% to reflect unsuccessful work and

20  10% to reflect administrative and unbillable time.  The court reduces Lane Powell's fees

21  by 10% to reflect unsuccessful work.  As a result, the court determines that a total award

22

1  of attorneys' fees to CEMCO in the amount of **$594,511.15** is reasonable, as set forth in

2  the following table:

| | TLO | Lane Powell | Total |
|---|---|---|---|
| Requested Lodestar | $835,681.00 | $29,419.00 | $865,100.00 |
| Less reduction for block-billing | (-$134,404.39)<br>= $701,276.61 | (no reduction)<br>= $29,419.00 | (-$134,404.39)<br>= $730,695.61 |
| Less 10% for unsuccessful work | ( -$70,127.66)<br>= $631,148.95 | (-$2,941.90)<br>= $26,477.10 | (-$73,069.56)<br>= $657,626.05 |
| Less 10% for administrative and other unbillable time | (-$63,114.90)<br>**= $568,034.05** | (no reduction)<br>**= $26,477.10** | (-$63,114.90)<br>**= $594,511.15** |

10  The court need not adjust these amounts further using the *Kerr* factors because those

11  factors have already been subsumed in the calculations discussed above.  *See Cairns*, 292

12  F.3d at 1158.

13      4.    ClarkDietrich's Attorneys' Fees

14          ClarkDietrich seeks a total award of $942,425.50 in attorneys' fees incurred by

15  FBT and Lee & Hayes between April 30, 2020, and July 31, 2023.  (*See* ClarkDietrich

16  Mot. at 2-11; Blickensderfer Decl. ¶ 9, Ex. A ("FBT Invoices"); *id.* ¶ 12, Ex. B ("Lee &

17  Hayes Invoices").)  Of this total, ClarkDietrich attributes $909,317.00 to FBT and

18  $33,108.50 to Lee & Hayes.  (*See* ClarkDietrich Mot. at 5.)  Although ClarkDietrich

19  asserts that FBT alone billed a total of $1,220,808.00 in attorneys' fees during this period

20  (Blickensderfer Decl. ¶ 9), it is not seeking compensation for time expended (1) where

21  the time entries contain privileged or confidential information; (2) by three associates,

22  two paralegals, and a practice support specialist who provided limited support in these

ORDER - 14

proceedings; (3) by Lee & Hayes's legal support staff; and (4) for work that was "relevant to, but did not directly further the pursuit of the contempt proceedings" (*id.* ¶ 17). (*See generally* FBT Invoices (redacting time entries for which ClarkDietrich is not seeking compensation).)  Thus, ClarkDietrich asserts that it seeks only 77.1% of the total attorneys' fees it actually incurred in connection with these contempt proceedings. (ClarkDietrich Mot. at 10.)

Like CEMCO, ClarkDietrich divides its calculation of compensable attorneys' fees into four time periods:

1.    From April 30, 2020, through September 1, 2021, FBT billed $463,873.50 for 996 hours of work and Lee & Hayes billed $19,780.00 for 34.4 hours of work in connection with reopening the action, conducting discovery and adding S4S to the contempt proceedings.  (*Id.* at 6-8 (discussing the work done during this period and citing relevant docket entries).)

2.    From September 2, 2021, through January 24, 2022, FBT billed $105,780.00 for 217.5 hours of work and Lee & Hayes billed $4,348.50 for 7.5 hours in connection with establishing that Mr. Klein and S4S were in contempt of the consent judgment and permanent injunction.  (*Id.* at 8 (discussing the work done during this period and citing relevant docket entries).)

3.    From February 17, 2022, through December 29, 2022, FBT billed $311,731.50 for 648.1 hours of work and Lee & Hayes billed $5,355.00 for nine hours of work in connection with proving the damages ClarkDietrich

1    incurred as a result of the contempt. (*Id.* at 8-9 (discussing the work done

2    during this period and citing relevant docket entries).)

3    4.    Finally, from January 30, 2023, through July 31, 2023, FBT billed

4    $27,932.00 for 55.6 hours of work and Lee & Hayes billed $3,625.00 for

5    5.8 hours of work in connection with moving for reconsideration of the

6    court's January 26, 2023 order discharging S4S's daily fine, calculating

7    pre-judgment interest, and conducting initial work on the motion for

8    attorneys' fees and costs. (*Id.* at 9-10 (discussing the work done during this

9    period and citing relevant docket entries).)

10    Defendants urge the court to reduce ClarkDietrich's total fee award to

11   $329,848.93 based on across-the-board reductions and consideration of the *Kerr* factors.

12   (Resp. at 7-11.[3])

13    In light of the voluminous invoices ClarkDietrich submitted, the court follows the

14   same model it used in deciding CEMCO's attorneys' fee award and applies percentage

15   reductions rather than an hour-by-hour analysis to ClarkDietrich's lodestar calculations.

16   (*See* FBT Invoices (totaling 202 pages); Lee & Hayes Invoices (totaling 35 pages));

17   *Gates*, 987 F.2d at 1399. First, the court applies the same 10% reduction to

18   ClarkDietrich's lodestar that it applied to CEMCO's lodestar to reflect unsuccessful

19   work. (*See supra* § III.A.3.) Second, FBT's invoices demonstrate that its attorneys

20

21           [3] The court has already rejected Defendants' argument that the total fees awarded to both
     Plaintiffs should be capped at the amount of profits the court ordered S4S to disgorge. (*See*
22   *supra* § III.A.3.)

1    engaged in relatively minimal block-billing; indeed, only Jeffrey F. Kersting appears to

2    have block-billed with any frequency.  (*See generally* FBT Invoices.)  The court

3    concludes that a reduction in his fees of 10% is appropriate to account for block-billing,

4    resulting in a deduction of $47,507.20.  (*See* ClarkDietrich Mot. at 5 (summarizing the

5    hours incurred, hourly rates, and total fees for ClarkDietrich's attorneys).)  Third, the

6    court disagrees with Defendants' contention that ClarkDietrich's attorneys drastically

7    overbilled for redundant and administrative tasks.  (*See* Resp. at 8.)  To the contrary, the

8    court's review of FBT's invoices reveals little redundancy of staffing and comparatively

9    few time entries that reflect work that should not be billed to a client.  (*See generally* FBT

10   Invoices.)  Thus, the court applies a 5% cut to reflect the relatively small amount of

11   redundant and administrative tasks reflected in FBT's invoices.  Because the court did not

12   find block-billing, redundancy, or unbillable administrative tasks in Lee & Hayes's

13   invoices (*see* Lee & Hayes Invoices), the court applies only the 10% cut for unsuccessful

14   efforts to Lee & Hayes's lodestar.

15          In sum, the court reduces (1) Mr. Kersting's fees by 10% for block billing; (2)

16   FBT's total fees by 10% to reflect unsuccessful work and 10% to reflect administrative

17   and unbillable time; and (3) Lee & Hayes's fees by 10% to reflect unsuccessful work.  As

18   a result, the court determines that a total award of attorneys' fees to ClarkDietrich in the

19   amount of **$766,645.03** is reasonable, as set forth in the following table:

20   //

21   //

22   //

| | FBT | Lee & Hayes | Total |
|---|---|---|---|
| Requested Lodestar | $909,317.00 | $33,108.50 | $942,425.50 |
| Less reduction for block-billing | (-$47,507.20) = $861,809.80 | (no reduction) = $33,108.50 | (-$47,507.20) = $894,918.30 |
| Less 10% for unsuccessful work | ( -$86,180.98) = $775,628.82 | (-$3,310.85) = $29,797.65 | (-$89,491.83) = $805,426.47 |
| Less 5% for administrative and other unbillable time | (-$38,781.44) **= $736,847.38** | (no reduction) **= $29,797.65** | (-$38,781.44) **= $766,645.03** |

The court need not adjust these amounts further using the *Kerr* factors because those factors have already been subsumed in the calculations discussed above. *See Cairns*, 292 F.3d at 1158.

3.      Fees for Attorneys' Fee Motions

        Both Plaintiffs seek an award of fees incurred in preparing their attorneys' fees motions. (*See* CEMCO Mot. at 10 (citing *Hall v. City of Fairfield*, No. 10-cv-0508-DAD, 2014 WL 1303612 (E.D. Cal., Mar. 31, 2014)); ClarkDietrich Mot. at 6 n.2 (purporting to reserve the right to seek additional fees).) Defendants do not respond to these requests. (*See generally* Resp.) Because Plaintiffs would not have incurred attorneys' fees associated with preparing the instant motions absent Defendants' contempt (*see* 1/26/23 Order at 23-26), the court GRANTS Plaintiffs' requests for attorneys' fees associated with preparing their motions for attorneys' fees and costs. Plaintiffs may file motions for attorneys' fees associated with their attorneys' fees motions by no later than **December 7, 2023**. The motions shall be filed and noted in accordance with Local Civil Rule 7(d)(3) and shall not seek reimbursement for any

1  attorneys' fees or costs associated with preparing and submitting Mr. Byer's declaration.

2  (*See supra* § III.A.2 (declining to consider Mr. Byers's declaration).)

3  **D.     Costs**

4          CEMCO and ClarkDietrich seek awards of the expenses that they incurred in

5  litigating this contempt proceeding.  (*See* CEMCO Mot. at 2, 13; ClarkDietrich Mot. at

6  13.)  Specifically, CEMCO seeks $135,661.93, which includes $66,946.59 paid to the

7  Special Master; expert witness fees of $19,282.50; and $49,432.84 in "administrative

8  disbursements" such as "charges for e-discovery vendor services, court reporting

9  services, travel expenses, . . . clerical expenses (e.g. copy charges, messenger charges),"

10  and expenses billed by local counsel.  (CEMCO Mot. at 13 (citing Trojan Decl. ¶ 8, Ex. 4

11  (invoice listing disbursements and costs); *see also id.* ¶ 18, Ex. 6 (local counsel's

12  invoices).)  ClarkDietrich seeks $48,567.31, which includes expert witness fees of

13  $17,793.75 plus expenses related to filing fees, witness fees, transcripts, scanning,

14  postage, and travel.  (ClarkDietrich Mot. at 12 (citing Blickensderfer Decl. ¶ 17, Ex. A

15  (billing records)).)

16          Defendants oppose these requests, arguing that (1) the court should strictly limit

17  Plaintiffs' awards to statutory costs under 28 U.S.C. § 1920 and Local Civil Rule 54(d);

18  (2) expert fees are not compensable costs absent some statutory or contractual basis for

19  such an award; and (3) Plaintiffs should not be awarded costs incurred for seeking

20  contempt remedies against Defendants who were ultimately not found in contempt or for

21  pursuing legal theories that were not successful.  (Resp. at 3-5); *see* 28 U.S.C. § 1920

22  (listing taxable costs, such as clerk's fees, costs of transcripts, and compensation of

1   court-appointed experts); Local Rules W.D. Wash. LCR 54(d) (setting forth the process

2   for submitting a bill of costs).  Thus, according to Defendants, the court should reduce

3   CEMCO's award of costs to $67,561.50 and ClarkDietrich's award to $1,024.50.  (Resp.

4   at 3, 12.)  The court addresses each of Defendants' arguments in turn.

5         First, Plaintiffs are correct that the court ordered Defendants to compensate them

6   for costs they reasonably incurred in litigating this contempt proceeding and did not limit

7   them to statutory costs.  In its January 26, 2023 order, the court observed that, in the

8   Ninth Circuit,

9         [T]he cost of bringing the [contempt] to the attention of the court is part of
          the damages suffered by the prevailing party and those costs would reduce
10        any benefits gained by the prevailing party from the court's violated order.

11  (1/26/23 Order at 24 (quoting *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation*

12  *Soc'y*, 774 F.3d 935, 958 (9th Cir. 2014) (quoting *Perry v. O'Donnell*, 759 F.2d 702, 705

13  (9th Cir. 1985)).)  Recognizing that Plaintiffs would not have incurred fees and costs in

14  these contempt proceedings if Mr. Klein and S4S had fully complied with the permanent

15  injunction, the court concluded that an award of reasonable fees and costs "is an

16  appropriate compensatory civil contempt sanction in this case."  (*Id.* at 25.)  Thus, the

17  court awarded Plaintiffs the "attorneys' fees and costs reasonably and necessarily

18  incurred in their attempt to enforce compliance with the court's permanent injunction."

19  (*Id.* at 25-26.)  It did not restrict Plaintiffs' award to statutory taxable costs.  (*See id.*)

20        Second, the court disagrees with Defendants' contention that it is barred, as a

21  matter of law, from awarding Plaintiffs the fees they paid to their expert witnesses.

22  (Resp. at 3-4.)  The cases Defendants cite in support of their argument that expert fees are

1  barred as part of a compensatory sanction in a civil contempt case are inapposite because

2  they relate to the interpretation of either 28 U.S.C. § 1920 (regarding statutory taxable

3  costs) or 35 U.S.C. § 285 (stating that "in exceptional cases" the court may award

4  reasonable attorneys' fees to the prevailing party in a patent action).  (*See* Resp. at 3-4

5  (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (discussing

6  28 U.S.C. § 1920); *GT Dev. Corp. v. Temco Metal Prods. Co.*, No. C04-0451Z, 2005 WL

7  2138546, at *3 (W.D. Wash. Aug. 31, 2005) (discussing 35 U.S.C. § 285)).)  In this case,

8  by contrast, the court awarded fees and costs as a compensatory civil contempt sanction

9  pursuant to its "'inherent authority and consistent with the law of the' Ninth Circuit,"

10  rather than under 28 U.S.C. § 1920 or 35 U.S.C. § 285.  (1/26/23 Order at 24 (quoting

11  *ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 472, 502 (E.D. Va. 2013), *vacated*

12  *on other grounds*, 760 F.3d 1350 (Fed. Cir. 2014), *opinion revised and superseded*, 789

13  F.3d 1349 (Fed. Cir. 2015)).)  As the court noted in its January 26, 2023 order, the Ninth

14  Circuit has endorsed the view that the cost of bringing a contempt action is "part of the

15  damages suffered by the prevailing party" and, absent reimbursement, those costs "would

16  reduce any benefits gained by the prevailing party."  *Inst. of Cetacean Rsch.*, 774 F.3d at

17  958 (quoting *Perry*, 759 F.2d at 705) (awarding attorneys' fees and costs incurred in

18  prosecuting the contempt proceedings); *see also Shell Offshore Inc. v. Greenpeace, Inc.*,

19  815 F.3d 623, 629 (9th Cir. 2016) (holding that a court may use its civil contempt powers

20  to compensate a party for losses sustained by the contemnor's noncompliance).  The

21  court concludes that awarding Plaintiffs the expert witness fees they reasonably and

22  necessarily incurred in prosecuting this civil contempt action is consistent with the

1    principles set forth by the Ninth Circuit.  Therefore, in the absence of authority

2    condemning the award of expert witness fees as part of a compensatory civil contempt

3    sanction, the court declines Defendants' invitation to exclude those fees from its award.

4         Finally, Defendants argue that Plaintiffs' cost awards should be reduced because

5    they did not achieve complete success in their contempt action.  (Resp. at 4-5.)

6    Specifically, it asserts that Plaintiffs unsuccessfully sought contempt remedies against

7    BlazeFrame, Ltd, Safti-Seal, Inc., SteelTec, Inc., Jaroslaw Sydry, and Leszek Orszulak,

8    and were unsuccessful in proving their direct and contributory infringement claims.  (*Id.*

9    at 4.)  Defendants, however, do not identify any specific costs that should be denied as a

10   result of Plaintiffs' partial success, and the court's own review of Plaintiffs' records does

11   not reveal costs that can be segregated as related to these allegedly unsuccessful efforts.

12   (*See generally* Trojan Decl. ¶ 8, Ex. 4 (TLO invoice listing disbursements and costs); *id.*

13   ¶ 18, Ex. 6 (CEMCO's local counsel's invoices); Blickensderfer Decl. ¶ 17, Ex. A

14   (FBT's billing records).)  Therefore, the court GRANTS Plaintiffs' requests for awards of

15   costs in full.

16   **E.     Joint and Several Liability**

17        Finally, Defendants argue that the award of attorneys' fees and costs should not be

18   joint and several.  (Resp. at 11-12.)  They contend that the court wrongly determined that

19   Defendants did not object to the Special Master's recommendation that the court find S4S

20   and Mr. Klein jointly and severally liable for attorneys' fees and costs, and that now—

21   rather than when the court determined the scope of sanctions to be awarded—"is the

22   procedural juncture at which to decide whom [the fees and costs award] will apply to."

1   (*Id.* (citing 1/26/23 Order at 27 n.28).)  They ask the court to find that only S4S is liable

2   for the attorneys' fees and costs award.  (*Id.*)  The court, however, resolved this issue in

3   its January 26, 2023 order (*see* 1/26/23 Order at 27), and Defendants did not move for

4   reconsideration of that order or for relief from the judgments the court entered in July

5   2023, both of which stated that "S4S and Mr. Klein shall be jointly and severally liable

6   for Plaintiffs' reasonable attorneys' fees and costs incurred in pursuing the instant

7   contempt proceedings."  (7/10/23 Judgment ¶ 4; 7/21/23 Am. Judgment ¶ 4.  *See*

8   *generally* Dkt.)  Therefore, the court declines to reopen the issue of liability for attorneys'

9   fees and costs.

## IV.   CONCLUSION

11       For the foregoing reasons, the court GRANTS in part Plaintiffs' motions for

12   attorneys' fees and costs (Dkt. ## 367, 369).  The court AWARDS (1) CEMCO

13   **$594,511.15** in attorneys' fees and **$135,661.93** in costs; and (2) ClarkDietrich

14   **$766,645.03** in attorneys' fees and **$48,567.31** in costs.  Plaintiffs may file motions for

15   attorneys' fees associated with preparing the instant motions by no later than **December**

16   **7, 2023**.  The court will issue an amended judgment in accordance with its July 10, 2023

17   order after deciding these final fees motions.  (*See* 7/10/23 Order at 4.)

18       Dated this 21st day of November, 2023.

19

20

21   JAMES L. ROBART
     United States District Judge

22